James M. Trush, Esq. – SBN 140088
**Trush Law Office, APC**
695 Town Center Drive, Suite 700
Costa Mesa, CA 92626-7187
Telephone: (714) 384-6390
Facsimile: (714) 384-6391
Email: jim@trushlaw.com

Todd H. Harrison, Esq. – SBN 230542
Brennan S. Kahn, Esq. – SBN 259548
**Perona Langer Beck Serbin Mendoza & Harrison APC**
300 E. San Antonio Drive
Long Beach, CA 90807
Telephone: (562) 426-6155
Facsimile: (562) 490-9823
Email: toddharrison@plblaw.com

Attorneys for Plaintiffs, PATRICK LaCROSS, ROBERT LIRA
and MATTHEW LOFTON, on behalf of themselves and all
others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| PATRICK LaCROSS, ROBERT LIRA and MATTHEW LOFTON, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>KNIGHT TRANSPORTATION, INC., an Arizona corporation; KNIGHT TRUCK and TRAILER SALES, LLC, an Arizona Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. EDCV18-00771 JGB (JCx)<br>Courtroom: 1 (Riverside)<br>Hon. Jesus G. Bernal, Judge<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND TO STATE COURT**<br><br>Date: June 23, 2014<br>Time: 9:00 a.m.<br>CtRm: 1<br>Action Filed: 04/18/14 |

1

# I.

## INTRODUCTION

Plaintiffs, PATRICK LACROSS, ROBERT LIRA and MATTHEW LOFTON, on behalf of themselves and all others similarly situated ("Plaintiffs") filed this class action on March 3, 2014, in San Bernardino County Superior Court, alleging that Plaintiffs and the putative class members have been misclassified as independent contractors and seeking recovery of unpaid wages, business expenses, penalties and for unfair business practices. **Plaintiffs' Complaint neither seeks a specific amount of money nor specifies a dollar value for the damages sustained.**

On March 19, 2014, Defendants Knight Transportation, Inc. ("Knight Transportation") and Knight Truck and Trailer Sales, LLC ("Knight Sales"), (collectively "Defendants"), were served with Plaintiffs' Complaint.   On or about April 18, 2014, Defendants filed a Notice of Removal, removing this action to this Court.  Defendants' Notice of Removal asserts that this Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  Pursuant to CAFA, Defendants assert, among other things, that "the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs." (Notice of Removal 3:14-15).

Defendants' removal fails to satisfy the legal standard governing this Court's removal jurisdiction, because the Defendants utterly fail to satisfy their burden of proof that the amount in controversy exceeds $5 million dollars.  The evidence upon which Defendants rely to carry their burden of proof is a single declaration by Kevin Quast, Defendants' Chief Operations Officer, comprising six paragraphs.  The declaration of Kevin Quast, Defendants' COO, is based upon mere speculation and assumptions as to several critical elements of the calculations made by Defendants.  In addition, an essential element of the Defendants' calculation is based on no evidence at all and is not even supported

by the declaration of Kevin Quast.  Rather, it is mere argument contained in the Notice of Removal.  Defendants make the statement that since "Plaintiffs have alleged that they are *representative* of a class of California-based independent contractors who worked for Knight Transportation," and then use this sentence of argument to make the assumption that the damages estimates for the three individual Plaintiffs apply identically to all putative class members.  There is absolutely no evidence to support this argument and this assumption is contrary to well settled case law that damages often vary among putative class members, and that "representativeness" of the class representatives is not based upon their damages being identical to the damages of each putative class member.

## II.

## LEGAL ARGUMENT

### A.   The Legal Standard Governing Removal Jurisdiction

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."   *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis,* 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064).   "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir. 1988)).

A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Services, LLC,* 728 F.3d 975, 981 (9th Cir. 2013). This standard conforms with a

defendant's burden of proof when the plaintiff does not plead a specific amount in controversy. *See Guglielmino v. McKee Foods*, 506 F.3d 696, 701 (9th Cir. 2007).

**B.**   **Evidentiary Burden to Establish the Amount in Controversy**

Under CAFA, "[t]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348, 185 L.Ed.2d 439 (2013).  *Standard Fire* mandates that courts determine their jurisdiction by aggregating all potential class members' individual claims. *Id.* at 1350.

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992), held:

> "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.  Normally, this burden is satisfied if the plaintiff claims a sum greater than the jurisdictional amount.  If it is unclear what amount of damages the plaintiff has sought…then the defendant bears the burden of **actually proving** the facts to support the jurisdiction, including jurisdictional amount. [citation omitted] [emphasis added]. *Gaus, supra*, 980 F.2d at 566-567.

"If the complaint does not specify a damages amount, the court can look at facts in the complaint and require the parties to submit evidence relevant to the amount in controversy." *Faulkner v. Astro-Med, Inc.,* No. C99-2562 SI, 1999 WL 820198, * 2 (N.D. Cal. Oct. 4, 1999) (citing *Conrad Assocs. V. Hartford Accident & Indem. Co.,* 994 F.Supp. 1196, 1198 (N.D. Cal. 1998)).  A defendant must submit "summary-judgment-type evidence" to establish that the amount in controversy exceeds the jurisdictional amount. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335-36 (5th Cir. 1995)).  Removal "cannot be based simply upon

4

1  conclusory allegations." *Singer,* supra 116 F.3d at 377.  To carry its burden, a

2  removing defendant must provide actual evidence, not mere speculation or

3  conclusions without foundation.

4      **C.**    **<u>Defendants' Reliance Upon The Allegation That Plaintiffs</u>**

5                  **<u>Are "Representative" Is Not Evidence And Cannot Satisfy</u>**

6                  **<u>Defendants' Evidentiary Burden To Establish Damages</u>**

7                  **<u>For The Entire Class</u>**

8          Defendants' Notice of Removal is based upon calculations that

9  "lease-related costs" for Plaintiffs and 557 class members amount to $13,033,800,

10  and that fuel costs for Plaintiffs and 557 class members amount to $31,693,300.

11  The *only* evidence to support these calculations is the six paragraph declaration of

12  Kevin Quast, Defendants' COO.  In paragraph 5 of his declaration, Mr. Quast

13  states that, based on Knight Sales' records for the three Plaintiffs, "they paid

14  approximately $450 per week for lease-related costs."  Then, in paragraph 21 of

15  the Notice of Removal, without any evidence whatsoever and based merely upon

16  a legal argument, Defendants state "Insofar as Plaintiffs have alleged that they are

17  representative of a class of California-based independent contractors who worked

18  for Knight Transportation for the last four years, Defendants made the following

19  calculations."  In the following calculations, the Defendants take the $450 average

20  lease-related costs per week calculated by Mr. Quast for each of the three named

21  Plaintiffs and apply that identical figure to all 557 class members.  This is mere

22  speculation by Defendants that every one of the 557 class members had lease-

23  related costs identical to the average of the three Plaintiffs.  There is absolutely no

24  evidence to support this gross speculation by Defendants.  Moreover, it is well

25  settled that class representatives are not required to have damages identical to the

26  class members. *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir.

27  2013) ["the presence of individualized damages cannot, by itself, defeat class

28  certification under Rule 23(b)(3)."]; *De la Fuente v. Stokely-Van Camp, Inc.,* 713

---

Plaintiff's Memorandum of Points and Authorities in Support of Motion to
Remand to State Court

1   F.2d 225, 233 (7th Cir. 1983) ["it is very common for Rule 23(b)(3) class actions

2   to involve differing damage awards for different class members."]; *Blackie v.*

3   *Barrack,* 424 F.2d 891, 905 (9th Cir. 1975) ["individuality of damage amounts

4   does not defeat a certification."].

5           In paragraph 22 of the Notice of Removal, Defendants calculate that

6   the Plaintiffs and 557 class members incurred fuel costs totaling $31,693,300.

7   The only purported evidence to support this calculation is paragraph 6 of the

8   declaration of Kevin Quast.  Paragraph 6 of the declaration of Mr. Quast states

9   that he has reviewed "settlement" sheets for Plaintiff LaCross for 18 weeks, for

10  Plaintiff Lira for 58 weeks, for Plaintiff Lofton for 76 weeks, and that on average

11  the three Plaintiffs paid $1,138 per week for fuel.  In paragraph 22 of the Notice of

12  Removal, relying solely upon a weekly average cost of fuel for the three Plaintiffs,

13  Defendants state "Insofar as Plaintiffs are alleged to be representative of a class of

14  California-based contractors who worked for Knight Transportation over the last

15  four years, Defendants made the following calculations."  The calculations then

16  apply this weekly average for the three named Plaintiffs to every one of the 557

17  class members.  Applying the average fuel costs calculated for the three named

18  Plaintiffs to all 557 class members completely and utterly lacks any evidentiary

19  support.  It is based on mere argument in paragraph 22 of the Notice of Removal.

20  Moreover, this argument is contrary to settled law that class representatives are

21  not required to have damages identical to each of the class members.  *Leyva v.*

22  *Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) ["the presence of

23  individualized damages cannot, by itself, defeat class certification under Rule

24  23(b)(3)."]; *De la Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir.

25  1983) ["it is very common for Rule 23(b)(3) class actions to involve differing

26  damage awards for different class members."]; *Blackie v. Barrack,* 424 F.2d 891,

27  905 (9th Cir. 1975) ["individuality of damage amounts does not defeat a

28  certification."].

6

**D.**   **Defendants' Calculation of 557 Class Members Is Speculative And Contradicted By Defendants' Own Evidence**

In paragraphs 21 and 22 of the Notice of Removal, in which Defendants assert that the "lease-related costs" for the three Plaintiffs and 557 class members total the amount of $13,033,800, and that fuel costs for the three Plaintiffs and 557 class members total $31,693,300, Defendants' calculations are based entirely upon the contention that there are "557 class members." The factual contention that there are "557 class members" is based solely upon the first sentence in paragraph 4 of the declaration of Kevin Quast. In that single sentence, Mr. Quast asserts that "Knight Transportation had Independent Contractor Operating Agreements with 116 California-based contractor drivers in 2010, 135 California-based contractor drivers in 2011, 118 California-based contractor drivers in 2012, and 188 California-based contractor drivers in 2013, which amounts to 557 California-based contractor drivers over the last four years." In order to come up with a total of 557 class members, this assumes that all 116 class members in 2010 worked for the entire calendar year of 2010, that all 135 class members in 2011 worked for the entire year of 2011, that all 118 class members in 2012 worked for the entire year, and that all 188 class members in 2013 worked for the entire year. There is absolutely no evidence to support any of these assumptions and Mr. Quast does not even attempt to do so. There is no explanation or calculation, or reference to business records regarding the dates of employment for these supposed 557 class members.

Moreover, these numbers are undermined by the declaration of Kevin Quast itself. In paragraph 6 of the declaration of Kevin Quast, he describes review of "settlement" sheets in order to come up with an average fuel cost per week for each of the three Plaintiffs. In paragraph 6 of his declaration, he states that Plaintiff LaCross paid a certain amount for fuel "over a period of 18 weeks" and that Plaintiff Lira paid a certain amount for fuel "over a period of 58 weeks,"

1    and that Plaintiff Lofton paid a certain amount for fuel "over a period of 76

2    weeks." Since Plaintiff LaCross was employed for "a period of 18 weeks," he

3    was not a class member for a full calendar year in any of the four years

4    Defendants refer to in paragraph 4 to arrive at a total of 557 class members.

5    Plaintiff Lira was employed for "a period of 58 weeks." Assuming that 52 of

6    those weeks was exactly in one calendar year, then the remaining six weeks were

7    in another calendar year and Mr. Lira was not a class member for that full

8    calendar year, because he was only employed for six weeks of it. Likewise with

9    Plaintiff Lofton, who was employed for "a period of 76 weeks." Even assuming

10   that 52 of those weeks fell precisely within a calendar year, the remaining 24

11   weeks would have fallen within a different calendar year and would not have

12   comprised a full calendar year and he would not have been a class member for

13   that full calendar year. The evidence offered in paragraph 6 of the declaration of

14   Kevin Quast regarding the three Plaintiffs completely undermines the calculation

15   in paragraph 4 that arrives at a total of 557 class members. There is absolutely no

16   evidence to support the contention that all 116 drivers in 2010, all 135 drivers in

17   2011, all 118 drivers in 2012, and all 188 drivers in 2013 worked for those

18   complete calendar years. As such, the conclusion there are 557 class members

19   that worked each of those full calendar years is rank speculation. The explanation

20   in paragraph 6 regarding employment by Plaintiff LaCross for 18 weeks, Plaintiff

21   Lira for 58 weeks, and Plaintiff Lofton for 76 weeks, completely undermines

22   Defendant's assumption that all class members worked the entire calendar year to

23   arrive at a total of 557 class members. The contention that there are "557 class

24   members" lacks evidentiary support, is sheer speculation and is undermined by

25   Defendants' evidence. The contention that there are 557 class members is

26   essential to the "lease-related costs" and the fuel costs calculations. Since the

27   contention that there are 557 class members that all worked the entire calendar

28   year during the 4-year class period is essential to the lease-related costs

1  calculation of $13,033,800 and the fuel costs calculation of $31,693,300, both of

2  those calculations are based on mere speculation and assumptions, without any

3  evidentiary support whatsoever.

4      In *Amador v. John Crane, Inc.*, 2014 U.S. Dist. Lexis 49999, *18 (C.D. Cal.

5  2014) defendants "use of one year's lost wages in calculating the amount in

6  controversy is entirely speculative" because it cited no authority indicating

7  plaintiff would be entitled to recover one year of back pay given the fact that he

8  worked for defendant for a little over a week.  Likewise here, Defendants reliance

9  on yearly totals for class members without any evidence that each of them was

10  employed the full calendar year is entirely speculative.

11  **E.    Defendants Present No Evidence Regarding 20% Of The Class**

12        **Members Who Obtained Their Tractors From Companies**

13        **"Not Affiliated" With Defendants**

14        In paragraph 4 of the declaration of Kevin Quast, Mr. Quast states

15  that 20% of the class members purchased or leased their tractors "from companies

16  that are not affiliated with either Knight Sales or Knight Transportation."  Without

17  any evidence and based merely on speculation, Mr. Quast estimates that this 20%

18  of the class who purchased or leased their tractors from companies other than

19  Knight Sales, "did so on terms that are approximately the same as Knight Sales'

20  terms."  This is utter speculation without any evidentiary support.  However, in

21  the Notice of Removal, Defendants utilize the figure of 557 class members to

22  calculate the lease-related costs and the fuel costs.  This figure of 557 total class

23  members includes 20% of them that purchase or lease their tractors from

24  companies not affiliated with Defendants and therefore those costs are based on

25  mere speculation.  In this manner, the calculations by Defendants are based on

26  speculation and lack foundation as to this 20% of the supposed 557 class

27  members.

28

Plaintiff's Memorandum of Points and Authorities in Support of Motion to
Remand to State Court

**F.**     <u>**Defendants Fail to Calculate or Deduct Damages Incurred**</u>
<u>**Outside California**</u>

      The relevant job titles of the class members alleged in Plaintiffs' complaint are the persons that worked for Defendants as "California-based Owner Operators and are classified by Defendants as independent contractors, during the relevant time period." (Plaintiffs' complaint, paragraph 5). Plaintiff alleges that these "Owner Operators" were misclassified as independent contractors. Defendant refers to these Owner Operators as "Dry Van OTR" drivers (see Declaration of James M. Trush ("Trush Decl."), Ex. A, Defendants' website). In another class action that Defendants have been litigating for approximately 8 years in state court and in which Defendants are currently seeking court approval of a settlement, Defendants have argued "that drivers only spend approximately 10% to 15% of their time driving within California and California law should not apply to their working time spent outside of California, thereby substantially reducing potential damages" and stating "Although approximately 20 of these drivers are hourly drivers whose routes are driven entirely within California, the remaining 300 … are over-the-road ("OTR") drivers who spend approximately 3 days per month (on average) driving routes in California with their remaining days driving among other western states" (see Trush Decl., Ex. B, Notice of Motion and Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Order Granting Preliminary Approval of Class Action Settlement at 9:1-4 and 3:13-16 in *Carson v. Knight Transportation*, Tulare Superior Court Case Number 09-234186 & 251121, see also the declaration of Craig Ackerman in support of Motion for Preliminary Approval at 10:5-8 and 9:7-11, Trush Decl., Ex. C).

      In the *Carson v. Knight Transportation* case, which has been litigated in Tulare County Superior Court for over eight years and in which the parties are currently seeking court approval of a settlement, Knight has contended that the OTR drivers "only spend approximately 10% to 15% of their driving time within

California and California law should not apply to their working time spent outside of California, thereby substantially reducing potential damages." In their Notice of Removal, Defendants have failed to provide any explanation or calculation of the percentage of mileage driving within California and outside California for the three named Plaintiffs and the purported 557 class members. Applying the 10% figure from the *Carson* case to Defendant's damages calculation would reduce the total damages to less than $5 million dollars.

G.   **Defendants Fail to Account for Class Members Who Have Released Their Claims Against Defendants**

In the 43rd affirmative defense in Defendants' Answer, Defendants assert that certain putative class members "have released or will release the Knight Defendants from liability from such claims asserted in the complaint." Since Defendants have asserted this affirmative defense, they are obligated to provide this Court with an evidentiary explanation of how many putative class members have released their claims against the Defendants and deduct the damages incurred by those putative class members from the amounts asserted in the Notice of Removal. Defendants have failed to do so, rendering the calculations in the Notice of Removal speculative, uncertain and insufficient to meet the Defendants' burden of proof.

H.   **The Attorney's Fee Contention in the Notice of Removal Does Not Satisfy Defendants' Evidentiary Burden**

Defendants calculate the amount of $8,945,420 as Plaintiffs' attorney fees, based on case law that "fee awards in class actions average around one-third of the recovery." Defendants then use a 20% "of the recovery" figure. However, the key fact is that this amount for purported attorney fees is a portion of the total damages calculated, _not_ in addition to it. Therefore, to the extent that the total damages calculated by Defendants of $44,727,100 is based upon speculation, lacks foundation and fails to meet Defendants' evidentiary support, then the

1    calculation of attorney fees as 20% "of the recovery" is equally insufficient.

2            Additionally, numerous courts in the Ninth Circuit have held that

3    only attorney fees that have accrued at the time of removal should be considered

4    in calculating the amount in controversy. *Dukes v. Twin City Fire Ins. Co.,* No.

5    CV-09-2197-PHX-NVW, 2010 WL 94109, *2 (D. Ariz. Jan. 6, 2010 ("attorneys'

6    fees incurred after the date of removal are not properly included because the

7    amount in controversy is to be determined as of the date of removal.   Future

8    attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in

9    controversy' at the time of removal"); Green *v. Party City Corp.,* No. CV-01-

10   09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002)

11   (calculating attorneys' fees on the basis "only [of] work done by plaintiff's counsel

12   prior to removal"); *Faulkner v. Astro-Med, Inc.,* No. C 99-2562 SI, 1999 WL

13   820198, *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the

14   purposes of establishing jurisdiction, the only fees that can be considered are

15   those incurred as of the date of removal," citing *Miranti v. Lee,* 3 F.3d 925, 928

16   (5th Cir. 1993)); *Conrad Assocs. v. Hartford Accident & Indem. Co.,* 994 F.Supp.

17   1196, 1200 (N.D. Cal. 1998) (declining to consider post-removal events in

18   calculating attorneys' fees for purposes of assessing removal jurisdiction);

19   *Wastier v. Schwan's Consumer Brands,* No. 07CV1594, 2007 WL 4277552, *3

20   (S.D. Cal. Dec. 5, 2007) ("Defendants' estimate of [p]laintiffs' fees for activities

21   anticipated but not yet performed, even if accurate, may be irrelevant").

22                                    **III.**

23   **THE NOTICE OF REMOVAL LACKED ANY OBJECTIVELY**

24   **REASONABLE BASIS AND ATTORNEYS' FEES SHOULD BE**

25   **AWARDED TO PLAINTIFFS**

26           Plaintiffs seek attorneys' fees under 28 U.S.C. § 1447(c).  "Under 28 U.S.C.

27   § 1447(c), '[a]n order remanding the case may require payment of just costs and

28   any actual expenses, including attorney fees, incurred as a result of the removal.'"

Plaintiff's Memorandum of Points and Authorities in Support of Motion to
Remand to State Court

1   *Federal Home Loan Mortg. Corp. v. Lettenmaier,* No. CV-11-165-HZ, 2011 WL
2   1297960, *1 (D. Or. Apr. 5, 2011)(quoting 28 U.S.C. § 1447(c)). "Absent
3   unusual circumstances, courts may award attorneys' fees under § 1447(c) only
4   where the removing party lacked an objectively reasonable basis for seeking
5   removal.  Conversely, when an objectively reasonable basis exists, fees should be
6   denied." *Id.* (quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141
7   (2005)). "Removal is not objectively unreasonable solely because the removing
8   party's arguments lack merit and the removal is ultimately unsuccessful." *Id.*
9   (citing *Lussier v. Dollar Tree Stores, Inc.,* 518 F.3d 1062,  1065 (9th Cir. 2008)).
10  "Rather, the court should assess 'whether the relevant case law clearly foreclosed
11  the defendant's basis of removal' by examining the 'clarity of the law at the time
12  of removal.'" *Id.* (quoting *Lussier,* 518 F.3d 1066); see also *Patel v. Del Taco,*
13  *Inc.,* 446 F.3d 996, 999-1000 (9th Cir. 2006) ("Del Taco's  state court petition to
14  confirm the arbitration award contained only one state law cause of action; it did
15  not contain any federal claim that could provide the basis for a § 1441(c) removal.
16  Joinder of a federal claim and a claim for removal of a state court action in a
17  federal complaint cannot effect a § 1441(c) removal. There being no objectively
18  reasonable basis for removal, the district court did not abuse its discretion in
19  awarding attorney's fees under § 1447(c) to Del Taco").

20       The Notice of Removal by Defendant lacks any objectively reasonable basis
21  because it is based in several significant respects upon sheer speculation, rather
22  than evidence.  A Notice of Removal cannot be "objectively reasonable" if it is
23  based on sheer speculation and lacks any evidence on several critical elements
24  such as the instant Notice of Removal filed by Defendant.  As such, attorneys'
25  fees in the amounts incurred by Plaintiffs' counsel should be awarded (see Trush
26  Decl., ¶ 5).

27  ///
28  ///

Plaintiff's Memorandum of Points and Authorities in Support of Motion to
Remand to State Court

## IV.

## <u>THIS MATTER SHOULD BE REMANDED SUA SPONTE</u>

In <u>Garza v. Bettcher Industries, Inc.</u>, 752 F.Supp. 753, 764, (E.D. Mich. 1990), the court held that the defendant's failure in its removal petition to introduce evidence supporting its assertion that the amount in controversy exceeded $75,000.00 (per plaintiff) warranted **Sua Sponte** remand.

> "[T]he facts necessary to support the jurisdictional amount were clearly available to the Defendant at the time it apparently chose to omit them from the removal petition. Thus, the Court finds that it was fully within its authority, under 28 U.S.C. §1447(c), to remand this case to state court because of the lack of anything other than conclusory allegations in the original removal petition. Defendant's counsel, and others similarly situated, are hereby forewarned that the Court will continue to adhere to this procedure in the future." 752 F.Supp. at 764.

Pursuant to the above authority, this case should be remanded because Defendants fail to meet their burden of proving jurisdictional facts in the removal petition itself. Moreover, Defendants have not met their burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional limit.

///
///
///
///
///
///
///
///

Plaintiff's Memorandum of Points and Authorities in Support of Motion to Remand to State Court

**V.**

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court

issue an Order remanding the above-entitled action to the Superior Court of the

State of California for the County of San Bernardino.

DATED: May 19, 2014

TRUSH LAW OFFICE, APC
PERONA, LANGER, BECK, SERBIN,
MENDOZA & HARRISON, APC

By: _____
James M. Trush, Esq.
Brennan S. Kahn, Esq.
Attorney for Plaintiffs, PATRICK
LaCROSS, ROBERT LIRA and
MATTHEW LOFTON, on behalf of
themselves and all others similarly situated

M:\LaCross v. Knight - IC Case\USDC\P&A in Support of Mo to Remand (05.15.14) [FINAL].doc

15

Plaintiff's Memorandum of Points and Authorities in Support of Motion to
Remand to State Court

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 695 Town Center Drive, Suite 700, Costa Mesa, California. On May 19, 2014, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: Ntc. of Mo. & Mo to Remand to State Court; Points & Authorities in Support; Dec. of James M. Trush; Objections to Evidence; Certificate of Interested Parties; [Proposed] Order

SERVED UPON:      **SEE ATTACHED SERVICE LIST**

[X]     (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of **Trush Law Office, APC** for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit;

[ ]     (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by **DDS Attorney Service** to receive documents to be delivered on the same date. A proof of service signed by the authorized courier is available upon request.

[ ]     (BY FEDERAL EXPRESS) I am readily familiar with the practice of **Trush Law Office, APC** for the collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery)

[ ]     (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(I), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is maintained at **Trush Law Office, APC**, and is available upon request.

[ ]     (BY ELECTRONIC MAIL) The above-referenced document was transmitted by electronic mail transmission to the electronic mail address last provided me by the person(s) shown on the accompanying Service List, and I hereby attest that no information was received by sender indicating that the electronic mail transmission was undeliverable.

[ ]     (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]     (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I took said action(s) at the direction of a licensed attorney authorized to practice before the Federal Courts.

Executed on May 19, 2016, at Costa Mesa, California

JULIE KENNEDY

Proof of Service, Pg. 1

SERVICE LIST
LaCross v. Knight Transportation - IC
USDC/Central/Case No. EDCV18-00771 JGB (JCx)

Richard H. Rahm, Esq.
Littler Mendelson, P.C.
650 California Street, 20th Floor
San Francisco, CA  94108-2693
rrahm@littler.com
T: 415-433-1940
F: 415-399-8490

**Attorneys for Defendant**: KNIGHT TRANSPORTATION, INC.

James E. Hart, Esq./Thomas J. Whiteside, Esq.
Littler Mendelson, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
jhart@littler.com
twhiteside@littler.com
T: 949-705-3000
F: 949-724-1201

Carly Nese, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
cnese@littler.com
T: 310-553-0308
F: 310-553-5583

Todd H. Harrison, Esq. – SBN 230542
Brennan S. Kahn, Esq. – SBN 259548
Perona Langer Beck Serbin Mendoza &
Harrison APC
300 E. San Antonio Drive
Long Beach, CA  90807
Telephone: (562) 426-6155
Facsimile:  (562) 490-9823
Email: toddharrison@plblaw.com

**Associate Counsel for Plaintiffs**

rev. 04/23/14 jk   M:\LaCross v. Knight - IC Case\USDC\POS re Ntc of Mo & Mo to Remand to State Court (05.19.14).doc