1   James M. Trush, Esq. -- SBN 140088
2   **Trush Law Office, APC**
    695 Town Center Drive, Suite 700
3   Costa Mesa, CA  92626-7187
    Telephone:  (714) 384-6390
4   Facsimile:  (714) 384-6391
5   Email:  jim@trushlaw.com

6
    Todd H. Harrison, Esq. -- SBN 230542
7   Brennan S. Kahn, Esq. -- SBN 259548
8   **Perona Langer Beck Serbin Mendoza & Harrison APC**
    300 E. San Antonio Drive
9   Long Beach, CA  90807
    Telephone: (562) 426-6155
10  Facsimile:  (562) 490-9823
11  Email: toddharrison@plblaw.com

12
    Attorneys for Plaintiffs, PATRICK LaCROSS, ROBERT LIRA
13  and MATTHEW LOFTON, on behalf of themselves and all
14  others similarly situated

15                UNITED STATES DISTRICT COURT

16        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

17

18  PATRICK LaCROSS, ROBERT          )  Case No. EDCV18-00771 JGB (JCx)
    LIRA and MATTHEW LOFTON, on      )  Courtroom: 1 (Riverside)
19  behalf of themselves and all others )  Hon. Jesus G. Bernal, Judge
    similarly situated,              )
20                                   )
                                     )  **DECLARATION OF JAMES M.**
21                        Plaintiffs, )  **TRUSH IN SUPPORT OF**
                                     )  **PLAINTIFFS' MOTION TO**
22  vs.                              )  **REMAND TO STATE COURT**
                                     )
23  KNIGHT TRANSPORTATION, INC.,     )
    an Arizona corporation; KNIGHT   )
24  TRUCK and TRAILER SALES, LLC,    )  Date:  June 23, 2014
    an Arizona Limited Liability Company; )  Time:  9:00 a.m.
25  and DOES 1 through 100, inclusive, )  CtRm: 1
                                     )
26                        Defendants. )
                                     )  Action Filed:  04/18/14
27  _____ )

28
    ─────────────────────────────────────────────
                                1
    **DECLARATION OF JAMES M. TRUSH IN SUPPORT OF PLAINTIFFS'**
                **MOTION TO REMAND TO STATE COURT**

I, James M. Trush, hereby declare:

1.  I am an attorney at law, duly licensed to practice law before all courts in the State of California and the United States District Court for the Central District of California. I have personal knowledge of the facts stated herein, and if called to testify, I could, and would, competently testify thereto.

2.  Defendants maintain a website at www.driveknight.com. On Defendant's website is a listing for "Positions," which includes the position "Owner Operator." The "Owner Operator" button on Defendant's website includes the information attached hereto as Exhibit "A" and incorporated herein by reference, which I printed from Defendant's website on May 14, 2014. Among other things, the "Owner Operators" on Defendant's website are described as "Dry Van OTR."

3.  According to the Settlement Agreement between plaintiffs and Knight Transportation, Inc., in *Carson, et al. v. Knight Transportation, Inc.,* Tulare County Superior Court, Case Numbers 09-234186 & 251121 ("*Carson* Action"), plaintiffs and Knight Transportation have been litigating those cases for over 8 years. Presently, plaintiffs and Knight Transportation are seeking court approval from the Tulare County Superior Court for a class action settlement in the *Carson* case. The Notice of Motion and Memorandum of Points and Authorities in Support of the Motion for Preliminary Approval of Class Action Settlement in the *Carson* case is attached hereto as Exhibit "B" and is incorporated herein by reference.

4.  In support of the request for court approval of a class action settlement in the *Carson* case, the Declaration of Craig Ackermann was filed in the *Carson* case. That declaration is attached hereto as Exhibit "C" and is incorporated herein by reference.

5.  On behalf of Plaintiffs, I have incurred time reviewing Defendants' notice of removal, conducting legal research and preparing this motion to remand

**DECLARATION OF JAMES M. TRUSH IN SUPPORT OF PLAINTIFFS'
MOTION TO REMAND TO STATE COURT**

as follows:  At least 1.5 hours reviewing the notice of removal, accompanying declaration and discussing with co-counsel, Todd Harrison and Brennan Kahn; 1.0 hour reviewing Defendants' website and records provided by Plaintiffs, at least 2.5 hours conducting legal research to prepare the motion to remand, and at least 3.5 hours preparing the motion to remand, objections to evidence, and this declaration.  Accordingly, I have already spent at least 8.5 hours of attorney time in connection with the motion to remand, which does not include the time that I will spend reviewing Defendants' opposition, preparing a reply, and attending the hearing on this motion.  My normal and customary hourly rate in class-action wage and hour litigation is $750.00 per hour.  This amount has been approved as a reasonable hourly rate by several courts in connection with wage and hour class-action matters that I have handled.  Accordingly, the 8.5 hours that I have spent, multiplied by $750.00 per hour, equals $6,375 in attorney's fees, which Plaintiffs have incurred thus far in connection with the motion to remand.  Again, this does not include attorney time that will be spent reviewing Defendants' opposition, preparing a reply and attending the hearing on this motion, and Plaintiffs reserve the right to supplement the attorney's fee request at or before the hearing on this motion, in order to include those amounts.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on May 19, 2014, at Costa Mesa, California.

James M. Trush

M:\LaCross v. Knight - IC Case\USDC\Dec of JMT in Support of Mo to Remand (05.12.14)[FINAL].doc

3

**DECLARATION OF JAMES M. TRUSH IN SUPPORT OF PLAINTIFFS'
MOTION TO REMAND TO STATE COURT**

# EXHIBIT "A"

View All Knight Divisions | Dry Van | Refrigerated | Port & Rail Services | Driver Training

Follow Us:



**KNIGHT** TRANSPORTATION

APPLY NOW | HOMETOWN LOCATIONS | ABOUT US | EQUIPMENT | POSITIONS | DRIVER TRAINING | CONTACT

877-403-4029 opt.#1 *Your Hometown National Carrier*

 **VIDEO** What does the Knight Team say about us? Watch now

 **INTERACTIVE MAP** Where are our service centers? Find out here

 **SLIDESHOW** Find out what we're driving at Knight. View now

 **LEADERSHIP** Why is Knight so respected in trucking? Learn here

Home > Positions > Owner Operators

# Dry Van OTR

To apply by phone, call 800-437-5907

### OPPORTUNITIES
Company Drivers
Owner Operators
Lease Purchase

### OTHER POSITIONS
Refrigerated OTR
Port & Rail
Services

## Owner Operators

Knight Transportation understands what it takes to own your own business, so we provide the tools to ensure you are successful, including the unique support of many Service Centers to provide you with maintenance and support needs.

Our variable compensation program is designed to keep your profits up when freight rates are up, and our aggressive Fuel Protection Program is designed to keep your net fuel costs consistent no matter how high fuel prices go. Some of our Service Centers offer discounted fuel in highly traveled lanes, and we have agreements with approved stops nationwide to make sure you never pay the pump price. You have access to affordable insurance and various discounts on tires, maintenance and service from Knight Service Centers, as well as several body shops.

## Great Features Offered To Make Owner Operators Successful:

- 24/7 Operations And Breakdown Support
- Easy Pass And Pre-Pass Toll Programs (at low charge of $3.50 per week)
- Weekly Settlements (with exclusive settlement representative)
- No Trailer Rental Fee
- Additional Pay for Dead Head Miles
- Low Cost Bobtail, Worker's Compensation and Physical Damage Insurance
- National Parts, Fuel and Maintenance Discount Programs

## Additional Benefits To A Long-lasting Relationship Include:

- No Forced, Single Source Dispatch
- Regional Lanes Offer Consistent Hometime Outside Your Truck
- Many Owner Operator Friendly Service Centers
- Large Carrier With Small Family Feel
- Open Door Policy
- We are Debt Free Which Means Less Risk For Your Business
- ATBS To Assist You In Running Your Business, Plus Support From Knight

## Driver Qualifications

- 24 years of age
- 1 year O.T.R. experience within the last 5 years
- Pass DOT physical and functional capacity testing
- No DWI/DUI in last 10 years and no failed or refused drug testing
- No more than 2 moving violations in last 2 years
- Must have good driving safety record
- No more than 1 preventable accident in last 3 yrs

*In order to contract multiple tractors, or contract a tractor not driven by the owner/lessee to Knight Transportation, the driver or drivers must meet all of the driver qualifications and be approved by Knight, as well as have their own qualifying Workers Compensation Insurance.*

## Tractor Specifications

- Tractor cannot be more than 7 years old *(and qualified by shop inspection)*
- Wheel base must be less than 265 inches with no exceptions
- Sliding 5th wheel *(preferred)*



**CARL GIBSON** OWNER OPERATOR

**Carl Gibson:** *Owner Operator*
Listen to see why Carl says "try Knight, you can't go wrong".



**RAY DORITY** OWNER OPERATOR

**Ray Dority:** *Owner Operator*
Secure freight along with good discount programs are just a couple of the reasons why Ray chooses to partner with Knight.

- 3 axle with sleeper
- Stack height between 13' to 13'6"
- Maximum weight of 18,500 lbs. (with 100 gallons of fuel and driver(s) on board)
- 5th wheel height of 47 ½" or less
- Electronically governed at **68mph Cruise, 70mph Pedal** *(we will cover cost)*
- Truck must have an Anti-Theft System installed
- Tractor must be able to pass a DOT inspection in a Knight Transportation shop

To apply now <u>Click Here</u> or call our recruiting department directly at 800-437-5907.

<u>View All Knight Divisions</u> | <u>Knight Dry Van</u> | <u>Knight Refrigerated</u> | <u>Knight Port & Rail Services</u> | <u>Knight Driver Training</u>                    © Copyright 2013, Knight Transportation, Inc.

!-- LeadFormix -->

**EXHIBIT "B"**

**ACKERMANN & TILAJEF, P.C.**
Craig Ackermann (Cal. Bar No. 229832)
1180 S. Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:      (310) 277-0614
Facsimile:      (310) 277-0635
cja@ackermanntilajef.com

**MICHAEL MALK, ESQ., APC**
Michael Malk, Esq. (State Bar No. 222366)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:      (310) 203-0016
Facsimile:      (310) 499-5210
mm@malklawfirm.com

Attorneys for Plaintiffs Steve Carson, Christopher Ainsworth, and Tom Blair, II

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF TULARE

| | |
|---|---|
| STEVE CARSON and CHRISTOPHER AINSWORTH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KNIGHT TRANSPORTATION, INC. and DOES 1-100, <br><br> Defendants. | CASE NOS: 09-234186 & 251121 <br><br> **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: April 10, 2014 <br> Time: 8:30 am <br> Dept: 2 <br> Judge: Hon. Lloyd L. Hicks |
| TOM BLAIR, II, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KNIGHT TRANSPORTATION, INC. and DOES 1-100, <br><br> Defendants. | |

*(left margin, vertical text)* ACKERMANN & TILAJEF, P.C. 1180 SOUTH BEVERLY DRIVE, SUITE 610 LOS ANGELES, CALIFORNIA 90035

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on April 10, 2014, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department 2 of the Superior Court of California for the County of Tulare, located at 221 South Mooney Boulevard, in Visalia, California 93291, before the Honorable Judge Lloyd L. Hicks, pursuant to section 382 of the California Code of Civil Procedure, Plaintiffs Steve Carson, Christopher Ainsworth and Tom Blair ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby move this Court for entry of an Order:

1.     Certifying the class for purposes of settlement;

2.     Appointing Plaintiffs Steve Carson, Christopher Ainsworth and Tom Blair, II as Class Representatives for purposes of settlement;

3.     Appointing Craig J. Ackermann, Esq. of Ackermann & Tilajef, P.C. and Michael Malk, Esq., of Michael Malk, Esq., APC, as Class Counsel for purposes of settlement;

4.     Preliminarily approving the settlement as fair, adequate, and reasonable, based upon the terms set forth in the parties' Stipulation of  Class Action Settlement and Release Between Plaintiffs and Defendant ("Settlement Agreement"), including payment by Knight Transportation, Inc. ("Knight" or "Defendant") of a Maximum Settlement Amount of $425,000.00;

5.     Preliminarily approving Enhancement Awards in the amounts of $10,000 to Steve Carson, $10,000 to Christopher Ainsworth, and $5,000 to Tom Blair, II, in recognition of their service to the Settlement Class;

6.     Preliminarily approving Plaintiffs' Counsel's request for up to $141,652.00 for attorneys' fees to Class Counsel, plus reimbursement of litigation costs up to $20,000;

7.     Appointing CPT Group, Inc. as the third-party Claims Administrator for mailing notices and for claims administration, approving that a maximum $18,000.00 be deducted from the Maximum Settlement Amount for the costs of claims administration, and approving that the fees and costs of the Claims Administrator will be paid from the Maximum Settlement Amount; and

8.     Approving the proposed Class Notice and Claim Form, and ordering they be disseminated to the Settlement Class as provided in the Settlement Agreement.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support thereof; the declarations of Craig Ackermann, Esq. and Michael Malk, Esq., in Support thereof; the Settlement Agreement, and the proposed Class Notice and Claim Form attached thereto; the proposed Order; the other records, pleadings, and papers filed in this action; and upon such other documentary and verbal evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: March 19, 2014

Respectfully,
Ackermann & Tilajef, P.C.
Michael Malk, Esq., APC

By:   Craig Ackermann
      Attorney for Plaintiffs and the Putative Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

## Table of Contents

I.    SUMMARY OF ARGUMENT .................................................................. 1

II.   FACTUAL BACKGROUND .................................................................. 3

     A.   Case Initiation and Claims Alleged in *Carson* and *Blair* ......................... 3

     B.   The Parties' Pre-Certification Discovery and Class Certification Briefing ............. 4

     C.   Knight's Motion to Decertify the Class and Plaintiffs' Motion for Summary Adjudication on their Itemized Wage Statement Claim ............................... 5

     D.   Litigation History Following the Court's Partial Decertification Ruling ............... 6

         (1)   The Parties' Failed Mediation In December 2012 ................................ 6

         (2)   The Filing of The *Blair* Case for PAGA Penalties ............................. 7

         (3)   The Class Notice is Approved and Disseminated to the Class ..................... 8

         (4)   Additional Motions Filed By Defendant and Plaintiff ......................... 8

         (5)   Reasonable, Arm's Length Settlement Discussions Finally Culminate in a Settlement that Embodies a Fair Compromise Between the Parties .......... 8

III.   THE SETTLEMENT AGREEMENT ...................................................... 12

IV.   DISCUSSION .............................................................................. 14

     A.   A Settlement Class Should be Certified ........................................... 14

     B.   The Settlement Should Be Approved As Fair, Reasonable and Adequate .............. 18

     C.   The Proposed Notice of Class Action Settlement Satisfies Due Process ................ 20

     D.   The Proposed Enhancement Awards for the Plaintiffs and Attorneys' Fee Award Are Reasonable ........................................................... 22

V.   CONCLUSION ........................................................................... 23

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## Table of Authorities

2

3 <u>CASES</u>

4 *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135
   (2000) ............................................................................................................19, 20

5 *Amchem Products, Inc., v. Windsor*, 521 U.S. 591 (1997) ...............................15, 18

*Archibald v. Cinerama Hotels*, 15 Cal. 3d 853 (1976) ...........................................21

6 *Bell v. American Title Ins. Co.* 226 Cal. App. 3d 1589 (1991) ..............................15

7 *Cartt v. Superior Court*, 50 Cal. App. 3d 960 (1975).........................................21, 23

8 *Clark v. American Residential Services, LLC,* 175 Cal. App. 4th 785 (2009) ........19

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) .........................................19

9 *Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982).................................................15

10 *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013) ....................17

11 *In re American Int'l Group Secs. Litig.*, 265 F.R.D. 157 (S.D.N.Y. 2010), *vacated and
   remanded*, 689 F.3d 229 (2d Cir. 2012).............................................................18

12 *Kullar v. Foot Locker Retail, Inc.* 168 Cal. App. 4th 116 (2008) ..........................19

13 *Marcarelli v. Cabell*, 58 Cal.App.3d 51 (1976) ....................................................14

14 *Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982) ...........20

*Quezada v. Con-way Freight, Inc.*, No. C 09-03670 JSW, 2012 WL 4901423 (N.D.
   Cal. Oct. 15, 2012) ...........................................................................................10

15 *Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158 (E.D. Cal. 2012) ............17

16 *Speed Shore Corporation v. Denda*, 605 F.2d 469 (9th Cir. 1979) ........................20

17 *Stambaugh v. Superior Court*, 62 Cal. App. 3d 231 (1976)....................................20

18 *Sullivan v. DB Investments,* 667 F.3d 273 (3d Cir. 2011).......................................18

19

20 <u>STATUTES</u>

Cal. Civ. Code, section 1781 ...................................................................................15

21 California Business and Professions Code §§ 17200 *et seq.*......................................4

22 California Labor Code § 221 .....................................................................................4

23 California Labor Code § 222 .....................................................................................4

California Labor Code § 223 .....................................................................................4

24 California Labor Code § 226 .....................................................................................4

25 California Labor Code § 226.3 ..................................................................................4

California Labor Code §§ 201–203 ...........................................................................4

26

27

28

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**RULES**

California Rule of Court 1859(f)............................................................................20

California Rule of Court 3.679(f)...........................................................................21

**REGULATIONS**

California Class Actions Practice and Procedure § 14.02 (2007)............................15

MANUAL FOR COMPLEX LITIGATION
    § 21.632 (4th ed. 2004)....................................................................................14

Manual for Complex Litigation § 21.632 (4th ed. 2004)........................................19

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER
GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

After four years of formal discovery and hard-fought litigation including written discovery and a number of depositions, the briefing and denial of cross motions for summary judgment, extensive and repeated briefing of matters related to class certification and decertification, a full-day mediation consisting of arms' length negotiations, the filing of a follow-up lawsuit for PAGA penalties, the dissemination of the Class Notice, and more than one year of settlement negotiations, the parties have finalized and executed a Stipulation of Class Action Settlement and Release Between Plaintiffs and Defendant ("Settlement Agreement"),[1] which the Class Representatives Steve Carson and Christopher Ainsworth ("Plaintiffs" or "Class Representatives"), and Tom Blair, II, the additional proposed representative of the Settlement Class (collectively, the "Settlement Class Representatives"),[2] present to the Court for preliminary approval.

The Settlement contemplates a Maximum Settlement Amount[3] of $425,000, payable on a "claims made" basis by Knight Transportation, Inc. ("Knight" or "Defendant") to Qualified Claimants[4] with a 50% floor on the distribution of the Net Settlement Amount[5] to the Settlement Class Representatives and the Settlement Class of 1,787 current and former truck drivers,[6] inclusive

---

[1] A true and correct copy of the parties' fully executed Settlement Agreement is attached as **Exhibit 1** to the Declaration of Craig Ackermann in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed herewith.

[2] The parties' Settlement Agreement contemplates that Plaintiffs will file a Second Amended Complaint, adding Tom Blair, II as a named Plaintiff and adding the *Blair* Action's PAGA claims to the claims alleged in the *Carson* Action. Plaintiffs' Second Amended Complaint is attached as **Exhibit 1** to the parties' Joint Stipulation and Request for an Order Granting Plaintiffs Leave to Amend Their Second Amended Complaint, filed herewith.

[3] *See* Settlement Agreement, at ¶¶ 27, 43.

[4] Qualified Claimants are those Class Members who submit timely, valid and undisputed claim forms. Settlement Agreement, at ¶ 34.

[5] *See* Settlement Agreement, at ¶¶ 30, 44.

[6] The proposed Settlement Class is defined as "[a]ll current and former truck drivers employed by Knight Transportation, Inc. who were residents of California and who were compensated via a piece-rate compensation system, at any time during the Settlement Class Period." Settlement Agreement, at ¶ 39. The "Settlement Class Period" for the Settlement Class means August 28, 2005 through the date the Court enters an Order preliminarily approving the Settlement with respect to all claims. *Id.* ¶ 40.

of attorneys' fees and reimbursement of actual litigation costs to Ackermann & Tilajef, P.C. and Michael Malk, Esq., APC (jointly, "Class Counsel"), Enhancement Awards for the three Settlement Class Representatives, settlement administration costs,[7] and a payment to LWDA, as approved by the Court.[8] The Net Settlement Amount ("NSA") available for distribution to the Settlement Class, if the settlement is approved, amounts to $216,098.00, of which at least 50% shall be paid to the Qualified Claimants who submit claims regardless of the number of timely claims submitted.[9]

     Plaintiffs seek an order: (1) granting preliminary approval of the settlement; (2) approving the parties' proposed form and method of notifying Class Members[10] of the settlement and their

---

[7] The proposed Settlement Administrator, CPT Group, Inc., has submitted a detailed and firm quote to the parties indicating that the administration can be accomplished for $18,000. Ackermann Decl. ¶ 38, Ex. 3. The quote sets forth, in detail, the various tasks that the proposed administrator will perform and the costs entailed in each task. *Id.*

[8] The Settlement Agreement provides for the following:

| | Total Amount | Source |
|---|---|---|
| Maximum Settlement Amount | $ 425,000.00 | Settlement Agreement, at ¶¶ 27, 43. |
| Attorneys' Fees | $ 141,652.00 | Settlement Agreement, ¶ 56. |
| Litigation Costs | $ 20,000.00 | Settlement Agreement, at ¶ 56. |
| Claims Administrator Costs | $ 18,000.00 | Settlement Agreement, at ¶ 54. |
| Carson Enhancement Award | $ 10,000.00 | Settlement Agreement, at ¶ 49. |
| Ainsworth Enhancement Award | $ 10,000.00 | Settlement Agreement, at ¶ 49. |
| Blair Enhancement Award | $ 5,000.00 | Settlement Agreement, at ¶ 49. |
| Payment to LWDA | $ 4,250.00 | Settlement Agreement, at ¶ 58. |
| **Net Settlement Amount** | **$ 216,098.00** | |

[9] As an example, if the total amount claimed by the class amounts to 30% of the net settlement fund, then 50% of the net settlement fund shall be distributed to those qualified claimants who submitted claims, with the extra 20% being redistributed pro-rata to those claimants on the basis of each class members' weeks worked as a percentage of all qualified claimants' weeks worked. If, however, more than 50% of the Net Settlement Amount is claimed, Knight will pay out the actual claimed amount to all of the Qualified Claimants. *See* Settlement Agreement, at ¶ 48(b).

[10] Class members in the related case styled *JACK MORRISON, individually and on behalf of all others similarly situated, Plaintiffs, vs. KNIGHT TRANSPORTATION, INC., and DOES 1-100, inclusive,* Defendants that was filed on May 9, 2008 and is pending in the Tulare County Superior Court, Case No. 228016 ("*Morrison* Action"), specifically do not waive their rights to pursue the other claims alleged in *Morrison,* including missed meal and rest breaks and derivative claims for violations of section 17200 *et seq.* of the California Business & Professions Code.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

2

1  right to opt-out or object; and (4) setting a hearing on whether the Court should grant final approval

2  of the settlement, enter a final judgment, approve the service awards, and approve an award of

3  attorney fees and costs to Ackermann & Tilajef, P.C. and Michael Malk, Esq., APC ("Class

4  Counsel"). As shown below, the terms of the Settlement Agreement are fair and reasonable, and

5  satisfy the criteria for judicial approval. While preserving all of its rights in this litigation if the

6  settlement is not approved, Knight does not oppose this motion. Ackermann Decl. ¶ 57.

7  **II. FACTUAL BACKGROUND**

8      **A. Case Initiation and Claims Alleged in *Carson* and *Blair***

9      Knight Transportation, Inc. is a nationwide transportation company based in Arizona, which

10  trades on the New York Stock Exchange under the ticker symbol "KNX." In California, Knight

11  maintains and operates two service centers located in Tulare and Fontana. At any one time during

12  the class period, Knight employed approximately 320 California-based drivers. *See* Ackermann

13  Decl. ¶ 25. Although approximately 20 of these drivers are hourly drivers whose routes are driven

14  entirely within California, the remaining 300 full-time equivalents ("FTEs") are over-the-road

15  ("OTR") drivers who spend approximately 3 days per month (on average) driving routes in

16  California with their remaining days spent driving among other western states. *Id.* Thus, the vast

17  majority of the 1,752 California-based drivers in the certified class in the *Carson* Action are/were

18  OTR drivers. Indeed, Plaintiffs Carson, Ainsworth, and Blair were all OTR drivers who were

19  employed by Knight in California at various points during the Settlement Class Period.

20      On August 28, 2009, Plaintiffs Carson and Ainsworth filed the case styled *STEVE CARSON*

21  *and CHRISTOPHER AINSWORTH, individually and on behalf of all others similarly situated,*

22  *Plaintiffs, vs. KNIGHT TRANSPORTATION, INC., and DOES 1-100, inclusive, Defendants*, and is

23  pending in the Tulare County Superior Court, Case No. 09-234186 (the "*Carson* Action").

24  Ackermann Decl. ¶ 13. Plaintiffs Carson and Ainsworth filed a First Amended Complaint on

25  September 25, 2009. *Id.* ¶ 14. In their First Amended Complaint, Plaintiffs Carson and Ainsworth

26  alleged that their former employer, Knight Transportation Services, Inc. employed numerous

27  company-wide policies that gave rise to the following causes of action: (1) failure to pay minimum

28  wages due for pre- and post-trip inspection activities and for work-related delay and detention time

    as required by section 1194.2 of the Labor Code; (2) failure to pay the stated and promised piece

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1   rate due to Defendant's drivers as required by sections 221–223 of the Labor Code; (3) failure to pay

2   wages due to former Andrus drivers upon termination in violation of sections 201–203 of the Labor

3   Code; (4) unfair business practices based on the foregoing in violation of sections 17200 *et seq.* of

4   California's Business & Professions Code; and (5) failure to issue accurate itemized wage

5   statements as mandated by sections 226 and 226.3 of the Labor Code.

6       On March 25, 2013, Plaintiff Tom Blair, II, represented by the same counsel as Plaintiffs

7   Carson and Ainsworth, filed the case styled *TOM BLAIR, II, individually and on behalf of all others*

8   *similarly situated, Plaintiff, vs. KNIGHT TRANSPORTATION, INC., and DOES 1-100, Defendants*,

9   and is pending in the Tulare County Superior Court, Case No. 251121 (the "*Blair*" Action).

10  Ackermann Decl. ¶ 21. In the *Blair* Action, Plaintiff alleged that Knight was liable for civil penalties

11  under California's Private Attorney General Act, Labor Code Sections 2699 *et seq.*, based on the

12  underlying Labor Code violations alleged in the *Carson* Action. *Id.* On August 22, 2013, the Court

13  consolidated *Blair* with *Carson*. *Id.* ¶ 22.

14          **B.  The Parties' Pre-Certification Discovery and Class Certification Briefing**

15      In the *Carson* Action, the parties conducted a substantial amount of written discovery and

16  depositions in preparation for the filing and opposition to plaintiffs' motion for class certification.

17  Initially, the parties exchanged and responded to written discovery requests. Ackermann Decl. ¶ 25.

18  Among other things, Defendant produced thousands of pages of documents, including Driver's

19  Manuals, personnel files, DOT Logs, and wage statements for Plaintiffs and a sampling of drivers.

20  In addition, Plaintiffs obtained sworn declarations from more than twenty-five drivers corroborating

21  Plaintiffs' claims. *Id.* For its part, Knight obtained sworn declarations from numerous drivers and

22  members of management supporting its positions and defenses. *Id.* In June 2010, Knight took the

23  depositions of Plaintiffs Carson and Ainsworth. *Id.* ¶ 26. Class Counsel also deposed several

24  corporate representatives of Knight—Randy Alexander, Puneet Bawa, and Tim Pollock—on various

25  topics relevant to this case. *Id.* ¶ 25.

26      On September 15, 2010, after depositions and a substantial amount of discovery had been

27  conducted, the Court certified all of Plaintiffs' claims, including their claims that Knight's piece-rate

28  compensation system failed to compensate drivers for all of their non-driving time spent on tasks

such as detentions, inspections, and paperwork, and the derivative claims. *See* Order Granting

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1    Plaintiffs' Motion for Class Certification, *Carson, et al. v. Knight Transp., Inc.,* Case No. 09-234186

2    (Cal. Super. Ct. Tulare Cnty. Sept. 15, 2010); Ackermann Decl. ¶ 15.

3             At the Court's suggestion and per court order, the parties agreed to file cross-motions for

4    summary judgment on the issue of "whether the compensation agreement of Defendant's California

5    resident over-the-road drivers is lawful in California." *Id.* ¶ 16. On February 10, 2011, the Court

6    issued a tentative ruling denying both parties motions for summary judgment regarding the legality

7    of Knight's piece-rate compensation system. *Id.* ¶ 17.

8             Subsequently, on March 8, 2011, in its "Ruling Re Submitted Matter," the Court affirmed its

9    earlier ruling denying both parties' cross-motions for summary judgment and *sua sponte* requested

10   additional briefing regarding possible decertification of the *Carson* class. *See* Ruling Re Submitted

11   Matter, *Carson, et al. v. Knight Transp., Inc.,* Case No. 09-234186 (Cal. Super. Ct. Tulare Cnty. Mar.

12   8, 2011).

13           **C.  Knight's Motion to Decertify the Class and Plaintiffs' Motion for Summary**

14                **Adjudication on their Itemized Wage Statement Claim**

15           Knight subsequently filed a motion to decertify the class, while Plaintiffs filed a motion for

16   summary adjudication regarding their claim that Knight's electronic wage statements violated

17   California Labor Code section 226.  On May 18, 2012, the Court ruled as a matter of law that

18   Knight's paystubs violated section 226(a) of the California Labor Code because they failed to

19   include the total hours worked by drivers during each pay period, but the Court left open the issue of

20   whether Knight's drivers suffered any "injury" due to the absence of hours worked on their

21   electronic paystubs. *See* Ruling re: Plaintiffs' Motion for Summary Adjudication, *Carson, et al. v.*

22   *Knight Transp., Inc.,* Case No. 09-234186 (Cal. Super. Ct. Tulare Cnty. May 18, 2012). The Court

23   also affirmed that the paystub claim was amenable to adjudication on a class-wide basis, including

24   the remaining damages issues of "injury" and "willfulness." *Id.*  However, the court requested

25   additional briefing and set another hearing regarding its possible decertification of the other claims

26   alleged in *Carson. Id.*

27           Following additional briefing by the parties, including additional briefing by Knight in

28   support of its motion to decertify the class in *Carson,* the Court largely reversed its prior ruling

     certifying the class, and decertified all of the unpaid wage claims and the derivative claims in

ACKERMANN & TILA JEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1   *Carson*, except for Plaintiffs' inaccurate paystub claim, which remained certified. *See* Order,

2   *Carson, et al. v. Knight Transp., Inc.,* Case No. 09-234186 (Cal. Super. Ct. Tulare Cnty. Sept. 4,

3   2012). In an nutshell, the Court held that, on further review and consideration, individualized issues

4   predominated on all of Plaintiffs' claims in the *Carson* Action (other than the paystub claim)

5   because in order to evaluate the legality of Knight's piece-rate system, the Court would have to

6   inquire as to each driver's understanding of Knight's piece-rate compensation plan. *Id.*

7          Accordingly, the sole claim that remains certified in *Carson* is Plaintiffs' claim that Knight

8   issued inaccurate paystubs to drivers which has a class period beginning August 28, 2008. The

9   *Morrison* Action also contains an inaccurate wage statement claim under section 226 of the

10  California Labor Code, and the liability for that claim began to run on May 9, 2007. The instant

11  Settlement resolves Plaintiffs' Section 226 claims alleged in *Morrison* and *Carson* (i.e., from May 9,

12  2007 through the Court's order preliminarily approving the Settlement).

13          **D. Litigation History Following the Court's Partial Decertification Ruling**

14          **(1) The Parties' Failed Mediation In December 2012**

15          On December 3, 2012, the parties and all of their counsel attended an all-day mediation in

16  San Francisco with wage-and-hour class action mediator Michael Loeb, Esq. in an effort to settle

17  this case, as well as two other pending wage and hour cases against Knight brought by Class

18  Counsel. Ackermann Decl. ¶ 27. In attendance for the Plaintiffs were the class representatives

19  Ainsworth and Carson, as well as the class representatives in the two other pending wage and hour

20  cases against Knight (Jack Morrison and Don Clayton). *Id.* Plaintiffs were represented by Class

21  Counsel as well as veteran class action litigator Barry Goldstein, Esq., who served as lead negotiator

22  for Plaintiffs. *Id.* Defendant was represented by Richard Rahm, Esq. from Littler Mendelson LLP

23  and Ellen Bronchetti, Esq. from Sheppard Mullin, Knight's counsel in the *Clayton* case, and Todd

24  Carlson, Esq., Knight's in-house General Counsel. *Id.*

25          In advance of the mediation, both sides submitted detailed mediation briefs describing their

26  claims and defenses *Id.* Plaintiffs' brief also included a detailed damages model. *Id.* The parties

27  continued to argue about liability, FAAAA preemption, the extent to which the Labor Code applies

28  to employees who work both within and outside of California, whether there was any "injury"

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1  associated with the absence of hours worked on drivers' electronic wage statements,[11] and potential

2  damages. Ackermann Decl. ¶ 28.  Unfortunately, the case did not resolve at mediation. *Id.*, ¶ 29.

3      Nor was the case resolved in the months following the mediation during which the mediator

4  attempted to salvage a settlement by engaging the parties in continuing negotiations until impasse

5  was reached.  *Id.*

6      **(2)  The Filing of The *Blair* Case for PAGA Penalties**

7      Following the failure of settlement discussions, the parties resumed litigation.  On March 25,

8  2013, Tom Blair, II, represented by the same counsel as Class Counsel in the *Carson* Action, filed

9  the *Blair* Action against Knight, alleging claims for PAGA penalties[12] based on the underlying claim

10  that Knight failed to include hours worked on its drivers' electronic wage statement information

11  given to drivers, in violation of section 226(a) of the California Labor Code. Ackermann Decl. ¶¶

12  21, 30.[13] On August 22, 2013, in accordance with the parties' stipulation, the Court consolidated

13  *Blair* with *Carson* for purposes of additional discovery and trial. *Id.* ¶¶ 22, 37.  Furthermore, the

14  Court set the *Carson* and *Blair* cases for a bench trial to be held in February 2014.  *Id.* ¶ 22.

15

16

17

---

18  [11] Effective January 2013, Labor Code section 226 was amended to make it easier for plaintiffs to
19  obtain damages where "hours worked" information was not included in their wage statements.  Prior
to the amendment, penalties under Section 226(e) were only available where both "willfulness" and
20  "injury" could be shown.  In January 2013, Knight changed its itemized wage statements to include
drivers' total hours worked, Ackermann Decl. ¶ 28.ii, thereby effectively cutting off its exposure to
21  any liability under Labor Code section 226 for the period of time after January 2013.  Since the
amendments to Section 226 are likely not retroactive, this cut off any potential liability for the
22  Section 226 claim for the period from January 2013 onwards.  However, as Blair alleges in his
Complaint, Knight is still potentially liable for PAGA penalties to Blair and other similarly situated
23  aggrieved employees for not including hours worked on its paystubs for the one year period prior to
January 2013.  In addition, Knight had potential exposure under Labor Code section 226 for the
24  period of time from one year prior to the filing of the *Carson* case through January 2013, when it
changed its electronic wage statements to include hours worked. *Id.*
25  [12] Under PAGA, there is no showing of "injury" or "willfulness" needed to trigger PAGA penalties.
*See McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222 (C.D. 2011) (for purposes of recovering
26  PAGA penalties a plaintiff need only prove violation of §226(a) and need not establish a §226(e)
27  injury).
[13] The parties' Settlement Agreement contemplates that Plaintiffs will file a Second Amended
28  Complaint, adding Blair as a named Plaintiff and adding the PAGA claims to the claims alleged in
*Carson.* As noted, these pleadings are filed herewith.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

### (3) The Class Notice is Approved and Disseminated to the Class

On December 5, 2013, the Court-approved class notice was disseminated to the class by the agreed upon and court appointed administrator CPT Group, Inc.  Ackermann Decl. ¶ 32. In total, class notices were mailed out to 1,787 current and former Knight drivers. *See Id.* Ex. 2.  Ultimately, only 35 class members opted out of the class. *Id.*

### (4) Additional Motions Filed By Defendant and Plaintiff

On October 25, 2013, Defendant filed another motion for summary adjudication, which was scheduled to be heard on January 23, 2014. Ackermann Decl. ¶ 23. In its motion, Knight argued that, among other things, Plaintiffs lacked evidence sufficient to prove "willfulness" and "injury" on their Section 226 claims.  *Id.*

On or around December 13, 2013, Plaintiffs filed a motion to bifurcate liability from damages. Ackermann Decl. ¶ 24. In the bifurcation motion, Plaintiffs requested that, in the initial bench trial, the Court hear and adjudicate: (1) the liability issues associated with the remaining certified itemized wage statement claim; (2) the liability issues associated with Blair's PAGA claim; and (3) the named Plaintiffs' individual unpaid wage claims in the *Carson* and *Blair* cases (which have never been dismissed).   Finally, Plaintiffs also requested that, if and when liability was established in the bench trial, the question of the amount of damages and/or penalties and the allocation of such penalties and damages should be adjudicated in subsequent proceedings before a special master, and that Defendant should have to pay for the special master. *Id.*

### (5) Reasonable, Arm's Length Settlement Discussions Finally Culminate in a Settlement that Embodies a Fair Compromise Between the Parties

The filing of Defendant's additional motion for summary adjudication, the filing of Plaintiffs' motion to bifurcate, and the looming prospect of trial for both parties, along with reported decisions that came out on various decisions related to the instant case, all together created a new momentum for settlement discussions to take place in November and December 2013. Ackermann Decl. ¶ 33.  After exchanging a series of letters and emails containing demands and counters, the parties' counsel finally reached a settlement in or around December 20, 2013. *Id.*

As a result of discussion of their claims and defenses at the first mediation and through the extensive briefing of certification and dispositive motions in this case, the parties were well aware of the various claims and defenses at issue. Ackermann Decl. ¶¶ 28, 35.  Among other things,

1    Defendants had argued that (1) all of Plaintiffs' claims might be preempted by the Federal Aviation

2    Administration Act ("FAAAA");[14] (2) that drivers only spend approximately 10% to 15% of their

3    time driving within California and California law should not apply to their working time spent

4    outside of California, thereby substantially reducing potential damages on both the certified and

5    decertified claims; (3) Knight essentially cut-off its liability exposure to changes in California law

6    that made the establishment of 226 claims easier effective January 2013 when it then began adding

7    "hours worked" to its drivers' electronic wage statements; (4) Plaintiffs could not show "injury" or

8    "willfulness" in connection with their Labor Code Section 226 claims because drivers were not

9    damaged by the absence of "hours worked" on their itemized wage statements; and (5) the amount

10   of any potential PAGA penalties to be awarded was in the Court's discretion. *Id.*

11         Plaintiffs continued to maintain that their claims were not preempted by the FAAAA; that

12   even if only the time worked in California were actionable, Knight faced significant exposure,

13   including over $300,000 on PAGA penalties[15] and over $1 million in statutory damages under

14   Section 226.[16] Ackermann Decl. ¶ 31.  Moreover, Plaintiffs have told Knight's counsel that

15   Plaintiffs intend to appeal the Court's ruling decertifying the unpaid minimum wage class following

16   trial in this case, and that Knight's exposure on the decertified minimum wage claims, taking into

17   account that drivers only spent approximately 15% of their time driving in California, amounted to

18   approximately $780,000, exclusive of interest and potential penalties.[17] Likewise, Knight's counsel

19

---

20   [14] In the *Morrison* case, where the named Plaintiff and the certified class assert missed meal break
21   and derivative claims against Knight Transportation, Inc., and where the Class is represented by the
     same Class Counsel, the Court had previously denied cross-motions for summary judgment on the
22   F4A preemption issue.  The *Morrison* case remains stayed pending resolution of the FAAAA
     preemption issue before the Ninth Circuit Court of Appeal in *Dilts v. Penske Logistics LLC, et al.,*
23   Case No. 3:08-cv-00318-CAB-BLM, Docket No. 12-55705 (9th Cir. 2014) (awaiting decision; oral
     argument on March 3, 2014) and before the California Supreme Court in *People ex rel. Harris v.*
24   *Pac Anchor Transportation, Inc.*, 195 Cal.App.4th 765 (May 18, 2011) (review granted). The
     proposed Settlement Agreement at issue here does not resolve the meal and rest break claims and
25   UCL claims in the *Morrison* Action, which are specifically carved out of the release.  Ackermann
     Decl. ¶ 40.

26   [15] 400 FTEs * 26 pay periods * $200 penalty per pay period * .15 (percentage of working time spent
27   in California) = $312,000. Ackermann Decl. ¶ 31.

28   [16] 1,752 class members * $4,000 (maximum allowed under Labor Code section 226(e) per class
     member) * .15 (percentage of working time spent in California) = $1,051,200. *Id.*

     [17] 400 FTEs * approximately 4 days per month working in California * 4 hours per month of unpaid
     (footnote continued)

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1   has informed Plaintiffs' counsel that, if Knight loses, it also intends to appeal on the merits as well

2   as on the class certification ruling retaining the itemized wage statement class. *Id.*

3        Beginning with the mediation in December 2012, the parties narrowed their differences

4   somewhat, but were unable to settle then because of their widely divergent views as to the likelihood

5   of Knight prevailing on its various defenses, including its FAAAA preemption defense and

6   Plaintiffs' inability to show "injury" on their itemized wage statement claim. Ackermann Decl. 28.ii.

7   In 2013, several federal district decisions came out, including decisions involving Ruan

8   Transportation, Inc.,[18] Con-Way Freight, Inc.,[19] and Federal Express,[20] that forced counsel for all

9   parties in this case to be more realistic about their chances of prevailing and/or losing at trial or on

10  appeal in this case. These decisions, as well as the looming potential trial and the parties' pending

11  motions in this case, generated a new momentum towards resolution. Ackermann Decl. ¶ 33.

12       In December 2013, in various communications with opposing counsel, Class Counsel

13  discussed certain "bridging proposals" that could further narrow the gap between the parties' prior

14  settlement offers, including, *inter alia*, possible use of a "claims made" settlement process with a

15  reversion of some of the unclaimed funds to Knight coupled with the use of a minimum "floor" on

16  the distribution of the net settlement amount to be distributed notwithstanding the claim rate, as well

17  as resolution and a release of the claims that were pleaded and that had been decertified as part of a

18

19

---

20  minimum wage claims [(30 minutes of pre and post inspections per day * 4 days per month) + (2
    hours of detention time, fueling time and paperwork time per month] * 12 months per year * 8.5
21  years * $8 per hour *.15 (percentage of time spent working in California) = $783,360 (excluding
    interest and penalties). *Id.*
22
    [18] In *Burnham v. Ruan Transp.*, Case No. SACV 12-0688 AG (ANx), 2013 WL 4564496 (C.D. Cal.
23  Aug. 16, 2013), a federal district court granted a defendant's motion for summary judgment based
    on FAAAA preemption in a case where the plaintiff-drivers alleged minimum wage claims identical
24  to the decertified claims asserted in the instant case.

25  [19] In *Quezada v. Con-way Freight, Inc.*, No. C 09-03670 JSW, 2012 WL 4901423 (N.D. Cal. Oct.
    15, 2012), a federal district court ruled that the drivers could not show "injury" as a matter of law,
26  but also ruled that the trucking company's piece-rate system of pay violated California law as a
    matter of law and that drivers were entitled to minimum wage for all non-driving time spent
27  working in California.

28  [20] In *McKenzie v. Federal Exp. Corp*, 765 F. Supp. 2d 1222 (C.D. Cal. Apr. 14, 2011, a federal
    district court ruled that drivers could prevail on their PAGA claims for non-inclusion of hours
    worked on their wage statements even in the absence of any evidence of "injury."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1  proposed settlement class.[21] *Id.* Ultimately, these proposals assisted in facilitating the parties'

2  settlement of this case. *Id*

3  　　　As set forth in the Ackermann Declaration and as discussed herein, the Settlement

4  Agreement is not only the product of non-collusive, arms' length negotiations following years of

5  hard-fought litigation; it is also reasonable and fair to the Class, both when considered both from the

6  perspective of the strengths of Plaintiffs' claims and Knight's defenses, including the risks and

7  delays associated with continued litigation and potential appeals, and when compared with the

8  results obtained and given approval by other Courts in comparable settlements of other class actions

9  on behalf of truck drivers involving similar claims. Ackermann Decl. ¶ 35.

10  　　　Overall, the balance between Plaintiffs' claims, evidence and arguments, on the one hand,

11  and Knight's potential defenses on the merits, and the inherent risks of litigation and appeal, on the

12  other hand, support the proposed settlement and Plaintiffs' agreement to a reasonable discount of its

13  damages calculation.[22] *Id.* Given all of Defendant's actual and foreseeable defenses, the proposed

14  Settlement is reasonable and fair. *Id.* If the Settlement Agreement is approved, the average

15  settlement award will amount to approximately $123.34,[23] which is consistent with settlement

16  awards obtained in similar class action cases for wage statement violations and related claims. *See*

17  Ackermann Decl. ¶ 35.

18

---

19  [21] For the reasons set forth below in Section III, A, the Court's May 2012 Order decertifying the

20  unpaid wage claims should not preclude certification of a Settlement Class that includes, inter alia,
　  the decertified claims.  These reasons include (1) the case law has changed significantly since the

21  Court's Order; and (2) the standards for certification of a settlement class are far less since many of
　  the issues that would preclude manageability of the class for trial purposes do not exist in the

22  settlement context.  See Section III, A, below.

23  [22] The $425,000 proposed settlement amount represents approximately 19.8% of the estimated total
　  value of the class members' claims (i.e., $2.5 million). *See* Ackermann Decl. ¶ 45.

24
　  [23] The settlement amount available to be claimed is $216,098 (i.e., $425,000 - $141,652.00 in fees -

25  $20,000 in litigation costs - $25,000 in total service awards - $20,000 in settlement administration
　  expenses = $216,098), and the total number of Class Members is 1,752.  Assuming a 100% claim

26  rate, the average settlement award will be $123.34 ($216,098/1,752 = $123.34); however, drivers
　  with more weeks worked within the class period will receive more, since the allocation of the net

27  settlement amount will be pro rata based on each driver's pay periods worked as a percentage of all
　  drivers' pay periods worked. *See* Ackermann Decl. ¶ 42.  Moreover, if the overall amount claimed is

28  less than 50% of the net settlement amount, drivers who file timely claims will receive additional
　  amounts as part of their settlement awards. Ackermann Decl. ¶ 39.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

## III. THE SETTLEMENT AGREEMENT

The Settlement Agreement provides real and substantial benefits for the Class, which is defined as "[a]ll current and former truck drivers employed by Knight Transportation, Inc. who were residents of California and who were compensated via a piece-rate compensation system, at any time during the Settlement Class Period." The Class Period is defined as the period from August 28, 2005 through the date on which the Court enters an Order preliminarily approving the Settlement with respect to all claims. *See* Settlement Agreement, at ¶ 40. The Settlement Agreement provides for monetary relief to the class without the extensive delay resulting from further litigation of this case, and it avoids the risks and uncertainty inherent in taking this case through trial and appeal. The Settlement Agreement provides benefits for the Plaintiffs and Class Members.

As noted, the Settlement Agreement sets forth a Maximum Settlement Amount (hereinafter "MSA") of no more than $425,000 for the Settlement Class. Further, the MSA is inclusive of attorneys' fees, costs and expenses directly related to the litigation.[24] After reductions for attorneys' fees, administrative costs, a class representative enhancement payment,[25] and other fees listed above, the remaining balance of the settlement fund (the "Net Settlement Amount") shall be paid to class members on a "claims-made" basis.[26]

If a Class Member fails to make a claim then the amount allocated to that Class Member's

---

[24] Includes all such fees, costs and expenses incurred to date, as well as all such fees, costs and expenses incurred in documenting the settlement, securing approval of the settlement, administering the settlement, and obtaining a dismissal of the lawsuit), the service payments to the Class Representatives, and all costs of administration, including settlement administration fees. Any employer taxes, including the employer FICA, FUTA, and SDI contributions, associated with the portion of settlement awards designated as wages shall be paid separately by Knight out of unclaimed funds; the employee's portion of the payroll taxes for those portions of the settlement awards designated as wages will be deducted from the individual drivers' settlement awards. Settlement Agreement, at ¶ 48(b).

[25] Plaintiffs' counsel will request, and Defendant and its counsel will not oppose, service payments from the MSA to the class representatives in the total amount of $25,000.00 ($10,000 each for Carson and Ainsworth and $5,000 for Blair), in addition to whatever payment they are otherwise entitled to receive as Class Members. Settlement Agreement, at ¶ 49. The class representatives will be required to execute a general release of all known and unknown claims he may have against Defendant based on their employment with Defendant. *See* Settlement Agreement, at ¶ 52; Ackermann Decl. ¶ 47.

[26] It is anticipated that $18,000.00 will be paid from the Settlement Fund for the administration of the class settlement including the mailed notice. Ackermann Decl. ¶ 38, Ex. 3.

1  potential claim shall remain the property of Defendant, except that, irrespective of the number of

2  timely claims made, a floor of at least 50% of the Net Settlement Amount shall be distributed to

3  class members who submit timely and valid claim forms.  The funds associated with any settlement

4  checks that remain un-cashed after 180 days following their mailing to the participating class

5  members will be considered unclaimed property and turned over to the State Controller's office

6  pursuant to California Code of Civil Procedure section 1150, *et seq.* Settlement Agreement, at ¶ 46.

7          The Settlement Agreement provides a release of the Defendant by the Class Members, as

8  follows:  The Class Members, excluding those who submit timely and valid requests for exclusion

9  (i.e., "Participating Class Members"), shall fully and finally release and discharge Defendant or

10  "Released Parties,"[27] from any and all claims, demands, rights, liabilities, and/or causes of action of

11  any nature and description whatsoever, known or unknown, in law or in equity, whether or not

12  concealed or hidden, asserted or that might have been asserted by the Plaintiffs or by any Class

13  Member, for unpaid compensation or penalties, arising out of or related to any claims or allegations

14  that were raised in the lawsuits from August 28, 2008 through the date of preliminary approval of

15  this Agreement by the Court.  These claims include Named Plaintiffs' allegations that Defendant: (1)

16  failed to pay minimum wage for non-driving tasks performed in California in violation of Labor

17  Code section 1194; (2) failed to provide accurate itemized wage statements in violation of Labor

18  Code section 226; (3) engaged in unlawful/unfair/fraudulent business practices in violation of

19  California Business & Professions Code section 17200 by not paying for all hours worked; (4) failed

20  to pay wages due at time of termination of employment based on the underlying allegation that

21  Defendant did not pay for all non-driving time in California; (5) violated, or is liable under, the

22  California Labor Code, including, but not limited to, Sections 226, 1194, California Business and

23  Professions Code section 17200 *et seq.*; and (6) is liable for penalties under California's Private

24  Attorney Generals' Act, Labor Code sections 2699 *et seq.* based on the foregoing; claims for

25  restitution or liquidated damages based on the foregoing; penalties of any nature whatsoever based

26

27  [27] Released Parties include (i) Defendant; (ii) Defendant's respective past, present and future
    parents, subsidiaries and affiliates, successors and assigns; and (iii) the past, present and future
28  shareholders, directors, officers, agents, employees, attorneys, insurers, predecessors, successors and
    assigns of any of the foregoing. Settlement Agreement, at ¶ 36.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1  on the foregoing; or any other benefit claimed on account of the allegations of the Actions

2  (hereinafter "Released Claims").

3      The provisions of the Settlement Agreement also delineate some affirmative steps by

4  Defendant.  For example, Knight acknowledges its duty not to retaliate against any Class Member

5  for participating in this case.  However, if more than 5% of the Class Members submit requests for

6  exclusion, Defendant at its sole option may void the Settlement.

7      If the Settlement is approved by the Court, the payments to each Class Member who submits

8  a timely and valid Claim Form will be made proportionally in accordance with the weeks worked

9  during the class period.[28]  The parties have also agreed that the settlement amounts to be paid to the

10  Class Members are penalties and wages for the relief sought in this lawsuit.[29]

11  **IV. DISCUSSION**

   **A.  A Settlement Class Should be Certified**

12      A settlement or compromise of a class action requires approval of the superior court after a

13  hearing.  *See* Cal. Rule of Ct. 3.769(a); *Marcarelli v. Cabell*, 58 Cal.App.3d 51, 53 (1976).  Court

14  approval of class action settlements is a two-step process: preliminary approval and final approval.

15  *See* MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).  At the preliminary

16  approval stage, the Court must "make a preliminary determination on the fairness, reasonableness,

17  and adequacy of the settlement terms and must direct the preparation of notice of the certification,

18  proposed settlement, and date of the final fairness hearing."  *Id.*  The process prescribed by the

19  Manual for Complex Litigation is widely followed by federal courts and has been adopted by the

20

---

21  [28] The settlement awards paid to the Class Members shall be deemed not to be pensionable earnings

22  and shall not have any effect on the eligibility for, or calculation of, any of the employee benefits
   (e.g., vacations, holiday pay, retirement plans. etc.) of the Class Members. Settlement Agreement, at

23  ¶ 47. The Parties agree that any settlement awards to Class Members under the terms of this
   Agreement do not represent any modification of Class Members' previously credited hours of

24  service or other eligibility criteria under any employee pension benefit plan or employee welfare
   benefit plan. *Id.* Further, any settlement awards or service payments hereunder shall not be

25  considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual
   within, an employee pension benefit plan or employee welfare benefit plan. *Id.*

26  [29] The parties agree that one-third (1/3) of all payments to claimants will be treated as wages subject

27  to W2 reporting and, therefore, normal payroll taxes and withholdings will be deducted pursuant to
   state and federal law.  The other one-third (1/3) represents interest and one-third (1/3) penalties

28  sought in the Lawsuit and claimants will be issued an IRS Form 1099 for that portion of their
   payments. *Id.* ¶ 48.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

ACKERMANN & TILA,JEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1  California Courts.  *See Bell v. American Title Ins. Co.*, 226 Cal. App. 3d 1589, 1599-1602 (1991).

2  The preliminary approval determination merely decides "whether there is any reason to notify the

3  class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v.*

4  *Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982).

5      Also at this stage of the approval process, the Court must make a preliminary determination

6  whether the class may be certified under Rule 23 for settlement purposes. *See Amchem Products,*

7  *Inc., v. Windsor*, 521 U.S. 591, 620 (1997) ("In practice, California trial courts look to Rule 23 for

8  guidelines on class certification criteria, and most practitioners allege and brief the Rule 23 criteria

9  as well as the California Code of Civil Procedure section 382 ascertainability and community of

10  interest standards.").[30]

11      Here, the class should be certified for settlement purposes.  First, in previously certifying the

12  itemized wage statement claim in this Class, the Court has already determined that the elements

13  necessary for class certification were met for that claim. *See Order Granting Plaintiffs' Motion for*

14  Class Certification, *Carson, et al. v. Knight Transp., Inc.,* Case No. 09-234186 (Cal. Super. Ct.

15  Tulare Cnty. Sept. 15, 2010).

16      Second, as to the decertified unpaid wage claims, the legal landscape has changed

17  significantly since the Court's May 18, 2012 decertification order such that certification, particularly

18  for settlement purposes, certification of those claims is now appropriate. Although this Court's May

19  18, 2012 decertification order relied on its expressed disagreement with the logic of the federal

20  district court in *Cardenas v. McLane Foodservices, Inc.* 796 F. Supp. 2d 1246, 1252 (C.D. Cal.

21  2011), two California Courts of Appeal have now favorably cited and adopted the logic of *Cardenas.*

22  *See Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872-73 (2013); *Gonzalez v. Downtown*

23  *LA Motors, LP*, (2013) 215 Cal. App. 4th 36, 49, *petition for review denied* July 17, 2013 (following

24  ────────────────────

25  [30] *See* 1-6 California Class Actions Practice and Procedure § 6.07 (2007).  The requirements for
     certification under California's Civil Code section 382, which parallel FRCP 23, are satisfied when:

26  "(1) It is impracticable to bring all members of the class before the court [*i.e.* numerosity;] (2) The
     questions of law or fact common to the class are substantially similar and predominate over the

27  questions affecting the individual members [*i.e.* commonality;] (3) The claims or defenses of the
     representative Plaintiff are typical of the claims or defenses of the class [*i.e.* typicality; and] (4) The

28  representative Plaintiff will fairly and adequately protect the interests of the class [*i.e.* adequacy of
     representation]." Cal. Civ. Code § 382.

the reasoning of *Armenta* and *Cardenas*).[31]

Because *Cardenas* has now been cited favorably and adopted twice by the California Court of Appeal in *Gonzalez*,[32] 215 Cal. App. 4th at 49 (holding that employer's piece-rate compensation violated California's minimum wage law since class members were entitled to separate hourly

---

[31] In *Armenta v. Omrose, Inc.*, 135 Cal. App. 4th 314, 323 (2005), the Appellate Court held that under California's minimum wage law, employees must be compensated for each hour worked and compliance cannot be determined by averaging hourly compensation. In *Cardenas v. McLane Foodservices, Inc.* 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011), the court granted summary judgment to plaintiff-drivers on their minimum wage claims for non-payment of wages for their non-driving working time where the defendant trucking companies paid their drivers, as Knight paid Plaintiffs here, on a "per mile" piece-rate basis and did not separately pay on an hourly basis for the drivers' non-driving tasks, including their detention time and inspection time. Although the *Cardenas* court followed *Armenta,* the court arrived at a holding beyond *Armenta* finding that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, *even if, averaged out*, it would pay at least minimum wage. *Id.* at 1252 (emphasis added). The *Cardenas* court went so far as to hold that even if defendant communicated to the drivers that its piece-rate system was intended to compensate drivers for non-driving duties, "the fact that it did not separately compensate for those duties violates California law." *Id.* at 1253 (citing *Armenta*).

[32] In *Gonzalez*, the Court not only cited *Cardenas*, but held that it was "instructive" and embraced its reasoning wholesale. *Id.* at 49. *In Gonzalez*, the California Court of Appeal relied heavily on Cardenas and adopted its reasoning when it noted:

> ***Cardenas* is instructive** as it involved truck drivers who were paid on a piece-rate basis and who claimed their employer failed to compensate them for time spent each day waiting for customers and performing pre- and post-shift duties such as conducting vehicle inspections and safety checks and picking up keys and manifests. *Cardenas*, 796 F. Supp. 2d at 1249. The employer argued that it paid the truck drivers substantially more than the minimum wage for all their working hours and that *Armenta* should not apply because that case did not involve a piece-rate compensation system. The *Cardenas* court rejected this distinction, stating: "Though *Armenta* did not involve a piece-rate formula, and involved an employer who violated an explicit agreement, those distinctions do not detract from the decision's holding that '[t]he averaging method used by the federal courts for assessing a violation of minimum wage law does not apply' to California law-based claims." *Cardenas, 796 F. Supp. 2d* at1252. The *Cardenas* court then held that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, *even if, averaged out*, it would pay at least minimum wage for all hours worked." *Id.*

> **Like the court in *Cardenas*,** we find the court's reasoning in *Armenta* to be equally applicable to employees compensated on a piece-rate basis.

*Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 49 (2013) (emphasis added). It is clear from the cited language that the California Court of Appeal agreed with the Court's reasoning and holding in *Cardenas*.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILA JEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

1  compensation for time spent performing non-repair tasks), and in *Bluford*,[33] 216 Cal. App. at 872-

2  873 (holding that employer's piece-rate compensation violated California law since it failed to

3  separately compensate on an hourly basis for rest periods), it is now clear that California law, as

4  explained by *Gonzalez* and *Bluford*, is consistent with the holding of *Cardenas*. As a result, the

5  Court's prior decertification ruling relies on a logic that has been undermined by subsequent binding

6  authority and, thus, it should not preclude certification of a settlement class.

7        Finally, although the Settlement Agreement before the Court for preliminary approval

8  contemplates resolution of *all* of the claims pleaded in the *Carson* and the *Blair* cases (including the

9  decertified claims), courts are willing to certify settlement classes even after class certification has

10  been denied in the litigation context.  *See, e.g., In re American Int'l Group Secs. Litig.*, 265 F.R.D.

11  157, 175 (S.D.N.Y. 2010), *vacated and remanded*, 689 F.3d 229, 236-7 (2d Cir. 2012) ("[T]hey

12  jointly moved for preliminary approval of the settlement, arguing that even if certification of a

13  litigation class was inappropriate, the court could–and should–nonetheless certify a settlement class.

14  Relying on the Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20

15  (1997), the Settling Parties argued that the individual reliance issues that led the court to deny class

16  certification would not pose a problem of  trial manageability because the very existence of the

17  settlement eliminated the need for a trial."); *see also Sullivan v. DB Investments,* 667 F.3d 273, 335

18  (3d Cir. 2011) (en banc) (approving settlement class after class certification motion had been denied;

19  the concurrence notes: "some inquiries essential to litigation class certification are no longer

20  problematic in the settlement context. A key question in a litigation class action is manageability—

---

[33] In *Bluford*, the California Court of Appeal favorably cited two federal court decisions, including *Cardenas*, holding that a piece-rate system of pay, like the one adopted by Knight, is illegal unless it separately pays drivers on an hourly basis for all of their non-driving duties:

     Thus, contrary to Safeway's argument, a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law. *See Reinhardt v. Gemini Motor Transport* (E.D. Cal. 2012) 869 F. Supp. 2d 1158, 1168 *[piece-rate pay system that did not separately pay truck drivers for non-driving duties violates California law requiring compensation for each hour worked]*; *Cardenas v. McLane Foodservices, Inc.* (C.D. Cal. 2011) 796 F. Supp. 2d 1246, 1252 *[piece-rate pay system that did not separately pay truck drivers for non-driving duties and rest periods violates California law requiring compensation for each hour worked]*.)

*Bluford*, 216 Cal. App. 4th at 872. (Emphasis added).

how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof. But the settlement class presents no management problems because the case will not be tried.").

Here, the unpaid minimum wage claims and derivation claims were initially certified, later decertified before the two appellate court rulings embracing *Cardenas* were issued, and Plaintiffs' counsel has expressed its intent to appeal the decertification decision (following trial if this Settlement is not approved). These facts, individually or collectively, create a basis for the Court to approve a Settlement Class for all of the pleaded claims for settlement purposes. *See* Ackermann Decl. ¶¶ 15–35.

### B. The Settlement Should Be Approved As Fair, Reasonable and Adequate

A class action settlement requires approval of the court after a hearing. *See* Cal. Rule of Ct. 3.769(a); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1800-01 (1996). Court approval is a two-step process: preliminary approval and final approval. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004). Initially, the Court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

In analyzing whether a settlement is fair and reasonable, courts consider a number of factors: (1) the risk, expense, complexity and likely duration of further litigation, (2) the risk of maintaining class action status through trial, (3) the amount offered in settlement, (4) the extent of discovery completed and the stage of the proceedings, (5) the experience and views of counsel, and (6) the reaction of the Class to the proposed settlement. *Dunk,* 48 Cal. App. 4th at 1801; *Kullar v. Foot Locker Retail, Inc.* 168 Cal. App. 4th 116, 133 (2008) (holding that the court must be provided with information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid represents a reasonable compromise); *Clark v. American Residential Services, LLC,* 175 Cal. App. 4th 785, 790, 802-3 (2009). "The inquiry 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Id.* In California, "a presumption of fairness exists where, as here: (1) the settlement is reached through arm's-length bargaining;

ACKERMANN & TILA JEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

(2) investigation and discovery are sufficient to allow counsel and the court to act intelligently;

(3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000) (*citing Dunk*, 48 Cal. App. 4th 1794, 1801-1802 (1996)).[34]

The Settlement is presumptively fair because the factors enumerated in *7-Eleven Owners for Fair Franchising*, which trigger a presumption of fairness, are present. Significant investigation, including both formal and informal discovery, was conducted. The parties propounded and responded to Form Interrogatories, Special Interrogatories, Requests for Admissions, and Requests for Production; Defendant took the deposition of Plaintiffs Carson and Ainsworth; Class Counsel also deposed several corporate representatives of Knight on various topics relevant to this case; Plaintiffs obtained more than 25 sworn statements from drivers; and Defendant produced thousands of pages of relevant documents for a randomized sampling of drivers and a significant amount of data about the Class. Ackermann Decl. ¶¶ 25, 52. Extensive briefing of summary judgment, summary adjudication, class certification, and decertification motions took place. *Id.* ¶ 52. The parties engaged in arms' length bargaining with intensive settlement discussions during a full-day private mediation involving an experienced mediator familiar with wage-hour claims. *Id.* ¶ 27. Class Counsel also has extensive experience in class action litigation and has been determined by numerous courts to be adequate class counsel. *Id.* ¶¶ 4–12; Declaration of Michael Malk, at ¶¶ 8–30.

Class Counsel have determined the claims asserted in this case have merit and are supported by available evidence.[35] Ackermann Decl. ¶ 35. Conversely, Defendant is convinced there are valid

---

[34] It is well-settled that settlements are favored, particularly in class actions where substantial resources can be conserved by avoiding the time and cost of prolonged litigation. *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . ."), *cert. denied*, 459 U.S. 1217 (1983); *Speed Shore Corporation v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.") *accord, Stambaugh v. Superior Court*, 62 Cal. App. 3d 231, 236 (1976).

[35] Class Counsel has calculated that the maximum value of Plaintiffs' itemized wage statement claims and related PAGA claims amount to approximately $1.3 million, and the value of the decertified minimum wage claims (exclusive of Section 203 penalties and interest) amount to $780,000. Ackermann Decl. ¶ 31.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

defenses to those claims and denies the factual allegations and any legal liability arising therefrom. Defendant asserts numerous defenses both on the merits and to class certification, but concluded that this action should be settled in the manner and on the terms set forth in the Settlement Agreement in order to avoid the expense, burden, and uncertainty of further legal proceedings. Like Defendant, Class Counsel and Plaintiffs recognize the substantial amount of time and expense involved with taking this action to trial and through appeal. *Id.* ¶¶ 28, 33, 35, 43. The parties' decision to submit the proposed Settlement for court approval reflects their consideration of the benefits conferred by the Settlement against the risks and uncertainty of continued litigation. The Settlement has no "obvious deficiencies" and confers substantial benefits to the Class by providing substantial monetary relief for claims arising out of the facts in Plaintiffs' Second Amended Complaint. Given the substantial relief, the reasonableness of the settlement, and the uncertainties of litigation and collectability issues, the settlement meets the criteria for preliminary approval.

### C.  The Proposed Notice of Class Action Settlement Satisfies Due Process

California law vests the Court with broad discretion in fashioning an appropriate notice program. *See* Cal. Rules of Court 3.769(f); *Cartt v. Superior Court*, 50 Cal. App. 3d 960, 973-74 (1975). The notice plan here entails mailing, and if necessary re-mailing, the notice to all identified Class Members based on Defendant's records. Defendant will provide the last known addresses for all identified Class Members, and the Settlement Administrator will update the addresses using the United States Postal Service's NCOA prior to mailing.[36] Settlement Agreement, at ¶ 54. The court has wide discretion in approving the means of providing such notice, so long as the class representative "provide(s) meaningful notice in a form that should have a reasonable chance of reaching a substantial percentage of class members." *Archibald v. Cinerama Hotels*, 15 Cal. 3d 853, 861 (1976).

Notice of the Settlement will be disseminated directly to the class members by first class mail with the notice sent to their last known address. *Id.* Within ten calendar days following preliminary approval of this Settlement, Defendant shall provide to the Claims Administrator with a

---

[36] In connection with the Class Notice sent to Class Members following certification, CPT Group, Inc. has informed us that only two of the 1,787 notices were ultimately undeliverable. Ackermann Decl. ¶ 32, Ex. 2.

1   class list that includes each Class Member's last known address, based on Defendant's payroll

2   and/or personnel records. Settlement Agreement, at ¶ 59(a). Notices and Claim Forms returned to

3   the Claims Administrator as non-delivered shall be resent immediately to the forwarding address, if

4   any, on the returned envelope; if there is no forwarding address, the Claims Administrator will do

5   one additional computer search for a new address using the Class Member's social security number

6   and resend a Notice and Claim Form immediately to that new address. Settlement Agreement, at ¶

7   59(b). If the Claims Administrator obtains an alternative address for the member of the Settlement

8   Class, the Claims Administrator shall mail a Notice and Claim Form to the new address

9   immediately. *Id.*

10   The proposed Class Notice, attached as Exhibit A to the proposed Settlement Agreement,

11   provides information on the nature of the proposed Settlement Class, the terms and provisions of the

12   Settlement, the relief the Settlement will provide Settlement Class Members, the estimated

13   settlement award to each Class Member, the requested enhancement award for the Class

14   Representative, the application of Class Counsel for reimbursement of costs and attorneys' fees from

15   the Maximum Settlement Amount, the date, time and place of the final Settlement approval hearing,

16   and the procedure and deadlines for submitting a claim (including a Claim Form), opting out of the

17   Settlement, or submitting comments and objections. *See* Cal. Rules of Court 3.679(f).  Moreover, the

18   notice clearly informs the Class Members of their options, and the implications of their options. The

19   Claim Form also provides each Class Member the projected pro rata share of the Maximum

20   Settlement Amount payable to that individual based on a 100% participation rate, and, in the case of

21   the Class Representative, the amount of his additional enhancement award.

22   Plaintiffs have proposed the services of an experienced class action settlement administration

23   firm, CPT Group, Inc., to implement the proposed Class Notice procedures.[37] Settlement

24   Agreement, at ¶ 54. The Notice of Settlement is consistent with class certification notices approved

25   by numerous state and federal courts, and is, under the circumstances of this case, the best notice

26   practicable. Such notice satisfies all due process requirements. *See Cartt*, 50 Cal. App. 3d at 966–75.

27

28   [37] The Court previously issued an order approving CPT as the administrator for purposes of
distributing the class notice after certification. Their expertise extends to distributing settlement
class notices as well.

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### D. The Proposed Enhancement Awards for the Plaintiffs and Attorneys' Fee Award Are Reasonable

Plaintiffs' counsel requests payment of Enhancement Awards from the Maximum Settlement Amount to the three class representatives in the total amount of $25,000, consisting of payments of $10,000 each to Plaintiffs Carson and Ainsworth, both of whom were deposed, and $5,000 to Plaintiff Blair, in addition to whatever payment they are otherwise entitled to receive as a Class Member. Settlement Agreement, at ¶ 49. The proposed Enhancement Awards of $5,000 for Plaintiff Blair and $10,000 each for Plaintiffs Carson and Ainsworth are reasonable compensation given the time and effort that the named Plaintiffs devoted to this case and the valuable assistance they provided to Class Counsel.[38] Ackermann Decl. ¶¶ 46–48. The Settlement Class Representatives also assumed significant risk in bringing this litigation—namely, if they lost, they would have been ordered to pay Defendant's costs. Moreover, all of the Class Representatives have entered into a General Release with Defendant that is a broader release than the release given by the Class. *See* Settlement Agreement, at ¶ 52.

Plaintiffs request that the Court preliminarily approve an award of reasonable attorneys' fees amounting to $141,652.00 (i.e., approximately 33.33% of the Maximum Settlement Amount). The attorneys' fee award of 33.33% of the settlement fund is reasonable considering the experience of Class Counsel in employment law class actions, the legal expertise required to litigate this case and negotiate this Settlement, and the significant amount of actual lodestar time that Class Counsel has dedicated to this case.[39] *See* Ackermann Decl. ¶¶ 49–56; Malk Decl. ¶¶ 34. The attorneys' fees sought are comparable to attorneys' fee awards granted in similar cases, and, moreover, represent only a fraction of the market value of services rendered by Class Counsel on behalf of the Class. Ackermann Decl. ¶ 54.

If the Court grants preliminary approval to the settlement and authorizes the dissemination

---

[38] The efforts of Steve Carson, Christopher Ainsworth, and Tom Blair, II, on behalf of the Class justifying requested Enhancement Awards will be further described in detail in each of their declarations that will be filed in support of Plaintiffs' forthcoming Motion for Attorney's Fees, Litigation Costs, and Named Plaintiffs' Enhancement Awards. Ackermann Decl. ¶ 56.

[39] Class Counsel's total lodestar to date amounts to $232,223. *See* Ackermann Decl. ¶ 54. Class Counsel's actual costs incurred to date amounts to $9,588.59. *Id.* ¶ 55.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

of notice of the settlement to the class, Class Counsel anticipates filing a Motion for Attorneys'
Fees, Litigation Costs, and Enhancement Award that will be scheduled to be heard concurrently
with the Motion for Final Approval and Fairness Hearing, with the papers at least 10 days prior to
the Class Member's deadline to object to the Settlement. In connection with the filing of the Motion
for Attorneys' Fees and Costs, Class Counsel will submit information in the form of a sworn
declaration setting forth a summary of their lodestar hours on this case as well all of their actual
costs incurred in litigation this case. Ackermann Decl. ¶¶ 55–56; Malk Decl. ¶¶ 37. Plaintiffs
Ainsworth, Blair, and Carson will also submit declarations providing detailed accounts of their
efforts on behalf of the Settlement Class. *See* Ackermann Decl. ¶ 46.

## V.  CONCLUSION

Plaintiffs respectfully request the Court preliminarily approve the settlement; approve the
parties' proposed form and method of notifying Settlement Class members of the settlement and
their right to opt-out or object; allow the filing of Plaintiffs' Second Amended Complaint; and enter
an order consistent with Plaintiffs' proposed schedule for final approval.

Dated: March 19, 2014

Respectfully submitted,
Ackermann & Tilajef, P.C.
Michael Malk, Esq., APC

By:   Craig Ackermann
Attorney for Plaintiffs and the Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

ACKERMANN & TILAJEF, P.C.
1180 SOUTH BEVERLY DRIVE, SUITE 610
LOS ANGELES, CALIFORNIA 90035

EXHIBIT "C"

RECEIVED

MAR 20 2014

LITTLER MENDELSON

**ACKERMANN & TILAJEF, P.C.**
Craig Ackermann (Cal. Bar No. 229832)
1180 S. Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:   310-277-0614
Facsimile:   310-277-0635
cja@ackermanntilajef.com

**MICHAEL MALK, ESQ., APC**
Michael Malk, Esq. (State Bar No. 222366)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile: (310) 499-5210
mm@malklawfirm.com

Attorneys for Plaintiffs Steve Carson, Christopher Ainsworth, and Tom Blair, II

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF TULARE

| | |
|---|---|
| STEVE CARSON and CHRISTOPHER AINSWORTH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC. and DOES 1-100,<br><br>Defendants. | CASE NOS: 09-234186 & 251121<br><br>**DECLARATION OF CRAIG ACKERMANN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: April 10, 2014<br>Time: 8:30 am<br>Dept: 2<br>Judge: Hon. Lloyd L. Hicks |
| TOM BLAIR, II, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC. and DOES 1-100,<br><br>Defendants. | |

## DECLARATION OF CRAIG ACKERMANN

**I.      INTRODUCTION**

1.      I am an attorney licensed, authorized and admitted to practice law before this Court and the federal and state courts of the State of California and I am an active member of the Bar of the State of Texas. I am the founding shareholder in the law firm of Ackermann & Tilajef, P.C., counsel of record for Steve Carson, Christopher Ainsworth, and Tom Blair, II ("Plaintiffs" or "Class Representatives") and the partially-certified class of Knight Transportation, Inc.'s ("Defendant" or "Knight") current and former truck drivers. The *Stipulation of Class Action Settlement and Release Between Plaintiffs and Defendant* (the "Settlement Agreement") is attached hereto as **Exhibit 1**. The proposed Notice and Claim Form are attached to the Settlement Agreement as **Exhibits A and B**, respectively.

2.      I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration, and could and would testify competently to them.

3.      I have no knowledge of the existence of any conflict of interest between me and my firm and the Plaintiffs, on the one hand, and any settlement class member, on the other hand.

**II.     ATTORNEY EXPERIENCE**

4.      In 1994, I received a B.A. with honors and graduated Phi Beta Kappa from the University of Texas at Austin. In 1997, I received a J.D. from the University of Texas School of Law. I became a member of the Bar of the State of Texas in 1997. I became a member of the Bar of the State of California in 2004.

5.      Since 1997, I have exclusively practiced employment law and have amassed a significant amount of experience in complex employment litigation. From 1997 through 2000, I was an associate in the labor and employment law group for Jenkens & Gilchrist, P.C. ("J&G"), in the firm's Dallas, Texas office, where I represented Fortune 1000 companies, including Hartford Insurance, Belo Corporation, and Alcatel, as second-chair in various employment-related matters, including several class action cases. While employed by J&G, I drafted a number of summary judgment motions in cases where we obtained summary judgment for the defendants, including several that were reported on Westlaw. *See, e.g., Wayne v. Dallas Morning News, Inc.,*

CIV.A.No.3-98-CV-0711-L, 1999 WL 1146840 (N.D. Tex. Nov. 24, 1999) (with lead counsel, Robert E. Sheeder, Esq.); *Mieritz v. Hartford Fire Insurance Co.*, No. Civ.A.3:99-CV-121-R, 2000 WL 422909 (N.D. Tex. Apr. 17, 2000) (with lead counsel Steve Fox, Esq.).

6.      From 2000 through mid-2003, I worked in New York City for a plaintiffs' side employment law firm, Arenson, Ditmar & Karban, where I was involved for several years, *pro hac vice*, in a second-chair capacity representing 150 individually-named plaintiffs in a large sexual harassment case against a major Wall Street bank that was eventually resolved for $23.5 million. In terms of the number of plaintiffs and the size of the ultimate settlement, this sexual harassment case was the second largest sexual harassment case in U.S. history. There were over 60 depositions taken and defended in that case prior to trial.

7.      In mid- and late-2003, I worked as an associate in the Labor and Employment Law Section of Mitchell, Silberberg & Knupp, LLP in Los Angeles, where we represented large entertainment and media companies in various employment-related litigations, including several class actions.

8.      From January 2004 through the present, I have been a founding and managing shareholder in the firm of Ackermann & Tilajef, P.C. where we have represented thousands of employees in wage and hour class actions, and other employment-related matters. Ackermann & Tilajef, P.C. has extensive experience in the litigation of complex cases, including statewide class actions. For example, since 2009, we have successfully obtained class certification in a number of cases where contested class certification motions were filed and fully briefed. *See, e.g.*, (1) Order Adopting Findings and Recommendations, *Clayton v. Knight Transportation, Inc.*, No. 1:11cv0735 LJO DLB, 2012 WL 3638026 (E.D. Cal. Aug. 21, 2012) (Hon. Lawrence O'Neil) (Order adopting findings and recommendations of Magistrate Beck); Findings and Recommendations Regarding Plaintiff's Motion for Class Certification, *Clayton v. Knight Transportation, Inc.*, No. 1:11cv0735 LJO DLB, 2012 WL 2912395 (E.D. Cal. July 16, 2012) (U.S. Magistrate Judge Dennis L. Beck) (recommending certification of class action for 2,000 truck drivers alleging claims for unpaid orientation time); (2) *Jack Morrison v. Knight Transportation*, Inc., Tulare County Superior Court, Case No. 228016, Nov. 13, 2009 Order

3

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  Granting Plaintiff's Motion for Class Certification (Hon. Lloyd Hicks) (granting certification of

2  class of over 2,000 truck drivers with claims for missed meal breaks premiums); (3) *Anderson v.*

3  *Andrus Transportation*, San Bernardino County Superior Court, Case No. CIV DS 915878,

4  August 16, 2011 Order Granting In Part Plaintiff's Motion for Class Certification (class

5  certification granted to class of over 550 truck drivers with claims for unpaid minimum wages

6  and derivative claims); and (4) *Trujillo v. Winco Foods, LLC*, Stanislaus County Superior Court,

7  Case No. 622364, March 16, 2011 Order granting Plaintiff's Motion for Class Certification

8  (granting class certification of missed meal and rest break claims and derivative claims to class

9  of 150 truck drivers).  In each of these cases, the trial judges determined that I and my firm were

10  competent and adequate class counsel, or co-class counsel in the context of contested class

11  certification motions.

12  9.      Since 2004, our firm has also represented more than 250 individual employees in cases

13  brought under various state and federal statutes, including the California Labor Code, and we

14  have obtained favorable results in numerous cases.  In December 2012, for example, we obtained

15  a Final Judgment in the amount of $318,913.09 in a Title VII and FEHA retaliation case after a

16  general jury verdict for the Plaintiff and a successful appeal to the Ninth Circuit from the district

17  court's denial of Plaintiff's motion for attorneys' fees. *See Final Judgment, Barrios v. Diamond*

18  *Contract Services, Inc.*, Case No. 2:07-cv-03500-CBM-FMO (C.D. Cal. Dec. 20, 2012), ECF

19  No. 138 (final judgment entered for Plaintiff in the amount of $318,913.09); *see also Barrios v.*

20  *Diamond Contract Services, Inc.*, 461 F. App'x 571 (9th Cir. Dec. 13, 2011) (reversing original

21  district court judge's denial of motion for attorneys' fees). In 2013, in an arbitration proceeding

22  before JAMS, we obtained more than $3.4 million in settlement for our client in a breach of

23  contract and wrongful termination case brought on behalf of a single individual.

24  10.      In addition, our firm has obtained approval of numerous wage and hour class action

25  settlements, including at least nine cases that were resolved in an amount between $1 million and

26  $3 million in relief. *See* Supplemental Order Granting Final Approval to Class Action

27  Settlement, *Downs v. U.S. Foodservice, Inc.*, Case No. 3:10-cv-02163-EMC (N.D. Cal. Sept. 11,

28  2012), ECF No. 84 (Hon. Edward Chen) (approving $3 million settlement for 1,100 truck drivers

1   with meal and rest break claims with Ackermann & Tilajef, P.C. appointed as co-class counsel);

2   Memorandum Decision Re Unopposed Motion for Final Approval of Class Action Settlement

3   (Dkt. 41) and For Attorneys' Fees and Costs (Dkt. 48), *Bond v. Ferguson Enterprises, Inc.*, NO.

4   1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. June 30, 2011) (granting approval to $2.25

5   million settlement for 553 truck drivers with Ackermann & Tilajef, P.C. appointed as co-class

6   counsel); Order Granting Plaintiff's Motion for Attorneys' Fees and Costs, *Robert Cohen v.*

7   *United Healthcare Services, Inc.*, Case No. 10-2027 (C.D. Cal. June 6, 2011), ECF No. 66

8   (granting approval to $1,250,000 settlement for unpaid overtime for class of 634 call center

9   workers with Ackermann & Tilajef, P.C. appointed as co-class counsel); Order Re Final

10  Approval of Class Action Settlement, *Padilla v. Young's Market Company*, LLC, Case No. 2:09-

11  CV-08730 DMG (RCx) (C.D. Cal. Aug. 23, 2010), ECF No. 53 (approving settlement of $1

12  million for meal and rest break claims of 310 truck drivers with Ackermann & Tilajef, P.C.

13  appointed as co-class counsel); Order Granting Plaintiffs' Motion for Final Approval of Class

14  Action Settlement, Approving Service Awards to the Class Representatives, and Granting

15  Plaintiffs' Motion for Attorneys' Fees and Costs, *Jape v. Southern Wine and Spirits of America,*

16  *Inc.*, Case No. CV09-2599 SJO (FMOx) (C.D. Cal. July 19, 2010), ECF No. 50 (granting final

17  approval to $1 million wage and hour settlement for 301 truck drivers with Ackermann &

18  Tilajef, P.C. appointed as co-class counsel); *Barret v. Doyon Security Services, LLC*, San

19  Bernardino County Superior Court  Case No. BS 900199; BS 900517 (final approval order dated

20  April 23, 2010 granting final approval to missed meal break, unpaid overtime and unpaid wage

21  class action settlement in the amount of $1.7 million settlement for class of 198 security guards

22  with Ackermann & Tilajef, P.C. appointed as co-class counsel); Order Granting Plaintiffs'

23  Motions for: (1) Final Approval of Class Action Settlement and Award of Enhancement Fee to

24  Class Representative; and (2) Reasonable Attorneys' Fees and Reimbursement of Litigation

25  Expenses and Costs to Class Counsel, *Valladares v. The SYGMA Network, Inc.*, Los Angeles

26  County Case No. BC 406053 (April 6, 2010) (granting final approval of $1.195 million wage and

27  hour settlement for class of 515 truck drivers); Order Granting Plaintiffs' Motion for Final

28  Approval of Class Action Settlement, *Valdez v. Sysco Food Services of Los Angeles, Inc.*, Case

No. BC396372 (Cal. Super. Ct. Los Angeles Cnty. Feb. 1, 2010) (granting final approval to missed meal break settlement of $1.4 million for class of 480 truck drivers); Order (1) Granting Final Approval of Class Action Settlement; (2) Awarding Payment of Class Counsel's Attorneys' Fees, Expenses, and Costs; and (3) Awarding Participation, Service, and Incentive Payment to Class Representative From Settlement Fund, *Murray v. United Natural Foods, Inc.*, Placer County Superior Court Case No. SCV21938 (Cal. Super. Ct. Placer Cnty. Jan. 6, 2009) (granting final approval to $1.5 million settlement for 335 truck drivers).

11.     Co-counsel Michael Malk is an attorney at law duly licensed to practice law in California and admitted to practice before this Court. He is the principal of Michael Malk, Esq., APC, co-counsel of record for Plaintiffs in this matter. Mr. Malk's experience and qualifications are fully detailed in his declaration, filed concurrently herewith.

12.     In addition, my firm retained the services of Barry Goldstein Esq., of counsel to Goldstein, Borgen, Dardarian & Ho to serve as a litigation and settlement consultant on this case. Mr. Goldstein has practiced employment law with a focus on class actions for more than 43 years. Mr. Goldstein has extensive experience in litigation of complex employment-related cases, including nationwide class actions, and has also taught employment law at Harvard Law School.

**III.     PROCEDURAL HISTORY**

13.     On August 28, 2009, Plaintiffs Steve Carson and Christopher Ainsworth filed the case styled *STEVE CARSON and CHRISTOPHER AINSWORTH, individually and on behalf of all others similarly situated, Plaintiffs, vs. KNIGHT TRANSPORTATION, INC., and DOES 1-100, inclusive, Defendants,* Case No. 09-234186, was filed in the Superior Court of the State of California for the County of Tulare. In their complaint, Plaintiffs alleged the following: alleging causes of action for: (1) Failure to Pay Wages Due for Pre- and Post-Trip Work, for Delay Time and for Local Trips; (2) Failure to Pay the Promised and Stated Piece-Rate; (3) Failure to Pay Wages due on Termination; and (4) Unfair/Unlawful Business Practices.

14.     On September 25, 2009, Plaintiffs Carson and Ainsworth filed a First Amended Class Action Complaint that added a fifth cause of action for (5) Failure to Issue Accurate Itemized Wage Statements.

1       15.    On September 15, 2010, this Court certified a class with respect to all causes of

2  action in the *Carson* Action, whereby the class was defined as "[a] class of current and former

3  California resident over-the-road truck drivers employed by Defendant from August 28, 2005 to

4  the present." The *Carson* Class is represented by my firm and Michael Malk, Esq., APC. ("Class

5  Counsel"). See Order Granting Plaintiffs' Motion for Class Certification, Carson, et al. v. Knight

6  Transp., Inc., Case No. 09-234186 (Cal. Super. Ct. Tulare Cnty. Sept. 15, 2010).

7       16.    At the Court's suggestion and per court order, the parties agreed to file cross-

8  motions for summary judgment on the issue of "whether the compensation agreement of

9  Defendant's California resident over-the-road drivers is lawful in California."

10       17.    On February 10, 2011, the Court issued a tentative ruling denying both parties

11  motions for summary judgment regarding the legality of Knight's piece-rate compensation

12  system.

13       18.    Subsequently, on March 8, 2011, in its "Ruling Re Submitted Matter," the Court

14  affirmed its earlier ruling denying both parties' cross-motions for summary judgment and *sua*

15  *sponte* requested additional briefing regarding possible decertification of the *Carson* class. *See*

16  Ruling Re Submitted Matter, *Carson, et al. v. Knight Transp., Inc.,* Case No. 09-234186 (Cal.

17  Super. Ct. Tulare Cnty. Mar. 8, 2011).

18       19.    On May 18, 2012, the Court ruled as a matter of law that Knight's paystubs

19  violated section 226(a) of the California Labor Code because they failed to include the total

20  hours worked by drivers during each pay period, but the Court left open the issue of whether

21  Knight's drivers suffered any "injury" due to the absence of hours worked on their electronic

22  paystubs. *See* Ruling re: Plaintiff's Motion for Summary Adjudication, *Carson, et al. v. Knight*

23  *Transp., Inc.*, Case No. 09-234186 (Cal. Super. Ct. Tulare Cnty. May 18, 2012). The Court also

24  affirmed that the paystub claim was amenable to adjudication on a class-wide basis, including

25  the remaining damages issues of "injury" and "willfulness." *Id.*  However, the court requested

26  additional briefing and set another hearing regarding its possible decertification of the other

27  claims alleged in Carson. *Id.*

28

20.     On September 4, 2012, this Court granted Defendant's motion to decertify the Class in the *Carson* Action with respect to all claims except Plaintiffs' claim for inaccurate wage statements in violation of section 226 and 226.7 of the California Labor Code.

21.     On March 25, 2013, Plaintiff Tom Blair, II ("Plaintiff Blair") filed the case styled *TOM BLAIR, II v. Knight Transportation, Inc.*, Case No. CIV-DS 1300251, in the Superior Court of California for the County of Tulare. In his Class Action Complaint, Plaintiff Blair alleging causes of action for: (1) Failure to Issue Accurate Itemized Wage Statements; and (2) penalties pursuant to the California Labor Code's Private Attorney General Act ("PAGA") based on the same alleged violations asserted in the *Carson* Action.

22.     On August 22, 2013, the Court consolidated the *Blair* and *Carson* actions, and set the cases for a bench trial to be held in February 2014.

23.     October 25, 2013, Defendant filed another motion for summary adjudication, which was scheduled to be heard on January 23, 2014. Knight argued for summary adjudication on grounds that, among other things, Plaintiffs lacked evidence sufficient to prove "willfulness" and "injury" on their Section 226 claims.

24.     On or around December 13, 2013, Plaintiffs filed a motion to bifurcate liability from damages. In the bifurcation motion, Plaintiffs requested that, in the initial bench trial, the Court hear and adjudicate: (1) the liability issues associated with the remaining certified itemized wage statement claim; (2) the liability issues associated with Blair's PAGA claim; and (3) the named Plaintiffs' individual unpaid wage claims in the *Carson* and *Blair* cases (which have never been dismissed).   Finally, Plaintiffs also requested that, if and when liability was established in the bench trial, the question of the amount of damages and/or penalties and the allocation of such penalties and damages should be adjudicated in subsequent proceedings before a special master, and that Defendant should have to pay for the special master.

IV.     **DISCOVERY AND INVESTIGATION PRIOR TO MEDIATION**

25.     In the months following the filing of the November 2009 filing of the *Carson* First Amended Complaint, the parties conducted a substantial amount of written discovery and depositions. Initially, the parties exchanged and responded to written discovery requests. Among

1   other things, Defendant produced thousands of pages of documents, including Driver's Manuals,

2   personnel files, DOT Logs, and wage statements for Plaintiffs and a sampling of drivers.

3   Plaintiffs also obtained sworn declarations from more than twenty-five drivers corroborating

4   Plaintiffs' claims. Class Counsel also deposed several corporate representatives of Knight—

5   Randy Alexander, Puneet Bawa, and Tim Pollock—on various topics relevant to this case.

6   During the course of discovery, Knight informed Plaintiffs that at any one time during the Class

7   Period, Knight employed approximately 320 California-based drivers. Although approximately

8   twenty of these drivers are hourly drivers whose routes are driven entirely within California, the

9   remaining 300 full-time equivalents ("FTEs") are over-the-road ("OTR") drivers who spend

10  approximately 3 days per month driving routes in California with their remaining days spent

11  driving among other western states.

12       26.     During discovery, Knight obtained sworn declarations from numerous drivers and

13  members of management supporting its positions and defenses, and in June 2010, took the

14  depositions of Plaintiffs Carson and Ainsworth.

15  **V.    THE PARTIES' MEDIATION ON DECEMBER 3, 2012**

16       27.     The parties met for private mediation on December 3, 2012 with Michael Loeb,

17  Esq., a wage and hour class action mediator. In attendance for the Plaintiffs were the class

18  representatives Ainsworth and Carson, as well as the class representatives in the two other

19  pending wage and hour cases against Knight (Jack Morrison and Don Clayton). Plaintiffs were

20  represented by Class Counsel as well as veteran class action litigator Barry Goldstein, Esq., who

21  served as lead negotiator for Plaintiffs. Defendant was represented by Richard Rahm, Esq. from

22  Littler Mendelson LLP and Ellen Bronchetti, Esq. from Sheppard Mullin, Knight's counsel in the

23  *Clayton* case, and Todd Carlson, Esq., Knight's in-house General Counsel. In advance of the

24  mediation, both sides submitted detailed mediation briefs describing their claims and defenses.

25  Plaintiffs' brief also included a detailed damages model. The settlement negotiations during

26  mediation were adversarial, non-collusive, and were conducted at arm's length.

27

28

1    28.    During this mediation and throughout settlement negotiations, the parties were

2  aware of one another's contested claims and defenses in this case, and the risks posed by

3  continued litigation, trial and appeal:

4        i.    First, the parties have disagreed about whether the Labor Code may

5  apply extra-territorially when drivers drive or work outside of California. Knight argued that that

6  drivers only spend approximately 10% to 15% of their time driving within California and

7  California law should not apply to their working time spent outside of California, thereby

8  substantially reducing potential damages on both the certified and decertified claims.

9        ii.   Second, the parties disputed whether there was any "injury" associated

10  with the absence of hours worked on drivers' electronic wage statements. Effective January

11  2013, Labor Code section 226 was amended to make it easier for plaintiffs to obtain damages

12  where "hours worked" information was not included in their wage statements.  Prior to the

13  amendment, penalties under Section 226(e) were only available where both "willfulness" and

14  "injury" could be shown.  In January 2013, Knight changed its itemized wage statements to

15  include drivers' total hours worked, thereby effectively cutting off its exposure to any liability

16  under Labor Code section 226 for the period of time after January 2013.  Since the amendments

17  to Section 226 are likely not retroactive, this cut off any potential liability for the Section 226

18  claim for the period from January 2013 onwards.  Plaintiffs maintain that Knight is still

19  potentially liable for PAGA penalties to Blair and other similarly situated aggrieved employees

20  for not including hours worked on its paystubs for the one year period prior to January 2013, and

21  for the period of time from one year prior to the filing of the Carson case through January 2013,

22  when it changed its electronic wage statements to include hours worked.

23        iii.   Third, Knight argued that any meal or rest break claims were preempted

24  by the F4A. *See, e.g., Dilts v. Penske,* 819 F. Supp. 2d 1109 (S.D. Cal. 2011) (granting

25  Defendant's motion for summary judgment as to California' meal and rest break claims). The

26  issue of whether California's meal and rest break statutes as applied to truck drivers are

27  preempted is currently before the Ninth Circuit in the *Dilts* case; and before the California

28  Supreme Court in the *People ex rel. Harris v. Pac Anchor Transp., Inc.,* 195 Cal. App. 4th 765

1  (2011), *review granted*, 125 Cal. Rptr. 3d 709. A number of federal district courts followed the

2  *Dilts* reasoning. *See, e.g., Parker v. Dean Transportation Inc.*, No. CV 13–02621 BRO (VBKx),

3  2013 WL 7083269 (C.D. Cal. Oct. 15, 2013) (granting Defendant's motion to dismiss as

4  preempted by F4A); *Ortega v. J.B. Hunt Transport, Inc.*, No. CV 07–08336(BRO) (FMOx),

5  2013 WL 5933889 (C.D. Cal. Oct. 2, 3013) (granting Defendant's motion for judgment on the

6  pleadings); *Cole v. CRST, Inc.*, No. EDCV 08–1570-VAP (OPx), 2012 WL 4479237 (C.D. Cal.

7  Sept. 27, 2012) (granting Defendant's motion for judgment on the pleadings); *Esquivel v. Vistar*

8  *Corp.*, No. 2:11–cv–07284–JHN–PJWx, 2012 WL 516094 (C.D. Cal. Feb 8, 2012) (granting

9  Defendant's motion to dismiss on the basis that Plaintiffs' claims are preempted by the F4A).

10              iv.        Fourth, Knight argued that the amount of any potential PAGA penalties

11  to be awarded was in the Court's discretion. In granting final approval of the class action

12  settlement in *Stuart v. Radioshack*, Judge Chen noted the following:

> Plaintiffs could arguable get more . . . because they are entitled to penalties under
> 13    the PAGA, [but] it is not clear that they could get a significant additional amount
> 14    because the PAGA provides that,
>
>> [i]n an action by an aggrieved employee seeking recovery of a civil
>> 15    penalty available under subdivision (a) or (f), a court may award a
>> 16    lesser amount than the maximum civil penalty amount specified by
>>       this part if, based on the facts and circumstances of the particular
>> 17    case, to do so otherwise would result in an award that is unjust,
>> 18    arbitrary and oppressive, or confiscatory.

19  *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9,

20  2010) (citing Cal. Labor Code § 2699(e)(2)).

21          29.      The parties failed to reach settlement at mediation, in part due to the parties'

22  divergent views as to the likelihood of Knight prevailing on its various defenses. In the months

23  following mediation, the mediator attempted to salvage a settlement by engaging the parties in

24  continuing negotiations until impasse.

25  **VI.    THE EVENTS LEADING UP TO THE PARTIES' SETTLEMENT IN**

26          **DECEMBER 2013**

27          30.      Following the parties' unsuccessful mediation on December 3, 2012, the *Blair*

28  action was filed in Tulare County Superior Court. *See supra* Paragraph 21.

31.     Based on the number of full time equivalent employees, Plaintiffs estimated Defendant's liability exposure as follows: **$312,000** in PAGA penalties [400 FTEs * 26 pay periods * $200 penalty per pay period * .15 (percentage of working time spent in California)]; **approximately $1,051,200** in liability under section 226 of the Labor Code [1,752 class members * 4,000 (maximum allowed under Section 226(e) per class member) *0.15 (average percentage of working time spent in Califonia)]; and the potential liability that could arise from Plaintiffs' successful appeal of the Court's decertification of their minimum wage claims, that would be valued at **approximately $786,360** [400 FTEs * approximately 4 days per month working in California * 4 hours per month of unpaid minimum wage claims ([30 minutes of pre and post inspections per day * 4 days per month] + 2 hours of detention time, fueling time and paperwork time per month) * 12 months per year * 8.5 years * $8 per hour *0.15 [percentage of time spent working in California]. As shown above, Plaintiffs estimate that Knight's maximum exposure for wage statement claims amounts to approximately $1,363,200 (i.e., $312,000 + $1,051,200), exclusive of interest and attorneys' fees, and estimates Knight's maximum exposure for Plaintiffs' unpaid minimum wage claims at $783,000, excluding all penalties, liquidated damages and interest. Plaintiffs' estimations do not include any deductions to reflect the risks associated with Defendant's defenses, and the risks associated with Knight's intent to appeal on the merits as well as on the class certification ruling retaining the itemized wage statement class.

32.     On December 5, 2013, the Court-approved class notice was disseminated to the class by the agreed upon and court appointed administrator CPT Group, Inc. A true and correct copy of the most recent weekly report from CPT Group, Inc. is attached hereto as **Exhibit 2**. In total, class notices were mailed out to 1,787 current and former Knight drivers. *See* Ex. 2. Ultimately, only 35 class members opted out of the class. *Id.*

33.     The filing of Defendant's additional motion for summary adjudication, the filing of Plaintiff's motion to bifurcate, and the looming prospect of trial for both parties, along with reported decisions that came out on various decisions related to the instant case, all together created a new momentum for settlement discussions to take place in November and December

1  2013. in various communications with opposing counsel, Class Counsel discussed certain

2  "bridging proposals" that could further narrow the gap between the parties' prior settlement

3  offers, including, inter alia, possible use of a "claims-made" settlement process with a reversion

4  of some of the unclaimed funds to Knight coupled with the use of a minimum "floor" on the

5  distribution of the net settlement amount to be distributed notwithstanding any possible reversion

6  to Knight, as well as resolution and a release of the claims that were pleaded and that had been

7  decertified as part of a proposed settlement class.

8       34.    After exchanging a series of letters and emails containing demands and counters,

9  the parties' counsel finally reached a settlement in or around December 20, 2013.

10      35.    As of December 20, 2013, when the proposed Settlement Agreement was reached,

11  the parties were well aware of one another's claims and defenses in this case, and the risks posed

12  by continued litigation, trial and potential appeals. Overall, the balance between the strength of

13  Plaintiffs' claims, evidence and arguments, on the one hand, and Knight's potential defenses on

14  the merits, and the inherent risks of litigation and appeal, on the other hand, support the proposed

15  settlement and Plaintiffs' agreement to a reasonable discount of its damages calculation. Given

16  all of Defendant's actual and foreseeable defenses, the proposed Settlement is reasonable and

17  fair. If the Settlement Agreement is approved, the average settlement award will amount to

18  approximately $123.34,[1] which is consistent with settlement awards obtained in similar class

19  action cases for wage statement violations and related claims.

20  **VII.    THE BASIC TERMS OF THE SETTLEMENT**

21      36.    The Settlement Agreement provides real and substantial benefits for the Class,

22  which is defined as: "All current and former California resident drivers employed by Defendant

23  in California during the Class Period." See Settlement Agreement, at ¶ 39. The Class Period is

24

25

26  [1] The settlement amount available to be claimed is $216,098 (i.e., $425,000 - $141,652.00 in fees
    - $20,000 in litigation costs - $25,000 in total Enhancement Awards - $18,000 in settlement
27  administration expenses = $216,098), and the total number of Class Members is 1,752.
    Assuming a 100% claim rate, the average settlement award will be $123.34 ($216,098/1,752 =
28  $123.34).

1   defined as the period from "August 28, 2005 through the date the Court enters an Order

2   preliminarily approving the settlement." *Id.* ¶ 40.

3       37.    Pursuant to stipulation, the *Carson* Action and the *Blair* Action were consolidated

4   on August 22, 2013.  As part of this Stipulation and Settlement, Plaintiffs have agreed to add

5   Plaintiff Blair as a Class Representative in the *Carson* Action and to include PAGA claims in a

6   Second Amended Complaint. Plaintiffs have also agreed that, upon final approval of the

7   Settlement, they will dismiss the *Blair* Action.

8       38.    The Settlement Agreement sets forth a Maximum Settlement Amount ("MSA") of

9   no more than $425,000 to the Settlement Class. The MSA is inclusive of attorneys' fees, costs

10   and expenses directly related to the litigation. After reductions for attorneys' fees ($141,652.00),

11   up to $20,000 in reasonable litigation costs actually incurred, $18,000 in claims administration

12   costs (a true and correct copy of CPT Group, Inc.'s price quote of $18,000 is attached hereto as

13   **Exhibit 3**), Enhancement awards for class representatives totaling ($25,000), and a $4,250

14   PAGA payment to LWDA, the remaining balance of the settlement fund (the "Net Settlement

15   Amount") shall be paid to class members on a "claims-made" basis, subject to the protocol

16   agreed upon by the parties.[2]

17       39.    If a Class Member fails to make a claim then the amount allocated to that Class

18   Member's potential claim shall remain the property of Defendant, except that, irrespective of the

19   number of timely claims made, a floor of at least 50% of the Net Settlement Amount shall be

20   distributed to Qualified Claimants. Specifically, under the Settlement Agreement, if less than

21   50% of the Net Settlement Amount is claimed, then the difference between the amount claimed

22   by all class members who submitted timely claims and 50% of the Net Settlement Amount shall

23   be re-distributed on a *pro rata* basis to the class members who submitted timely claims. *See*

24   Settlement Agreement, at ¶ 44(b). The funds associated with any settlement checks that remain

25

26   [2] The Claims Administrator CPT Group, Inc. has informed us that of the 1,787 class notices sent

27   to class members following class certification, only two (2) were returned as undeliverable.
     There were thirty-five requests for exclusion from the class received during the post-certification

28   notice process, which brings the size of the Settlement Class down to 1,752.

un-cashed after six months following their mailing to the participating class members shall also be paid to the California state Controller's office pursuant to California Code of Civil Procedure section 1150, *et seq. Id.* ¶ 45.

40.     The Settlement Agreement provides a release of the Defendant by the Class Members, as defined in Paragraph 35 of the Settlement Agreement. None of the other claims alleged in the *Morrison* Action are included in the Released Claims in the instant case; the Released Claims specifically do not include the meal and rest break claims or the derivative UCL (Section 17200) claims in the *Morrison* Action. *Id.*

41.     Under the Settlement, if more than five percent (5%) of the Settlement Class object to the Settlement or opt out of the Settlement Class by submitting valid and timely Requests for Exclusion as set forth in the Notice, Defendant shall have the right in its sole discretion to rescind and void the Parties' Settlement at any time before final approval by the Court, by providing written notice to Class Counsel at least ten (10) business days prior to the final fairness hearing, provided the Claims Administrator has previously furnished Defendant with the number and percentage of valid and timely Requests for Exclusion. *See* Settlement Agreement, at ¶ 49.

42.     If the Settlement is approved by the Court, the payments to each Qualifying Claimant will be made proportionally in accordance with the pay periods worked during the class period. The parties have also agreed that the settlement amounts to be paid to the Class Members are wages and penalties for the relief sought in this lawsuit. The parties agree that 33% of all payments to claimants will be treated as wages subject to W-2 reporting and, therefore, normal payroll taxes and withholdings will be deducted pursuant to state and federal law. The remaining 67% represents interest and penalties sought in the lawsuit and claimants will be issued an IRS Form 1099 for that portion of their payments. Settlement Agreement, at ¶ 48.

## VIII.   FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT

43.     In light of the foregoing, and the parties' additional settlement discussions and analysis discussed further below, I believe that the $425,000 Maximum Settlement Amount is reasonable given the risks and delays associated with continued litigation, trial, and appeals. It is

reasonable both when viewed through the prism of a claim-by-claim analysis, as well as when it is compared with other settlements of similar cases. This view is shared by our co-counsel and our litigation consultant, Barry Goldstein, Esq. Based on a thorough evaluation of the legal and factual issues in this litigation, Class Counsel, who are experienced in wage & hour class actions, have determined that the Settlement is in the best interest of the Class.

44.    Significantly, the total amount of $425,000 obtained here, inclusive of attorneys' fees and costs, falls within the zone of other settlements obtained by my firm in similar cases. Moreover, the amount anticipated to be distributed to each person who files a claim in this case is roughly similar to other similar settlements that have been given preliminary and final approval by the courts. On that basis, too, I believe that the settlement obtained here is reasonable and fair.

45.    As explained in Paragraph 31 above, the value of Plaintiffs' wage statement claims are estimated at approximately $1,363,200 (i.e., $312,000 + $1,051,200), exclusive of interest and attorneys' fees, and the value of Plaintiffs' unpaid minimum wage claims at $783,000, excluding all penalties, liquidated damages and interest. Thus, the $425,000 proposed settlement amount represents approximately 19.8% of the estimated total value of the class members' claims (i.e., $2.5 million).

## IX. FAIRNESS AND ADEQUACY OF CLASS REPRESENTATIVES' PROPOSED ENHANCEMENT AWARD

46.    Based on their significant contributions to the Class and in light of the settlement and the other factors listed above, the proposed Enhancement awards of $10,000 each to Plaintiffs Carson and Ainsworth, and $5,000 to Plaintiff Blair are fair and reasonable. All three Class Representatives have been instrumental in prosecuting this case and were an important source of information during the course of the litigation. For example, they educated Class Counsel about Defendant's practices and provided documents that allowed us to better understand and develop the facts. They each provided factual background for the Original and Amended Class Action Complaints; provided and explained documents corroborating their allegations; and reviewed the pleadings filed with the Court by Plaintiffs and Defendant.

1     47.     Additionally, Plaintiffs Carson and Ainsworth sat for all-day depositions, assisted

2  Class Counsel in the preparation of its mediation brief, worked with Class Counsel to prepare for

3  the mediation, attended the all-day mediation session with mediator Michael Loeb, Esq., and

4  spoke with drivers about their rights to participate in the settlement. Further, the Class

5  Representatives will be required to execute a general release of all known and unknown claims

6  he may have against Defendant based on their employment with Defendant. Plaintiffs Carson,

7  Ainsworth, and Blair will each submit declarations in support of Plaintiffs' Motion for

8  Attorneys' Fees, Costs, and Enhancement Awards, which will describe in more detail their

9  efforts and contributions for the benefit of the class.

10     48.     The proposed Enhancement Awards are consistent with the range of awards that

11  have received approval from various courts in similar cases with which my firm has been

12  involved.

13  **X. ATTORNEYS' FEES AND COSTS**

14     49.     I have researched and, through my practice, have become familiar with the

15  obligations and burdens of representing a class. As has been determined by numerous state and

16  federal courts, including the Court in the instant case, the law firm of Ackermann & Tilajef, P.C.

17  is competent and capable of representing the Class as Class Counsel in this case. *See supra*

18  Paragraph 10.

19     50.     In addition, this Court, in previously certifying the Class in this case, appointed

20  Ackermann & Tilajef, P.C. and Michael Malk, Esq., APC as Class Counsel and determined that

21  our firms were adequate to perform the role of class counsel.

22     51.     The requested attorneys' fees of 33.33% of the MSA is consistent with attorneys'

23  fees awarded in some of our other wage and hour class actions that have been settled in state

24  court. Indeed, California state and federal courts have regularly approved payments of attorneys'

25  fees amounting to as much as 33% or more of the common fund in similar wage and hour class

26  actions. *See, e.g., Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal.

27  Mar. 9, 2010) (citing five recent wage and hour class actions where federal district courts

28  approved attorney fee awards ranging from 30% to 33%); *Singer v. Becton Dickinson and Co.*,

1    2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33% of the

2    common fund and holding that award was similar to awards in three other wage and hour class

3    action cases where fees ranged from 33.3% to 40%); *Martin v. FedEx Ground Package System,*

4    *Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (approving attorneys' fees award of

5    33% of the common fund in a trucker meal break case and stating, inter alia, "[b]ecause the

6    lodestar cross check revealed a relatively low multiplier of 1.48, the court is satisfied that

7    counsel's requested fee award is not unreasonable"); *Knight v. Red Door Salons, Inc.*, 2009 WL

8    248367, at *5 (awarding 30% in attorneys' fees in a wage/hour class action where the common

9    fund obtained amounted to $500,000, and noting, "[t]he results achieved weigh in favor of

10   granting the requested 30% fee); *Valladares v. The SYGMA Network, Inc.*, LASC Case No. BC

11   406053 (final approval order entered April 6, 2010) (approving attorneys' fees award of 30% of

12   the $1.95 million common fund for a class of 515 truck drivers where the lodestar multiplier was

13   1.62); *Murray v. United Natural Foods, Inc.*, Placer County Superior Court No. CVS 21938

14   (final approval order entered Jan. 6, 2009) (awarding 30% of the common fund as attorneys' fees

15   in a missed meal break class action); *Romero v. Producers Dairy Foods, Inc.*, Case No. 05-0484,

16   2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving attorneys' fees of 33% of the

17   common fund in a missed meal break class action and noting, "fee awards in class actions

18   average around one-third of the recovery"); *Big Lots Overtime Cases*, JCC Proceeding No. 4283,

19   San Bernardino Superior Court, Feb. 4, 2004 (approving award of attorneys' fees of 33% of

20   recovery); *Barela v. Ralph's Grocery Company*, No. BC070061, Los Angeles Superior Court

21   (same); *Davis v. The Money Store, Inc.*, No. 99AS01716, Sacramento Superior Court, Dec. 26,

22   2000 (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, Los Angeles Superior

23   Court (same); *see also, Elmore v. Ditech Funding Corp.*, Case No. SAVC 01-0093 (C.D. Cal.)

24   (approving award of attorneys' fees of 33% of recovery). Where, as here, the common fund is

25   relatively small, class action commentators have noted that courts typically award 30-50% of the

26   common fund as attorneys' fees. *See* Rubenstein, Conte and Newberg, Newberg on Class

27   Actions §14.6.

28

1    52.    My firm has expended a significant amount of time on this case, including

2    meeting with the named plaintiffs and other class members, researching the evolving legal issues

3    concerning certification of the class and federal preemption, drafting the Original and Amended

4    Complaints, conferring with opposing counsel, drafting and responding to various discovery

5    requests, reviewing thousands of pages of documents, taking and/or defending five depositions,

6    preparing and filing Plaintiffs' successful motion for class certification, preparing and filing

7    dispositive motions, preparing and filing oppositions to Defendant's motions for decertification

8    and summary adjudication, preparing for and attending a full-day mediation.

9    53.    Further, our firm handled this case on a contingency basis and the case involved

10   significant risks of non-payment of attorneys' fees and non-recovery of litigation expenses if

11   class certification was not granted and/or if Class Counsel did not settle or prevail.

12   54.    To date, my firm has expended approximately 394.8 hours in prosecuting this

13   case on behalf of Plaintiff and the members of the Class. My firm's total lodestar amounts to

14   $157,180, based on regular rates currently charged, which have been approved in other state and

15   federal courts. In addition, Class Counsel will perform a significant amount of additional work

16   on this matter over the next several months, including supervising class notice in coordination

17   with the settlement administrator, answering and responding to Settlement Class member

18   inquiries, moving for final approval of the settlement, and monitoring distribution of awards to

19   Settlement Class members. I have been informed that Michael Malk, Esq., APC has incurred a

20   total of $55,013 in attorneys' fees, and Barry Goldstein, Esq., incurred a total of $10,030 in

21   attorneys' fees.

22   55.    Class Counsel have incurred, to date, approximately $9,588.59 in out-of-pocket

23   litigation costs which include the mediation fee, court reporter costs for depositions, legal

24   research fees, filing fees, and class notice dissemination fees. Class Counsel anticipates that it

25   will incur additional costs through final approval of the Settlement. Class Counsel will submit

26   detailed records documenting the actual costs incurred when Plaintiffs' motion for attorneys'

27   fees and costs is filed with the court. I have been informed that Michael Malk, Esq., APC has

28   incurred $2,362 in litigation costs to date.

56.     If the Court grants preliminary approval to the settlement and authorizes the dissemination of notice of the settlement to the class, Class Counsel anticipates filing a Motion for Attorneys' Fees, Litigation Costs, and Enhancement Awards that will be scheduled to be heard concurrently with the Motion for Final Approval and Fairness Hearing, with the papers at least 10 days prior to the Class Members' deadline to object to the Settlement. In connection with the filing of Plaintiffs' motion, Class Counsel will submit information in the form of a sworn declaration setting forth a summary of their lodestar hours expended, as well all of their actual costs incurred in litigation this case.

57.     Counsel for Knight, Richard Rahm, Esq., has advised me that, while preserving its defenses if the Court does not grant approval to the settlement and while it does not agree with all the substantive parts argued in this motion, Knight does not oppose the Court's granting of Plaintiffs' motion for preliminary approval of the Settlement and Plaintiffs' request for fees, costs, and attorneys' fees at the amounts permitted by the Settlement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 19th day of March, 2014.


Craig Ackermann, Esq.

DECLARATION OF CRAIG J. ACKERMANN IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

     I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 695 Town Center Drive, Suite 700, Costa Mesa, California. On May 19, 2014, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: Ntc. of Mo. & Mo to Remand to State Court; Points & Authorities in Support; Dec. of James M. Trush; Objections to Evidence; Certificate of Interested Parties; [Proposed] Order

SERVED UPON:      **SEE ATTACHED SERVICE LIST**

☒    (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of **Trush Law Office, APC** for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit;

☐    (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by **DDS Attorney Service** to receive documents to be delivered on the same date. A proof of service signed by the authorized courier is available upon request.

☐    (BY FEDERAL EXPRESS) I am readily familiar with the practice of **Trush Law Office, APC** for the collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery)

☐    (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(I), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is maintained at **Trush Law Office, APC**, and is available upon request.

☐    (BY ELECTRONIC MAIL) The above-referenced document was transmitted by electronic mail transmission to the electronic mail address last provided me by the person(s) shown on the accompanying Service List, and I hereby attest that no information was received by sender indicating that the electronic mail transmission was undeliverable.

☐    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I took said action(s) at the direction of a licensed attorney authorized to practice before the Federal Courts.

Executed on May 19, 2016, at Costa Mesa, California.

*Julie Kennedy*

JULIE KENNEDY

Proof of Service, Pg. 1

SERVICE LIST
LaCross v. Knight Transportation - IC
USDC/Central/Case No. EDCV18-00771 JGB (JCx)

Richard H. Rahm, Esq.                     **Attorneys for Defendant**: KNIGHT
Littler Mendelson, P.C.                   TRANSPORTATION, INC.
650 California Street, 20th Floor
San Francisco, CA  94108-2693
rrahm@littler.com
T: 415-433-1940
F: 415-399-8490

James E. Hart, Esq./Thomas J. Whiteside, Esq.
Littler Mendelson, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
jhart@littler.com
twhiteside@littler.com
T: 949-705-3000
F: 949-724-1201

Carly Nese, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
cnese@littler.com
T: 310-553-0308
F: 310-553-5583

Todd H. Harrison, Esq. – SBN 230542       **Associate Counsel for Plaintiffs**
Brennan S. Kahn, Esq. – SBN 259548
Perona Langer Beck Serbin Mendoza &
Harrison APC
300 E. San Antonio Drive
Long Beach, CA  90807
Telephone: (562) 426-6155
Facsimile:  (562) 490-9823
Email: toddharrison@plblaw.com

rev. 04/23/14 jk      M:\LaCross v. Knight - IC Case\USDC\POS re Nte of Mo & Mo to Remand to State Court (05.19.14).doc