RICHARD H. RAHM, Bar No. 130728
rrahm@littler.com
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, CA  94108.2693
T: 415.433.1940  /  F: 415.399.8490

JAMES E. HART, Bar No. 194168
jhart@littler.com
THOMAS J. WHITESIDE, Bar No. 259505
twhiteside@littler.com
LITTLER MENDELSON, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
T: 949.705.3000  /  F: 949.724.1201

CARLY NESE, Bar No. 265342
cnese@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067.3107
T: 310.553.0308  /  F: 310.553.5583

Attorneys for Defendants
KNIGHT TRANSPORTATION, INC. and
KNIGHT TRUCK AND TRAILER SALES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK LACROSS, ROBERT LIRA and MATTHEW LOFTON, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC., an Arizona Corporation; KNIGHT TRUCK and TRAILER SALES, LLC, an Arizona Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.  5:14-cv-00771-JGB-JC<br><br>**KNIGHT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date:   July 14, 2014<br>Time:  9:00 a.m.<br>Courtroom: 1<br><br>Complaint Filed:  March 3, 2014 |

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND

Case No.  5:14-cv-00771-JGB-JC

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

    A.   Knight Has Independent Contractor Drivers Who Lease-To-Own
Their Own Tractors. .................................................................. 2

    B.   Plaintiffs Filed A Putative Class Action That Alleges Both Wage-
And-Hour And Reimbursement Claims. ...................................... 4

    C.   Plaintiffs LaCross And Lira Filed Another Putative Class Action
For Wage-And-Hour Violations For The Time They Worked As
Knight Employee-Drivers. .......................................................... 4

    D.   After Knight Removed, Plaintiffs Offered To Settle The LaCross
And Lira Wage-And-Hour Claims For What Would Be Over $18
Million For The Independent Contractor Class. ............................. 5

III. KNIGHT HAS ESTABLISHED THE CAFA JURISDICTIONAL
MINIMUM SEVERAL TIMES OVER. .................................................. 6

    A.   Knight Need Only Establish CAFA Jurisdiction By A
Preponderance Of The Evidence Based On The Allegations In The
Complaint. .............................................................................. 6

    B.   Knight Has Established The Jurisdictional Amount In Controversy
Based On The Allegations In The Complaint. ............................... 8

        1.   Knight's Evidence Demonstrates There Are Over 557
Contractors Or 28,850 Work Weeks In The Class Period. ............ 8

        2.   There Is Approximately $11 Million In Dispute For Lease-
Related Costs. ..................................................................... 10

        3.   There Is At Least $23 Million In Dispute Based On
Plaintiff's Claim For Reimbursement Of Fuel Costs. ................. 12

        4.   Plaintiffs' Settlement Demand In Their Other Action
Against Knight Values The Same Wage-And-Hour Claims
At Over $18 Million. ............................................................ 14

    C.   There Is No Basis For An Award Of Attorneys' Fees To Plaintiffs
Because Knight's Removal Is Objectively Reasonable ..................... 17

    D.   There Is Neither A Factual Nor A Legal Basis For Plaintiffs'
Request To Remand This Action Sua Sponte ............................... 17

LITTLER MENDELSON, P.C
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

TABLE OF CONTENTS                           i.                    Case No.  5:14-cv-00771-JGB-JC

1

**TABLE OF CONTENTS**

2

(CONTINUED)

PAGE

3
IV.    CONCLUSION ................................................................................... 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

# TABLE OF AUTHORITIES

PAGE

CASES

*Amador v. John Crane, Inc.*,
    2014 U.S. Dist. LEXIS 49999 (C.D. Cal. Apr. 7, 2014) ................................. 9, 10

*Behrazfar v. UNISYS Corp.*,
    687 F. Supp. 2d 999 (C.D. Cal. 2009) ................................................. 10

*Blackie v. Barrack*,
    424 F. 2d 89 (9th Cir. 1975) .......................................................... 11

*Cohn v. Petsmart, Inc.*,
    281 F.3d 837 (9th Cir. 2002) ...................................................... 15, 16

*De la Fuente v. Stokely-Van Camp, Inc.*,
    713 F. 2d 225 (7th Cir. 1983) ........................................................ 11

*Garza v. Bettcher Industries, Inc.*,
    752 F. Supp. 753 (E.D. Mich. 1990) .............................................. 17, 18

*Giannini v. Northwest Mut. Life Ins. Co.*,
    2012 U.S. Dist. LEXIS 60143 (N.D. Cal. Apr. 30, 2012) ............................. 10

*Janis v. Health Net, Inc.*,
    472 Fed. Appx. 533 (9th Cir. 2012) .................................................. 12

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
    199 F. Supp. 2d 993 (C.D. Cal. 2002) ................................................. 7

*Lewis v. Ford Motor Co.*,
    610 F. Supp. 2d 476 (W.D. Pa. 2009) ................................................ 11

*Lewis v. Verizon Communications, Inc.*,
    627 F. 3d 395 (9th Cir. 2009) ......................................................... 7

*Leyva v. Medline Industries, Inc.*,
    716 F. 3d 510 (9th Cir. 2013) ........................................................ 11

*Lippold v. Godiva Chocolatier, Inc.*,
    2010 U.S. Dist. LEXIS 47144 (N.D. Cal. Apr. 15, 2010) ........................... 12, 13

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

TABLE OF AUTHORITIES                iii.              Case No.  5:14-cv-00771-JGB-JC

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) ........................................................................ 17

*MHS-Rossmore, LLC v. Lopez*,
    2008 U.S. Dist. LEXIS 53131 (C.D. Cal. Jun. 5, 2008) ................... 17

*Muniz v. Pilot Travel Centers LLC*,
    2007 U.S. Dist. LEXIS 31515 (E.D. Cal. Apr. 30, 2007) ................... 6

*Ray v. Wells Fargo Bank, N.A.*,
    2011 U.S. Dist. LEXIS 53155 (C.D. Cal. May 9, 2011) ................. 7, 8

*Rippee v. Boston Market Corp.*,
    408 F. Supp. 2d 982 (S.D. Cal. 2005) ............................................... 7

*Sanchez v. Monumental Life Ins. Co.*,
    102 F. 3d 398 (9th Cir. 1996) ........................................................... 6

*Theis Research, Inc. v. Brown & Bain*,
    400 F. 3d 659 (9th Cir. 2005) ........................................................... 8

*Willingham v. Morgan*,
    395 U.S. 402 (1969) ....................................................................... 15

STATUTES

California Labor Code - Private Attorneys General Act of 2004 ............................ 4

California Labor Code section 2802 ................................................................. 10

Class Action Fairness Act of 2005 ............................................................ passim

OTHER AUTHORITIES

49 C.F.R. Part 376 ........................................................................................... 2

Local Rule 7-3 ........................................................................................... 6, 17

.ITTLER·MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

## I.   INTRODUCTION

Defendant Knight Transportation, Inc. is a Phoenix-based motor carrier that provides nationwide transportation services.   Knight performs these services either through its employee-drivers or by contracting with independent contractors, most of whom lease-to-own their tractors through Knight Truck and Trailer Sales, LLC.  Plaintiffs Patrick LaCross, Robert Lira and Matthew Lofton ("Plaintiffs") have filed a putative class action alleging that they were not independent contractors but actually employee-drivers of Knight Transportation who, consequently, are now entitled to reimbursement for all of the lease-to-own tractor payments they made, as well as all of the fuel costs they previously incurred, as independent contractors.  In addition, Plaintiffs now claim that Knight Transportation is now liable to them for the violation of various wage-and-hour laws applicable to employees but not to independent contractors.   Knight removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA") based on the fact that Plaintiffs' reimbursement claims *alone* put into controversy an amount many times the CAFA jurisdictional minimum. *See* Notice of Removal ¶¶ 21-23.

Plaintiffs move to remand, arguing that it is "speculative" for Knight to use Plaintiffs as "representatives" for purposes of estimating alleged damages.  They also argue that, instead of relying on the allegations in the Complaint to calculate damages, Knight should have based its calculations on its own assessment of its defenses to the action, including Knight's settlement of a wage-and-hour action with a class of its employee-drivers (not former independent contractors) who had no claims for reimbursement.  As will be discussed below, Plaintiffs are wrong on the facts and wrong on the law.  Moreover, Plaintiffs know they are wrong, evidenced by the fact that, prior to filing their Motion to Remand, they offered to settle the wage-and-hour claims *alone* for Plaintiffs LaCross and Lira at an amount that would equal $18 million for the class.  Regardless of the fact that Plaintiffs value just one part of the action at over three times the CAFA minimum jurisdiction, Knight will supplement its

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

KNIGHT'S OPP TO MOTION TO REMAND

1.

Case No.  5:14-cv-00771-JGB-JC

calculations with more detail to further demonstrate that if Plaintiffs prevailed *on just their reimbursement claims*, there could be over **$34 million** in liability.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Knight Has Independent Contractor Drivers Who Lease-To-Own Their Own Tractors.

Knight Transportation, Inc. ("Knight Transportation") is a nationwide motor carrier, which is an Arizona corporation with its principal place of business in Phoenix. *See* Declaration of Kevin Quast ("Quast Decl.") ¶ 2. Knight Trailer and Sales is an Arizona, LLC ("Knight Sales"), with its principal place of business also in Phoenix. (Knight Transportation and Knight Sales will be collectively referred to as "Knight.") Although the drivers working for Knight are primarily employees, Knight also contracts with a number of independent contractors, about 80% of whom lease-to-own their tractors from Knight Sales. *See id.* at ¶ 4; Supplemental Declaration of Kevin Quast ("Quast Supp. Decl.") ¶ 2. In its removal papers, Knight estimated that it had 116 California-based independent contractors throughout 2010, 135 throughout 2011, 118 throughout 2012, and 188 throughout 2013, or a total of approximately 557 independent contractor drivers in the four-year putative class period. *See* Supp. Quast Decl. ¶ 4. These numbers were approximate insofar as Knight calculated them by adding together the number of contractors working each month of a particular year and then divided by 12 months, such that, for example, 116 contractors in 2010 means, on average, there were 116 contractors working for Knight each month of 2010. *See* Supp. Quast Decl. ¶ 4. As such, each of the 557 contractor drivers worked 12 months or 50 work weeks (assuming two weeks for vacation), yielding approximately 28,850 contractor work weeks in the class period. *See id.*

All independent contractors who contract with Knight sign an Independent Contractor Operating Agreement, and all contractors who are leasing-to-own from Knight Sales also sign a "Tractor Lease Agreement." *See* Supp. Quast Decl. ¶ 6. The leases are governed by federal motor carrier regulations. *See* 49

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                                2.                 Case No.  5:14-cv-00771-JGB-JC

C.F.R. Part 376.  Each lease is based on a term sheet listing, *inter alia*, the "Tractor Information," the "Insurance Information," and the "Loan/Financial Information." *See* Quast Supp. Decl. ¶ 6, Exh. A (Plaintiffs' term sheets).  Knight Sales primarily leases late-model (2-3 years old) Volvo, Peterbilt and International tractors, and the weekly lease payments for Knight's lease-to-own contractors over the four-year class period range from approximately $300 to $457: (1) 2010: $300 to $375; (2) 2011: $330 to $395; (3) 2012: $375 to $457; and (4) 2013: $350 to $375.  *See id.* at ¶ 7.  As such, Plaintiffs' weekly lease payments are typical of the class insofar as Plaintiff LaCross paid $375 per week, Plaintiff Lira paid $330 per week, and Plaintiff Lofton paid $360 per week.  *See* Quast Decl. ¶ 5.  Insurance payments related to the lease during the class period are, on average, approximately $95 per week.  *See* Supp. Quast Decl. ¶ 7.  Consequently, during the class period, Knight's lease-to-own contractors could expect to pay between $395 and $457 a week for lease-related insurance costs. *See id.*  Again, Plaintiffs appear to be typical, with Plaintiff LaCross paying $473 per week, Plaintiff Lira paying $410 per week, and Plaintiff Lofton paying $466 per week.[1]  *See* Quast Decl. ¶ 5.  While Knight does not know the exact amounts that its non-lease-to-own independent contractors pay for lease costs, based on its knowledge of the industry, Knight Sales believes that the lease costs it charges its lease-to-own drivers are approximately the same as its competitors.  *See* Supp. Quast Decl. ¶ 2.

Every week a Knight independent contractor receives a "settlement" sheet that details how much the contractor is being paid, and what expenses are being deducted.  *See* Quast Decl. ¶ 6.  Perhaps the most significant deduction is for fuel. Knight provides its independent contractors with a fuel card that allows the driver to buy fuel at a discount.  *See* Supp. Quast Decl. ¶ 8.  How much fuel a driver uses will

---

[1] In addition to lease insurance-related costs, independent contractors must also pay, on average, $40 per week for license plates and $20 per week to lease a Qualcomm unit for communicating with Knight's dispatch.  *See* Supp. Quast Decl. ¶ 7.  To estimate on the conservative side, Knight did not use these costs in calculating the total amount in controversy in its Notice of Removal.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND
3.
Case No.  5:14-cv-00771-JGB-JC

of course depend on how much he or she drives. For instance, as detailed in its removal papers, Plaintiff LaCross paid approximately $1,310 per week in fuel; Plaintiff Lira paid approximately $704 per week; and Plaintiff Lofton paid $1,400. *See* Quast Decl. ¶ 6. The average fuel costs for the three Plaintiffs was thus $1,138 per week. *See id.* During the class period, Knight's contractor drivers could expect to pay, on average, approximately the same amount. *See* Supp. Quast Decl. ¶ 8. To double check this, Knight examined the fuel costs of its contractors for the first quarter of this year, which is typically the slowest quarter in the trucking industry, and it found that contractor drivers paid approximately $1,021 per week. *See id.* at ¶ 9. While fuel prices have remained stable from 2011 to the present, there was a 30% increase in fuel between 2010 and 2011. *See id.* at ¶ 10.

**B.    Plaintiffs Filed A Putative Class Action That Alleges Both Wage-And-Hour And Reimbursement Claims.**

On March 3, 2014, Plaintiffs filed the underlying putative class action complaint in the Superior Court of California for the County of San Bernardino, against Knight alleging the following purported claims for relief: (1) recovery of unpaid wages; (2) failure to provide meal periods; (3) illegal deductions from wages; (4) failure to provide accurate itemized wage statements; (5) failure to reimburse business expenses; (6) failure to timely pay wages upon separation; (7) civil penalties under Labor Code Private Attorneys General Act of 2004; and (8) Unfair Business Practices. Plaintiffs seek recovery on behalf of three proposed classes consisting of those drivers who signed independent contractor or lease-to-own agreements, or were otherwise treated as independent contractors. *See* Complaint ¶ 43.

**C.    Plaintiffs LaCross And Lira Filed Another Putative Class Action For Wage-And-Hour Violations For The Time They Worked As Knight Employee-Drivers.**

On March 3, 2014, Plaintiffs LaCross and Lira filed a second lawsuit ("Employee Action") against Knight Transportation in which they alleged the same wage-and-hour claims for the time they worked as employee-drivers at Knight

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION TO REMAND     4.     Case No. 5:14-cv-00771-JGB-JC

Transportation, as opposed to independent contractors.[2]  *See* Declaration of Richard H. Rahm ("Rahm Decl.") ¶ 2, Exh. A.   Specifically, the Employee Action alleges causes of action for: (1) recovery of unpaid wages; (2) failure to provide meal periods; (3) illegal deductions from wages; (4) failure to reimburse business expenses; (5) failure to timely pay wages upon separation; and (6) Unfair Business Practices.  *See id.*  Plaintiffs LaCross and Lira allege in the Employee Action that they worked a total of 16 months as employee-drivers for Knight Transportation.   Employee Complaint ¶¶ 8, 10.

**D.     After Knight Removed, Plaintiffs Offered To Settle The LaCross And Lira Wage-And-Hour Claims For What Would Be Over $18 Million For The Independent Contractor Class.**

On April 18, 2014, Defendants timely removed the instant action and the Employee Action to the Central District of California pursuant to CAFA.  *See* 28 U.S.C. §§ 1332(d).  On May 15, 2014, *before* Plaintiffs filed their present Motions to Remand in this action and in the Employee Action, Plaintiffs' counsel e-mailed Knight's counsel, in which he offered to settle the wage-and-hour claims of Plaintiffs LaCross and Lira in the Employee Action for $20,000 each.  *See* Rahm Decl. ¶ 4, Exh. B.  The offer was reiterated after the Motions to Remand were filed by e-mail dated March 20, 2014.  *See id.* at ¶ 6, Exh. C.  Plaintiffs LaCross and Lira are alleged to have worked approximately 68 weeks, thus making the settlement offer worth $588 per work week.  *See* Employee Action ¶¶ 8, 10.  Based on approximately 28,850 work weeks in the class period in the present independent contractor action, Plaintiffs would appear to be valuing their wage-and-hour claims (which are the same in both actions)

---

[2] Knight contracts with independent contractor drivers who drive trucks for other trucking companies or were employee-drivers at Knight that opted to become independent contractor drivers.  *See* Supp. Quast Decl. ¶ 3.  Either group may opt to lease-to-own their own tractor through Knight Sales.  *See id.*  Plaintiffs LaCross and Lira are former Knight employee-drivers who opted to become independent contractor drivers and chose to lease-to-own tractors from Knight Sales.  *See id.*  Plaintiff Lofton, on the other hand, was not employed by Knight Transportation before he opted to lease-to-own a tractor from Knight Sales.  *See id.*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

at over $18 million.  *See* Rahm Decl. ¶ 4.

On May 19, 2014, Plaintiffs filed their Motions to Remand in both actions, in which they argued, in spite of their own valuation of the wage-and-hour claims at $18 million, that they were entitled to their attorneys' fees because Knight did not have an objectively reasonable basis to remove.  Counsel for Plaintiffs also failed to comply with the requirements of Central District Local Rule 7-3 to meet and confer regarding the substance of Plaintiffs' Motion to Remand.  Likewise, Plaintiffs failed to include a statement in their notice of motion that they met and conferred as required by Local Rule 7-3.  *See* Rahm Decl. ¶ 5.

## III. KNIGHT HAS ESTABLISHED THE CAFA JURISDICTIONAL MINIMUM SEVERAL TIMES OVER.

### A. Knight Need Only Establish CAFA Jurisdiction By A Preponderance Of The Evidence Based On The Allegations In The Complaint.

Plaintiffs' Motion to Remand is based solely on the argument that Knight cannot establish that the amount in controversy in this action exceeds CAFA's $5 million jurisdictional minimum.  Both parties agree that because Plaintiffs' Complaint is silent as to the amount in controversy, Knight's burden is reduced to proving the amount in controversy by "a preponderance of the evidence."  *See* Mtn. Remand 3:25-27.  This means that Knight need only "provide evidence establishing that it is 'more likely that not' that the amount in controversy exceeds that amount."  *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996).  As such, Knight's burden on removal under the "preponderance of the evidence" standard is "not daunting" and Knight is "***not obligated to 'research, state, and prove the plaintiff's claims for damages.***'"  *Muniz v. Pilot Travel Centers LLC,* 2007 U.S. Dist. LEXIS 31515, *7 (E.D. Cal. Apr. 30, 2007) (emphasis supplied).

Although Knight denies it is liable for the damages alleged in Plaintiffs' Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must "assume that the allegations of the complaint are

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                                    6.                    Case No.  5:14-cv-00771-JGB-JC

true and assume that a jury [will] [return] a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). In this respect, the CAFA jurisdictional minimum is *not* based on Knight's own assessment of the case or "what you would owe" but "the amount you put into controversy *by the plaintiff's complaint*." *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (emphasis supplied). *See also Lewis v. Verizon Communications, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2009) (amount in controversy is "not a prospective assessment of defendant's liability"). Thus, the "ultimate inquiry ... is what amount is put 'in controversy' by the plaintiff's complaint or other papers, ***not what the defendant will actually owe for the actual number of violations*** that occurred, if any." *Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, *13 (C.D. Cal. May 9, 2011) (emphasis supplied).

Nevertheless, without citing any contrary authority, Plaintiffs appear to ignore this standard throughout their brief. For instance, in Section II.F of their brief, Plaintiffs argue that Knight "failed to provide any explanation or calculation of the percentage of mileage driving within California and *outside California* for the three named Plaintiffs and the purported 557 class members." Mtn. Remand 11:2-5 (emphasis supplied). Plaintiff bases this argument on a motion for preliminary approval of a class action settlement in the *Carson v. Knight Transportation* case, in which the *Carson* class counsel argued that one of the *several* reasons the class settlement is fair is that, had the case been tried, Knight *could have* argued that, even if it had liability for the alleged wage-and-hour claims, such liability should be reduced by the amount of time the drivers were outside the State of California.[3] *See*

-----

[3] There are three additional reasons Plaintiffs' argument is irrelevant. First, the *Carson* class concerns a class of employee-drivers, and not independent contractors. *See* Rahm Decl. ¶¶ 7-8. Second, the *Carson* court never ruled on this argument as Knight never had the opportunity to make it. *See id.* Third, in any event, Knight removed the present action based *only* on Plaintiffs' reimbursement allegations, which are not even claimed in the *Carson* action. *See id.*

JTTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND

7.

Case No.  5:14-cv-00771-JGB-JC

*id.* at 10:1-11:7.  Yet, as the Ninth Circuit has held, if the amount in controversy were to be based on affirmative defenses, "*it would preclude jurisdiction in any action in which [an] affirmative defense ... was asserted and successfully maintained.*"[4]  *Theis Research, Inc. v. Brown & Bain*, 400 F. 3d 659, 662 (9th Cir. 2005) (emphasis supplied).

Knight need only establish the CAFA minimum jurisdictional amount by a preponderance of the evidence based on the allegations in the Complaint and not on its own assessment of its defenses.  As will be shown below, Knight has established CAFA jurisdiction several times over.

**B.   Knight Has Established The Jurisdictional Amount In Controversy Based On The Allegations In The Complaint.**

**1.   Knight's Evidence Demonstrates There Are Over 557 Contractors Or 28,850 Work Weeks In The Class Period.**

In its Notice of Removal, Knight proffered evidence that the proposed class consists of 557 California-based drivers who worked for Knight as independent contractors for 12 months during the class period.  *See* Quast Decl. ¶ 4.  Specifically, Kevin Quast, the COO of Knight, declared that, based upon his review of Knight's independent contractor records, Knight had independent contractor agreements with 116 California-based contractor drivers throughout 2010, with 135 drivers throughout 2013, with 118 drivers throughout 2012, and with 188 drivers throughout 2013, yielding a total of 557 independent contractors and 28,850 contractor work weeks.[5]

---

[4] Likewise, Plaintiff argues in Section II.G of their brief that Knight was "obligated to provide this Court with an evidentiary explanation of how many putative class members have released their claims," as asserted in Knight's 43rd affirmative defense. *See* Mtn. Remand 11:8-19.  Insofar as the *Carson* action concerns a class of employee-drivers, and not independent contractors, no claims have been released. *See* Rahm Decl. ¶ 8.  Regardless, because the amount in controversy is calculated based on the allegations in the Complaint and not on a defendant's affirmative defenses, Plaintiff's argument is irrelevant. *See Theis Research*, 400 F. 3d at 662 (amount in controversy cannot be based on affirmative defenses).

[5] As a result of Plaintiffs' Motion to Remand, Knight Sales rechecked its numbers and found that the actual average number of contractors for each year was

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

1  *See* Quast Decl. ¶ 4. As noted above, Knight arrived at those numbers by adding

2  together the total number of independent contractors working for Knight in each

3  month of a particular year and then dividing by 12. *See* Supp. Quast Decl. ¶ 4. Thus,

4  in 2010, Knight had, on average, independent contractor agreements with 116 drivers

5  each month of that year or approximately 5,800 contractor work weeks (116

6  contractors x 50 weeks). *See id.*

7  Plaintiffs attack Knight's data as "rank speculation," arguing that there is

8  "absolutely no evidence" that Knight employed 557 independent contractors over the

9  four-year class period. *See* Mtn. Remand 8:15-19. In this regard, Plaintiffs point out

10  that Plaintiff Lira was an independent contractor for only four months and, thus, his

11  tenure at Knight should not be counted as a full year. *See id.* at 8:5-8. Plaintiffs cite

12  to *Amador v. John Crane, Inc.*, 2014 U.S. Dist. LEXIS 49999, *18 (C.D. Cal. Apr. 7,

13  2014), for the proposition that "use of one year's lost wages in calculating the amount

14  in controversy is entirely speculative." *See id.* at 9:4-10. *Amador*, however,

15  concerned a single-plaintiff action for wrongful termination in which the plaintiff

16  worked for the employer for only a week. In removing the action, the employer

17  argued that the plaintiff would be entitled to recover, at a minimum, one year's back

18  pay. *See Amador*, 2014 U.S. Dist. LEXIS 49999 at *18. The district court noted that,

19  where "an employee has been terminated after a short period of employment, courts

20  are hesitant to include in the amount in controversy lost wages for the entirety of the

21  period between the date of termination and the date of removal ...." *See id.* at *17.

22  Thus, in *Amador*, the district court refused to count the one-year's back pay because

23  the employer was unable to provide any authority that plaintiff would be entitled to

24

25  155 (*not* 116) throughout 2010, 184 (*not* 135) throughout 2011, and 173 (*not* 118)
   throughout 2012; and 188 (no change – it was correctly calculated) throughout 2013.

26  *See* Supp. Quast Decl. ¶ 5. As such, the average number of contractors over the four-
   year period is actually 700 – not 557. *See id.* Nevertheless, to be conservative,

27  Knight will use the lower number for purposes of calculating the amount in
   controversy.

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415 433 1940

KNIGHT'S OPP TO MOTION          9.          Case No. 5:14-cv-00771-JGB-JC
TO REMAND

1  such back pay. *See id.* at \*18.

2     Plaintiffs' argument is thus wide of the mark. Unlike *Amador*, Knight is

3  not calculating "back pay" for each of the Plaintiffs in this action. As the present

4  action has been filed as a putative class action for *unpaid* wages and reimbursements

5  *during* the time the putative class members were employed, Knight was simply

6  calculating the average number of independent contractors who worked for it for each

7  of the twelve months of each of the four years in the class period. *See* Supp. Quast

8  Decl. ¶ 4. As such, it does not matter that Plaintiff Lira only worked as a contractor

9  from July – October 2011 because, ***for purposes of calculating potential damages***,

10  Knight employed on average 135 contractors each month of that year. Moreover,

11  Plaintiffs offer no evidence that Knight's calculations of the average number of

12  contractors each year is in any way incorrect. Accordingly, while there was actually

13  an average of 700 contractors working at Knight in the four-year class period, Knight

14  will conservatively use its original, under-calculated figure of 557 contractors or

15  27,850 work weeks (557 contractors x 50 work weeks).[6] *See, e.g., Behrazfar v.*

16  *UNISYS Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (remand denied where

17  defendant's "calculations were relatively conservative, made in good faith, and based

18  on evidence wherever possible"); *Giannini v. Northwest Mut. Life Ins. Co.*, 2012 U.S.

19  Dist. LEXIS 60143, \*6-7 fn. 2 (N.D. Cal. Apr. 30, 2012) (denying motion to remand

20  and finding that defendant's declarations stating number of putative class members

21  based on a review of business records was "summary-judgment-type evidence").

   **2. There Is Approximately $11 Million In Dispute For Lease-Related Costs.**

   Based on alleged misclassification of employee-drivers as independent

contractors, Plaintiffs seek to recover allegedly unreimbursed business expenses under

Labor Code section 2802 on behalf of themselves and members of the putative class.

---

[6] *See* footnote 5, above.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

Complaint ¶ 111. Plaintiff contends that these include "all costs and expenses of owning and/or leasing, repairing, maintaining and fueling the trucks and vehicles they drove, in the discharge of their employment duties, all without reimbursement from the Defendants." Complaint ¶¶ 112 and 115. Based on the average lease-related costs of Plaintiffs (lease and insurance payments) of $450 per week, which must be made each of the 52 weeks in the year, and an average of 557 class members for the four-year period, Knight calculated the potential liability from the lease related to be approximately $13 million ($450/week x 52 weeks x 557 class members = $13,033,800).[7] *See* Quast Decl. ¶ 4; Notice ¶ 21. This figure assumes that 20% of Knight contractors who do not lease trucks from Knight Sales pay approximately the same amount in lease-related costs to third party truck leasing companies. *See id.*

Plaintiffs contend that the lease-related costs cannot be based on their allegations that they "are adequate representatives of the Classes herein" who seek to have themselves appointed "representatives of all others similarly situated." Complaint ¶ 47; Prayer ¶ a. In support of their argument, Plaintiffs cite to *Leyva v. Medline Industries, Inc.*, 716 F. 3d 510, 514 (9th Cir. 2013), *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F. 2d 225, 233 (7th Cir. 1983), *Blackie v. Barrack*, 424 F. 2d 89 (9th Cir. 1975), none of which concerns removal, and which Plaintiffs admit stand only for the unremarkable proposition that individual variation in damages does not

---

[7] Approximately 20% of this figure consists independent contractors who were not leasing-to-own from Knight. *See* Quast Decl. ¶ 4. Knight Sales' COO, based on his own knowledge of the industry and those with whom Knight competes, estimated that contractors who purchased or leased tractors through companies other than Knight Sales would have approximately the same lease costs. *See* Supp. Quast Decl. ¶ 2. In their Motion to Remand, Plaintiffs argue that this is "utter speculation without any evidentiary support." *See* Mtn. Remand 9:11-27. A declaration based on personal knowledge under penalty of perjury does not constitute "utter speculation." *See, e.g., Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 484-85 (W.D. Pa. 2009) (declaration made "under penalty of perjury and based on personal knowledge" is not "mere speculation"). Moreover, not only is the COO's knowledge based on working at Knight for 18 years, but his position involves knowing the competition. *See* Supp. Quast Decl. ¶ 2.

ITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415 433 1940

1    *preclude class certification.*    *See* Mtn. Remand 5:24-6:4, 6:20-28.    Variation in

2    damages, however, does not mean that a plaintiff's actual experiences cannot be used

3    to *estimate* approximate damages for the class.    Indeed, allegations particular to a

4    plaintiff are often used to estimate the amount in controversy for the class.    *See, e.g.,*

5    *Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144, *7 (N.D. Cal.

6    Apr. 15, 2010) (amount in controversy calculated from plaintiff's allegation that he

7    "regularly and/or consistently worked in excess of 12 hours per day").    As such,

8    Knight should be able to estimate class-wide damages based on Plaintiffs records

9    being representative of the class.

10          Nevertheless, Knight is providing additional evidence for applying

11    Knight's calculations on a class-wide basis.    *See, e.g., Janis v. Health Net, Inc.*, 472

12    Fed. Appx. 533, 534-35 (9th Cir. 2012) ("district court erred as a matter of law ... in

13    refusing to consider [defendant's post-removal] evidence").    In this respect, Knight

14    Sales COO has declared that, on average, during the class period, Knight's

15    independent contractors pay between $300 and $457 in weekly lease payments to

16    lease-to-own a tractor from Knight Sales, in addition to another $95 per week in lease-

17    related insurance, *i.e.*, between $395 and $552 per week.    *See* Supp. Quast Decl. ¶ 7.

18    To be conservative, Knight estimated lease-related costs using the lower figure in

19    2010 of $395 per week.    Based on 28,850 contractor work weeks, the potential class-

20    wide damages based on lease-related costs is *at least* **$11 million** ($395/week x

21    28,850 work weeks = $11,395,750).    Accordingly, regardless of whether the

22    calculations are based on an average of the Plaintiffs' actual lease-related costs, or

23    based on the average of Knight's lowest lease-related costs for contractors, Knight has

24    established over twice the CAFA jurisdictional minimum and, based on this alone,

25    Plaintiff's Motion to Remand should be denied.

26          **3.    There Is At Least $23 Million In Dispute Based On Plaintiff's
                 Claim For Reimbursement Of Fuel Costs.**

27

28          Another expense any independent contractor driver must pay is the cost

ITTLER MENDELSON, P.C
650 California Street
20th Floor
San Francisco, CA
94108 2693
415.433.1940

of fuel.  As detailed in its Notice of Removal, Knight took the average of Plaintiffs' actual fuel costs for the time they worked at Knight as independent contractors, which amounted to $1,138 per week, and then multiplied that amount by 577 putative class members (for the four-year class period) times 50 weeks (assuming two weeks for vacation).  *See* Quast Decl. ¶ 6.  Based on its calculations, Knight estimated that potential reimbursement for fuel costs of the putative class could be approximately $32 million ($1,138 per week x 577 putative class members x 50 weeks = $32,831,300).[8]  *See* Notice ¶ 22.

Plaintiffs challenged this figure on the same grounds as they challenged Knight's calculation of the lease-related costs, *i.e.*, the costs should be based on more than Plaintiffs' allegation that they are representative of a class.  *See* Mtn. Remand 6:5-28.  As discussed above, Knight is fully within its rights to rely on Plaintiffs' average fuel costs in making a rough estimate of the amount in controversy.  *See Lippold*, 2010 U.S. Dist. LEXIS 47144 at *7 (amount in controversy calculated from plaintiff's allegations).

Nevertheless, Knight is supplementing its evidence.  First, based on knowledge of the business, which is confirmed by a review of a sampling of contractor settlements, Plaintiffs' average weekly fuel costs of approximately $1,138 is typical for California independent contractors.  *See* Supp. Quast Decl. ¶ 8.  To double-check its calculations, Knight has recalculated the fuel costs per week based on deductions for the total fuel costs of its California independent contractors in the first quarter of 2014.  *See id.* at ¶ 9.  Specifically, Knight provides its independent contractors with a fuel card that allows them to purchase fuel at a discount.  *See id.*  Of course, contractors are free to purchase fuel anywhere, and so Knight's records only reflect purchases made on Knight fuel cards.  *See id.*  In the first quarter, Knight had

---

[8] In Paragraph 22 of its Notice of Removal, using the same numbers as above, Knight incorrectly calculated the total exposure as $31,693,300 instead of $32,831,300.  *See* Notice ¶ 22.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                          13.          Case No.  5:14-cv-00771-JGB-JC

207 independent contractors who worked a total of 2,319 work weeks. *See id.* Based on Knight's fuel card invoices from its independent contractors in the first quarter, the total fuel costs were $2,369,628, or approximately $1,021 in fuel costs per week. *See id.* Although this figure is slightly lower than the average fuel costs of the three Plaintiffs, the difference can perhaps be explained by the fact that the first quarter of the year is the slowest period in the trucking industry. *See id.*

Based on weekly fuel costs of approximately $1,021, Knight can make the following calculations: (1) In 2010, there were approximately 5,800 contractor work weeks (106 contractors x 50 weeks). Because fuel was approximately 30% lower in 2010, the weekly fuel cost is reduced accordingly to $714. *See* Supp. Quast Decl. ¶ 10. This amount multiplied by 5,800 contractor weeks yields $1,141,200 in fuel costs for 2010. (2) Because fuel costs have remained essentially the same since 2011, fuel costs of $1,021 will be used. *See id.* 451 remaining contractors is multiplied by 50 weeks, which yields 22,250 work weeks, which, multiplied by $1,021 equals $22,717,250 in fuel costs for the period of 2011 to present. Adding the two periods together yields a total potential reimbursement liability of over **$23 million** ($1,141,200 + $22,717,250 = $23,858,450) or almost five times the jurisdictional minimum. Again, based on fuel costs alone, Plaintiffs' Motion to Remand should be denied.

### 4. Plaintiffs' Settlement Demand In Their Other Action Against Knight Values The Same Wage-And-Hour Claims At Over $18 Million.

As previously discussed, Plaintiffs LaCross and Lira filed another class action for the period in which they worked for Knight as employee-drivers, before becoming independent contractors, which action is also pending before this Court. *See Patrick LaCross and Robert Lira v. Knight Transportation, Inc.*, C.D. Cal. Case No. 5:14-cv-0074-JGB-JC ("Employee Action"). *See* Rahm Decl., Exh. A. In the Employee Action, the same causes of action are alleged as in the present independent

JTTLER MENDELSON, P.C
650 California Street
20th Floor
San Francisco, CA
94108 2693
415 433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                          14.          Case No.  5:14-cv-00771-JGB-JC

1   contractor action except that in the present action there are also claims for wage-
2   statement violations and PAGA penalties. *See id.* Although the causes of action are
3   similar, because the class members in the Employee Action cannot claim
4   reimbursement for any lease-related or fuel payments, since they are driving tractors
5   owned by Knight, which also pays their fuel costs, the primary focus of the Employee
6   Action is the wage-and-hour claims. *See id.* In the Employee Action, Plaintiffs
7   LaCross and Lira also allege they worked a total of 16 months as employee drivers.
8   Employee Action ¶¶ 8, 10.

9        Shortly after Knight removed the present action, but before Plaintiffs
10   filed their Motion to Remand, Plaintiffs LaCross and Lira offered to settle their own
11   wage-and-hour claims in the Employee Action for $40,000. *See* Rahm Decl. ¶ 4,
12   Exh. B. In that offer, Plaintiffs LaCross and Lira demanded $40,000 to settle their
13   wage-and-hour claims. Yet, the wage-and-hour claims in the Employee Complaint
14   are the same as those in the present independent contractor action insofar as Plaintiffs
15   contend that they were actually employees misclassified as independent contractors.
16   *See id.* Insofar as $40,000 for 64 weeks of work is a compromise of Plaintiffs' wage-
17   and-hour claims, Plaintiffs have valued those claims at $625 per week of work
18   ($40,000 divided by 64 weeks of work as employee drivers). *See id.* In the present
19   independent contractor action, there are approximately 28,850 worked weeks (577
20   drivers x 50 weeks). At $625 per work week, the value of Plaintiffs wage-and-hour
21   claims in the present action would be approximately **$18 million** (28,850 work weeks
22   x $625 = $18,031,250). *See id.*

23        Plaintiffs' settlement offer alone is thus sufficient to satisfy the amount in
24   controversy requirement. *See Cohn v. Petsmart, Inc.*, 281 F. 3d 837, 840 (9th Cir.
25   2002) ("[a] settlement letter is relevant evidence of the amount in controversy if it
26   appears to reflect a reasonable estimate of plaintiff's claim"). In *Cohn*, the only
27   evidence defendant offered in support of its removal was a letter from plaintiff to
28   defendant offering to settle the case for $100,000. The Ninth Circuit found that this

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                          15.          Case No.  5:14-cv-00771-JGB-JC

evidence was sufficient to satisfy the $75,000 amount in controversy requirement for removal based on diversity jurisdiction. *Id. See also Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits").

Here, Plaintiffs' settlement offer reflects a reasonable estimate of their claims. Unlike the plaintiff in *Cohn*, Plaintiffs LaCross and Lira made their settlement offer after Knight removed the case to federal court and before Plaintiffs filed their Motion to Remand. The timing of Plaintiffs' offer – merely four days before they filed their Motion to Remand – supports the contention that they reasonably believe their wage-and-hour claims to be worth $40,000 for the 64 work weeks they were employees at Knight Transportation. Further, they confirmed the valuation of their claims by sending a follow-up email the day after filing their Motion to Remand indicating the seriousness of their offer and stating that "[i]f Knight is interested in [settling the employee claims] then we should discuss sooner rather than later." *See* Rahm Decl. ¶ 6, Exh. C.

Finally, Knight removed this action based solely on its potential exposure of approximately $34 million with respect to Plaintiffs' reimbursement claims, and it submitted no evidence valuing Plaintiffs' wage-and-hour claims in the Complaint. Yet, Plaintiffs have now submitted clear evidence that, contrary to their protestations in their Motion to Remand that Knight cannot meet the CAFA jurisdictional minimum of $5 million, Plaintiffs themselves actually value the wage-and-hour claims at approximately $18 million – which is in addition to the $34 million in controversy based on the reimbursement claims.[9]

---

[9] Plaintiffs argue in their Motion to Remand that an attorneys' fee award based on a percentage of the recovery is not appropriate for purposes of establishing the jurisdictional minimum of amount in controversy. *See* Mtn. Remand 11:20-12:21. Whatever the legal validity of Plaintiffs' argument, given that Knight has established approximately $52 million in controversy, it will not use potential attorneys' fees to establish the CAFA jurisdictional minimum.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

In summary, there is approximately **$34 million** in controversy based solely on Plaintiffs' reimbursement claims ($11 million in lease-related reimbursements and $23 million in fuel reimbursements). In addition, Plaintiffs themselves have put into controversy approximately **$18 million** for the wage-and-hour claims. At approximately **$52 million** in controversy, Knight has established *over ten times the CAFA jurisdictional amount*. The Motion to Remand should accordingly be denied.

**C.    There Is No Basis For An Award Of Attorneys' Fees To Plaintiffs Because Knight's Removal Is Objectively Reasonable.**

Plaintiffs request this Court to award them the attorneys' fees they expended in filing the present Motion to Remand. *See* Mtn. Remand 12:22-13:26. Yet, "[a] court may order payment of just costs and expenses, including attorney's fees incurred as a result of removal 'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *MHS-Rossmore, LLC v. Lopez*, 2008 U.S. Dist. LEXIS 53131 (C.D. Cal. Jun. 5, 2008) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, (2005)). In this regard, Knight has established approximately $52 million in controversy, in part through admissions by Plaintiffs that would indicate that they, themselves, value the action at far more than the CAFA jurisdictional minimum. Thus, not only is Knight's removal objectively reasonable, Plaintiffs' request for attorneys' fees is manifestly in bad faith. Furthermore, Plaintiffs failed to properly meet and confer about this Motion and their request for attorneys' fees as required by Local Rule 7-3. *See* Rahm Decl. ¶ 5. Plaintiffs' request for attorneys' fees is accordingly baseless.

**D.    There Is Neither A Factual Nor A Legal Basis For Plaintiffs' Request To Remand This Action *Sua Sponte*.**

Plaintiffs request the Court to "*sua sponte*" remand this action. *See* Mtn. Remand 14:1-20. First, the request is meaningless insofar as Plaintiffs have already filed the present Motion to Remand and, as such, any remand would not be "*sua*

ITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108 2693
415 433 1940

KNIGHT'S OPP TO MOTION TO REMAND                17.             Case No.  5:14-cv-00771-JGB-JC

*sponte*." Second, even if Plaintiffs' request made sense, Plaintiffs' entire argument for *sua sponte* remand is based entirely on one, inapposite Eastern District of Michigan case, *Garza v. Bettcher Industries, Inc.*, 752 F. Supp. 753 (E.D. Mich. 1990), where the district court reversed its own *sua sponte* remand order after the defendant filed a motion for reconsideration. *Id.* at 764. In particular, the *Garza* court conceded that it had applied the wrong standard (legal certainty) instead of the correct standard (preponderance of the evidence) when it *sua sponte* ordered remand. *Id.* at 756. Plaintiffs' request is thus not only meaningless but without any legal basis.

## IV.   CONCLUSION

Knight removed this action based on evidence from which it conservatively estimated that the amount in controversy is several times the CAFA jurisdictional minimum based on Plaintiffs' reimbursement claims alone. In response to Plaintiffs' Motion to Remand, Knight further clarified the basis for its removal, and provided additional calculations in support of the amount in controversy in potential reimbursements alone being over **$34 million**. Moreover, Plaintiffs' own valuation of their wage-and-hour claims at **$18 million** further demonstrates potential liability several times required by CAFA. The Motion to Remand should be denied.

Dated:   June 2, 2014

/s
RICHARD H. RAHM
JAMES E. HART
THOMAS J. WHITESIDE
CARLY NESE
LITTLER MENDELSON, P.C.

Attorneys for Defendants
KNIGHT TRANSPORTATION, INC.
and KNIGHT TRUCK AND TRAILER
SALES, LLC

Firmwide:127159945.6 058898.1023

LITTLER MENDELSON, P.C
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

KNIGHT'S OPP TO MOTION
TO REMAND                          18.          Case No.  5:14-cv-00771-JGB-JC