1  RICHARD H. RAHM, Bar No. 130728
   rrahm@littler.com
2  LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
3  San Francisco, CA 94108.2693
   T: 415.433.1940 / F: 415.399.8490
4
   JAMES E. HART, Bar No. 194168
5  jhart@littler.com
   THOMAS J. WHITESIDE, Bar No. 259505
6  twhiteside@littler.com
   LITTLER MENDELSON, P.C.
7  2050 Main Street, Suite 900
   Irvine, CA 92614
8  T: 949.705.3000 / F: 949.724.1201

9  CARLY NESE, Bar No. 265342
   cnese@littler.com
10 LITTLER MENDELSON, P.C.
   2049 Century Park East, 5th Floor
11 Los Angeles, CA 90067.3107
   T: 310.553.0308 / F: 310.553.5583
12
   Attorneys for Defendants
13 KNIGHT TRANSPORTATION, INC. and
   KNIGHT TRUCK AND TRAILER SALES, LLC
14
15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17

18 | PATRICK LACROSS, ROBERT        | Case No.  5:14-cv-00771-JGB-JC
   | LIRA and MATTHEW LOFTON, on    |
19 | behalf of themselves and all other | **SUPPLEMENTAL**
   | similarly situated,            | **DECLARATION OF KEVIN**
20 |                                | **QUAST IN SUPPORT OF**
   |              Plaintiffs,        | **KNIGHT'S OPPOSITION TO**
21 |                                | **PLAINTIFFS' MOTION TO**
   | ·v.                            | **REMAND**
22 |                                |
   | KNIGHT TRANSPORTATION, INC.,   | Date:  July 14, 2014
23 | an Arizona Corporation; KNIGHT | Time:  9:00 a.m.
   | TRUCK and TRAILER SALES, LLC,  | Courtroom: 1
24 | an Arizona Limited Liability Company; |
   | and DOES 1 through 100, inclusive, | Complaint Filed:  March 3, 2014
25 |                                |
   |              Defendants.       |
26
27
28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND                    Case No.  5:14-cv-00771-JGB-JC

I, Kevin Quast, do hereby declare and state as follows:

1.      I am currently employed by Defendant Knight Transportation, Inc. ("Knight Transportation") as its Chief Operations Officer ("COO") in Phoenix, Arizona, and my duties include overseeing the operations of Defendant Knight Truck and Trailer Sales, LLC ("Knight Sales"). I have personal knowledge of the facts set forth in this declaration, or I have knowledge of such facts based on my review of the business records and files of Knight Transportation and Knight Sales (collectively, "Knight"). If called as a witness, I could and would testify competently to such facts contained herein.

2.      I have been employed by Knight since 1996, first working as a driver-recruiter, then as a human resources manager, and then as a Service Center Manager, General Manager and Business Unit Leader, after which I was promoted to my current position. I am very familiar with Knight Sales' pricing policies with respect to leasing-to-own equipment (tractors) to independent contractors, and I am also familiar with Knight Sales' competition. While I am not aware of the exact details of other companies' lease-to-own programs, based on my knowledge of the industry, Knight Sales' lease-to-own program is competitive with other motor carriers, and it is certainly less expensive that leasing companies not associated with motor carriers.

3.      Knight contracts with independent contractor drivers who drive trucks for other trucking companies or were employee-drivers at Knight that opted to become independent contractor drivers. Either group may opt to lease-to-own their own tractor through Knight Sales. Based on Plaintiffs' personnel files, Plaintiffs Patrick LaCross and Robert Lira are former Knight employee-drivers who opted to become independent contractor drivers and chose to lease-to-own tractors from Knight Sales. Plaintiff Matthew Lofton, on the other hand, was not employed by Knight Transportation before he opted to lease-to-own a tractor from Knight Sales.

4.      In my original declaration in support of Knight's removal of this action to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND

1.

Case No.  5:14-cv-00771-JGB-JC

federal court, I estimated that Knight had 116 California-based independent contractors in 2010, 135 in 2011, 118 in 2012, and 188 in 2013, or a total of approximately 557 independent contractor drivers in the four-year putative class period. These numbers were approximate insofar as I calculated them by adding together the number of independent contractors our records showed working each month of a particular year, and then dividing that number by 12 months, such that, for example, 116 contractors in 2010 means, on average, there were 116 contractors working for Knight each month of 2010. As such, it would be more correct to state that 116 independent contractors, on average, worked throughout 2010, 135 throughout 2011, 118 throughout 2012, and 188 throughout 2013. For the four-year period between 2010 and 2013, there would thus be 557 contractor drivers who worked 12 months or 50 work weeks (assuming two weeks for vacation), yielding approximately 28,850 contractor work weeks.

5.     As a result of Plaintiffs' filing a Motion to Remand in this action, in which my calculations were challenged, I rechecked my calculations. In calculating the average number of contractor drivers for each year, we calculated the average number of contractor drivers working each month at each Knight facility, and then added the averages together to obtain the average number of drivers working each month for the year. It was discovered that for the first three years of the class period we mistakenly averaged two facilities together, which skewed down the average number of drivers. As such, the more accurate average number of contractors working each month throughout each year was 155 (not 116) in 2010, 184 (not 135) and 173 (not 118) in 2011. For 2013, because one of the two facilities that had mistakenly been averaged together had been closed down, the original estimate of 188 contractors working throughout that year is correct. The average number of contractors over the four-year period who worked 12 months is thus actually 700 – not 557.

6.     All independent contractors who contract with Knight sign an Independent Contractor Operating Agreement, and all contractors who are leasing-to-own from

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108-2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND          2.          Case No. 5:14-cv-00771-JGB-JC

Knight Sales also sign a "Tractor Lease Agreement." The leases are governed by federal motor carrier regulations. *See* 49 C.F.R. Part 376. Each lease is based on a term sheet listing, among other things, the "Tractor Information," the "Insurance Information," and the "Loan/Financial Information." Attached to this declaration as Exhibit A are the term sheets of Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton.

7.     Knight Sales primarily leases late-model (2-4 years old) Volvo, Peterbilt and International tractors, and the weekly lease payments for Knight's lease-to-own contractors over the four-year class period range approximately as follows: (1) 2010: $300 to $375; (2) 2011: $330 to $395; (3) 2012: $375 to $457; (4) 2013: $350 to $375. As such, Plaintiffs' weekly lease payments of $375 (LaCross), $330 (Lira), and $360 (Lofton), would be in the range typical of the class. Insurance payments related to leases during the class period are, on average, approximately $95 per week. Consequently, during the class period, Knight's lease-to-own contractors could expect to pay between $395 and $552 a week for lease-related insurance costs. Again, Plaintiffs' weekly payments of $473 (LaCross), $410 (Lira), and $466 (Lofton), would appear to be typical during the class period. Furthermore, in addition to lease insurance-related costs, independent contractors must also pay, on average, $40 per week for license plates and $20 per week to lease a Qualcomm unit for communicating with Knight's dispatch.

8.     Every week a Knight independent contractor receives a "settlement" sheet that details how much the contractor is being paid, and what expenses are being deducted. Perhaps the most significant deduction is for fuel. Knight provides its independent contractors with a fuel card that allows the driver to buy fuel at a discount. How much fuel a driver uses will of course depend on how much he or she drives. For instance, as detailed in its removal papers, Plaintiff LaCross paid approximately $1,310 per week in fuel; Plaintiff Lira paid approximately $704 per week; and Plaintiff Lofton paid $1,400. The average fuel costs for the three Plaintiffs was thus $1,138 per week.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND     3.     Case No.  5:14-cv-00771-JGB-JC

Based on my knowledge of our business, and the numerous settlement sheets I have seen over the years, Plaintiffs' average weekly fuel costs would appear to be roughly typical of the weekly fuel costs of Knight's California-based independent contractors during the four-year class period.

9.      To double check the $1,138 figure, I had the fuel invoices tallied for all California-based independent contractors for the first quarter of 2014 (January to March).  Of course, contractors are free to purchase fuel anywhere, and so Knight's records only reflect purchases made on Knight fuel cards.  The total fuel costs for California independent contractors amounted to $2,369,628 in the first quarter of 2014. For the same period, I had the total number of California-based independent contractors who were working for Knight calculated, which was 207 drivers.  I then had the total number of work weeks counted for the same period, which was 2,319 work weeks. Dividing 2,319 work weeks into $2,369,628 total fuel costs yield weekly fuel costs of approximately $1,021.  Although this figure is slightly lower than the average fuel costs of the three Plaintiffs, the difference can perhaps be explained by the fact that the first quarter of the year is the slowest period in the trucking industry.

10.      Based on the U.S. Department of Energy, there was approximately a 30% jump in diesel fuel between 2010 to 2011, after which, the price of diesel fuel remained, on average, the same through 2014.

11.      Based on my review of records that have been maintained in the ordinary course of business, in the first quarter of 2014 (January through March), Knight had 207 independent contractors who worked a total of 2,319 work weeks.

///

///

///

///

///

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND                    4.                    Case No.  5:14-cv-00771-JGB-JC

///

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed on June 2, 2014, at Phoenix, Arizona.


KEVIN QUAST

Firmwide:127246819.2 058898.1023

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA
94108.2693
415.433.1940

SUPP DEC OF KEVIN QUAST
ISO DEFS' OPP TO REMAND                5.               Case No. 5:14-cv-00771-JGB-JC