James M. Trush, Esq. – SBN 140088
**Trush Law Office, APC**
695 Town Center Drive, Suite 700
Costa Mesa, CA  92626-7187
Telephone:  (714) 384-6390
Facsimile:  (714) 384-6391
Email:  jim@trushlaw.com

Todd H. Harrison, Esq. – SBN 230542
Brennan S. Kahn, Esq. – SBN 259548
**Perona Langer Beck Serbin Mendoza & Harrison APC**
300 E. San Antonio Drive
Long Beach, CA  90807
Telephone: (562) 426-6155
Facsimile: (562) 490-9823
Email: toddharrison@plblaw.com

Attorneys for Plaintiffs, PATRICK LaCROSS, ROBERT LIRA
and MATTHEW LOFTON, on behalf of themselves and all
others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| PATRICK LaCROSS, ROBERT LIRA and MATTHEW LOFTON, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>KNIGHT TRANSPORTATION, INC., an Arizona corporation; KNIGHT TRUCK and TRAILER SALES, LLC, an Arizona Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. 5:14-cv-00771-JGB (JCx)<br><br>**PLAINTIFFS' REPLY TO KNIGHT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date: July 14, 2014<br>Time: 9:00 a.m.<br>Dept: Courtroom 1 (Riverside)<br>        Hon. Jesus G. Bernal, Judge<br><br>Action Filed:  04/18/14 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................ 1

II.     THE SUPPLEMENTAL DECLARATION OF KEVIN QUAST IS
        BASED ON MERE SPECULATION, CONJECTURE AND
        ASSUMPTIONS AND IS NOT SUFFICIENT TO SATISFY
        DEFENDANTS' BURDEN OF PROOF.................................... 2

III.    THE DECLARATION OF COUNSEL RICHARD H. RAHM FAILS
        TO SATISFY DEFENDANTS' EVIDENTIARY BURDEN ............ 8

IV.     CONCLUSION ................................................................ 11

i

# TABLE OF AUTHORITIES

**Cases**

*Calloway v. Affiliated Computer Servs., Inc.* (E.D. Cal. 2014) 2014 U.S. Dist. LEXIS 246, 36
2014 W.L. 791 ........................................................................................................2

*Carag v. Barnes & Noble, Inc.* (C.D. Cal. May 30, 2014) 2014 U.S. Dist. LEXIS 74215 ..........1

*Emmons v. Quest Diagnostics Clinical Labs, Inc.* (E.D. Cal. 2014) 2014 U.S. Dist. LEXIS
18024, 2014 W.L. 584393 ......................................................................................2

*Garibay v. Archstone Communities LLC* (9th Cir. 2013) 539 F. App'x 763................................1

*Roth v. Comerica Bank* (C.D. Cal. 2010) F. Supp. 2d 1107 .......................................................4

*Weston v. Helmerich & Payne Inter. Drilling Co.* (E.D. Cal. 2013) 2013 U.S. Dist. LEXIS
132930, 2013 WL 5274283 ....................................................................................2

**Statutes**

Labor Code § 203....................................................................................................................3

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

## I.     INTRODUCTION

Apparently recognizing that the 6-paragraph declaration of Kevin Quast, Defendants' Chief Operations Officer, was woefully inadequate to meet their burden of proof for removal of this action, Defendants offer the supplemental declaration of Mr. Quast and the declaration of Defendants' counsel, Richard H. Rahm. Rather than fortify their evidence, these declarations further expose Defendants almost complete reliance on "speculative and self-serving assumptions about key unknown variables." *Carag v. Barnes & Noble Booksellers, Inc.* (C.D. Cal. May 30, 2014) 2014 U.S. Dist. LEXIS 74215* 9-10 citing *Garibay v. Archstone Communities LLC* (9th Cir. 2013) 539 F. App'x 763, 764[1].

In *Carag*, defendant relied "on speculative and self-serving assumptions about key unknown variables" in their meal and rest break damages calculations, because defendant relied on "each class member missing fifteen meal breaks per year and suffering three violations of the minimum wage laws a year." However, defendants had failed to provide any "substantive evidence" in support of their assumptions, including why fifteen meal breaks or three minimum wage violations "should be presumed." Id. at 9-10. In *Carag*, defendant's overtime damages calculations were also flawed because "there was no logical basis for using the number of overtime hours *paid* by Defendants to calculate the amount of *unpaid* overtime in controversy here. Id. at *11.

In *Carag,* the court also concluded that because there was "insufficient evidence to establish the amount in controversy upon which attorney's fees would be based," defendant's request that the court consider likely attorney's fees in determining the amount in controversy was unpersuasive. Id. at *11.

///

///

---

[1] Plaintiff only refers to *Garibay v. Archstone Communities LLC* (9th Cir. 2013) 539 F. App'x 763, as it is cited by the published district court opinion in *Carag, supra,* 2014 U.S. Dist. LEXIS 74215.

1

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

## II.  THE SUPPLEMENTAL DECLARATION OF KEVIN QUAST IS BASED ON MERE SPECULATION, CONJECTURE AND ASSUMPTIONS AND IS NOT SUFFICIENT TO SATISFY DEFENDANTS' BURDEN OF PROOF

"[A] district court may not find a defendant has met the preponderance of the evidence standard based on defendant's mere speculation and conjecture. *Calloway v. Affiliated Computer Servs., Inc.* (E.D. Cal. 2014) 2014 U.S. Dist. LEXIS 24636, 2014 WL 791546, at *7 citing *Garibay, supra,* 539 F. App'x at 764.

"Although some courts in this district have accepted tenuous assumptions in the past, "the Ninth Circuit and Courts in this district have recently rejected" assumptions in wage and hours matters "unsupported by the proper evidence." *Carag, supra,* 2014 U.S. Dist. LEXIS 74215* 9 citing *Emmons v. Quest Diagnostics Clinical Labs, Inc.* (E.D. Cal. 2014) 2014 U.S. Dist. LEXIS 18024, 2014 WL 584393 *7-8, *Garibay, supra,*  539 F. App'x at 764, *Weston v. Helmerich & Payne Inter. Drilling Co.* (E.D. Cal. 2013) 2013 U.S. Dist. LEXIS 132930, 2013 WL 5274283 at *3-6.

In *Carag,* plaintiff's state court action complaint alleged unpaid overtime, unpaid meal period premiums, unpaid rest period premiums, unpaid minimum wages, final wages not timely paid, wages not timely paid during employment, non-compliant wage statements, and failure to keep requisite payroll records in violation of the California Labor Code, as well as the Unfair Competition Law. *Carag, supra,* 2014 U.S. Dist. LEXIS at *2.  Defendant removed the action under CAFA, basing its removal on a declaration by the Barnes & Noble Director of Human Resources in which she stated that "based on a search of the relevant records she discovered that at least 3,666 individuals worked as hourly or non-exempt employees at Barnes & Noble since November 2013." Id. at *3-4.  In its opposition to the motion to remand, Defendant filed a supplemental declaration in

which Defendant provided "further explanation of their calculations to support their claim that the amount in controversy meets the jurisdictional minimum for removal." Id. at *8.  The supplemental declaration stated that the Barnes & Noble Director of Human Resources Administration had "examined records for the period from November 27, 2009, through March 1, 2014, and that she determined Barnes & Noble had 2,804 current and 7,666 former non-exempt California employees, totaling 10,470." Id. at *8.  She further asserted that "The lowest starting wage for the class members was $8 per hour, the average amount of overtime paid to all California hourly employees during the period was 1.35 hours and Plaintiff worked an average of 1.06 overtime hours in the 100 weeks from November 27, 2009, to present."   Id. at *8.   The declaration also described "certain payment procedures used by Defendants." Id.

The defendant in *Carag* contended that "because Plaintiff has alleged the class members have not been properly paid, the full thirty days may be used for each of the putative class members" in calculating penalties under Labor Code § 203.  Id. at 8-9.  The court in *Carag* observed that "the defendants in *Garibay* similarly assumed that each employee would be entitled to the maximum statutory penalty" and that "the court rejected the assertion because it was not supported by any evidence." Id.

The fatal assumption made by Defendants in this case is quite similar. Defendants claim that, because Plaintiffs allege they are "representative" of the putative class members, that the "average" lease-related costs and the average "fuel costs" for the three named plaintiffs will mirror and be identical to every one of the supposed 557 class members.  Although Mr. Quast, in his supplemental declaration, based again on speculation, conjecture and assumptions, estimates there are 700, not 557, class members, this fatal assumption, which is foundational to Defendants' calculations, remains the same.

"When applying the preponderance of the evidence standard to California

3

<u>Labor Code</u> claims, many California District Courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture. *Carag, supra*, 2014 U.S. Dist. LEXIS 74215* 12 citing *Roth v. Comerica Bank* (C.D. Cal. 2010) 799 F. Supp. 2d 1107, 1127.   The speculation, conjecture and assumptions are rampant, and in many instances, more exaggerated in the supplemental declaration by Defendants' COO, Kevin Quast.

In paragraph 2 of his supplemental declaration, he admits that he is "not aware of the exact details of other companies' lease-to-own programs."   This admission makes it even more apparent that paragraph 4 of his original declaration, in which his estimates include 20% of the class members who purchased or leased their tractors from companies that are "not affiliated with either Knight Sales or Knight Transportation" is mere speculation and conjecture.

In paragraph 4 of his supplemental declaration, Mr. Quast admits that he had "estimated" that Knight had 116 California-based independent contractors in 2010, 135 in 2011, 118 in 2012, and 188 in 2013, for a total of *approximately* 557.   He admits that "these numbers were *approximate*."   Mr. Quast attempts to explain the speculative estimate which he calculated "by adding together the number of independent contractors our records showed each month of a particular year, and then dividing that number by 12 months, such that, for example, 116 contractors in 2010 means, on average, there were 116 contractors working for Knight each month of 2010."   However, there is no evidence about how many independent contractors actually worked each month.   There is no substantive evidence about whether "independent contractors our records showed working" means that a particular independent contractor worked for <u>one day</u> during that particular month or whether they worked <u>7 days a week</u> in that particular month, or whether they worked <u>5 days a week</u> in that particular month, or some other portion of a particular month.   Since the putative class members are designated by

4

Defendants as "independent contractors" they have no set work schedule.   Mr. Quast provides no actual substantive evidence whatsoever to substantiate how many days or how many weeks out of any particular month any particular class member works.   The supposed "explanation" in paragraph 4 does not provide any additional "substantive evidence" and is woefully inadequate to meet Defendants' burden of proof in its calculation of the number 557 class members.

Nevertheless, as discussed above, paragraph 4 in Mr. Quast's supplemental declaration does nothing to address the fatal flaw that Defendant uses the average lease-related costs and average fuel costs for the three Plaintiffs and applies those numbers to all 557 (or 700) class members without any evidence whatsoever based on the contention that since they are alleged to be "representative" of the class members, that their damages must be identical.

As to paragraph 5 in the supplemental declaration of Kevin Quast, Defendants' COO, he should be commended for admitting his mistake.   However, the explanation doesn't cure the fatal flaws which exist.   First, whether he "mistakenly averaged two facilities together, which skewed down the average number of drivers" as he explains, so that the number of class members is actually 700, not 557, does not cure the defects described in connection with paragraph 4. Whether he came up with 700 or 557 class members, still there is no substantive evidence to establish whether any of those class members worked one day a week, five days a week, seven days a week, only one week out of the month, or any subset of an innumerable list of variations.   Because the class members are designated by Defendants as "independent contractors," they have no set work schedule and Defendants have made no effort to establish that.   The statement, "I calculated them by adding together the number of independent contractors our records showed working each month of a particular year" is far too vague and generalized.   There is no explanation of how many days or how many weeks a particular class member worked.   Mr. Quast also states that it was discovered for

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

the first three years of the class period "we mistakenly averaged two facilities together, which skewed down the average number of drivers," and because of that the "more accurate" numbers increased in each year except 2013 resulting in "700 – not 557" class members.  There is no evidence whatsoever of why averaging two facilities together would "skew down the average number of drivers."  He also states for 2013 that "because one of the two facilities that had mistakenly been averaged together had been closed down," the original estimate of 188 was correct.  He provides no evidence of when it was closed down, or why that affected the estimate.  Defendant fails to provide any evidence to support any of these vague conclusions.

Paragraph 6 describes the "term sheet listing" which includes tractor information, insurance information, and loan/financial information for each of the three plaintiffs and attaches the "term sheets" for each of them.  These three "term sheets" do nothing to assist Defendants in satisfying their burden of proof.  In fact, the "term sheets" demonstrate that the financial terms each of the three plaintiffs have for the purchase of their tractors is different.  This paragraph does nothing to cure the fatal flaws in the original declaration by Mr. Quast.

Paragraph 7 does not cure the fatal flaws that exist either.  Paragraph 7 appears to be a further explanation as to why the average of "approximately $450 per week for lease-related costs" relied on in his calculation is "typical."  Mr. Quast states that the weekly lease payments for contractors over the class period "range approximately" in certain dollar amounts.  For example, they "range approximately" in 2010 from $300 to $375.  Mr. Quast does not say whether one class member had a lease payment of $300 and all others had a lease payment of $375, or vice versa, or any other combination of numbers in that range.  The same vague approximations exist for all of the years he describes.

Paragraph 8 is an attempt to further justify the average fuel costs of $1,138 per week used in Defendants' calculation.  This explanation does not comprise

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

"substantive evidence," rather it actually exposes the assumptions and conjecture relied on. Mr. Quast, in paragraph 8, states "how much fuel a driver uses will of course depend on how much he or she drives." There is absolutely no "substantive evidence" of how much the class members (whether there are 557 or 700) actually drive. Applying $1,138 per week for fuel to every class member is sheer speculation and conjecture.

Paragraph 9 is another attempt to justify the $1,138 per week for fuel used in Defendants' calculation. However, it does not comprise "substantive evidence" because there is no explanation as to how many days or weeks within that time period a particular class member actually drove. Mr. Quast states there were 207 drivers "who were working for Knight" during the 3-month period. He does not provide any evidence of how many days or weeks any of the drivers actually worked during that time period. For example, if all 207 only worked for one week each during each of those three months, they would still be counted as working for the 3-month period and Defendant would come up with 2,319 work weeks when, in fact, there were only 207 drivers that worked one week each month for three months, which is 621 work weeks. There is no evidence or explanation as to why the number 621 work weeks should not be used instead of the number 2,319 work weeks. Defendants' calculation fatally assumes that each of the independent contractors "working for Knight" during that three-month time period worked the entire three-month time period. This is similar to the erroneous assumptions made by the defendants and rejected by the Court in *Carag*, who relied on "each class member missing fifteen meal breaks per year and suffering three violations of the minimum wage laws per year." Id. at *10.

Paragraph 10 completely lacks any legitimate foundation. Mr. Quast does not provide a citation to the supposed "U.S. Department of Energy" information that he refers to. The information in paragraph 10 is so general and vague, it is far from "substantial evidence." Moreover, this paragraph doesn't really add

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

1   anything to Defendants' calculation of damages and does not, in any way, cure the

2   fatal defects described in the motion to remand.

3       Paragraph 11 suffers from the same defects as paragraph 9 and merely

4   reiterates a part of the explanation contained in paragraph 9.

5   **III.  THE DECLARATION OF COUNSEL RICHARD H. RAHM FAILS**

6       **TO SATISFY DEFENDANTS' EVIDENTIARY BURDEN**

7       In paragraphs 2 through 4 and 6 of his declaration, counsel Richard H.

8   Rahm makes the argument that "the wage-and-hour claims in the Employee

9   Complaint are the same as those in the present independent contractor action

10  insofar as Plaintiffs contend that they were actually employees misclassified as

11  independent contractors." (Rahm decl., ¶4).  The Employee Complaint refers to a

12  different lawsuit entitled *LaCross, et al. v. Knight Transportation, Inc.*, C.D. Cal.

13  Case No. 5:15-cv-0074-JGB-JC, removed by Defendant to this court on April 18,

14  2014 ("Employee Action").  Mr. Rahm then relies upon a settlement demand on

15  behalf of Plaintiffs Patrick LaCross and Robert Lira in the Employee Action to

16  justify a calculation of $18 million dollars in controversy in this action.  Mr.

17  Rahm's simplistic and speculative calculation is fatally flawed for several reasons.

18      The Employee Action defines the classes as employees of Knight holding

19  the position of Company Driver "that were paid a specified amount per mile" and

20  "that were paid a portion of the amount paid by the customer" (Employee

21  Complaint, ¶ 31, Ex. A to Rahm decl.).  The Employee Action also alleges that

22  Defendants failed to pay Plaintiffs and members of the classes "separate hourly

23  compensation for non-driving tasks, including but not limited to, inspecting the

24  vehicle and load, loading the vehicle, unloading the vehicle, refueling, repairs,

25  maintenance, paperwork, mandatory meetings, changing light bulbs on the truck,

26  waiting for the truck to be repaired or maintained, hooking up the truck trailer,

27  waiting for the trailer to be loaded, waiting for the customer to unload the vehicle

28  at the destination," and that based on this method of compensation, Defendants

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

1  failed to pay Plaintiffs and the classes "regular and/or minimum wages for all

2  hours worked and/or overtime wages for all overtime hours worked." (Employee

3  Complaint, ¶ 49, Ex. A to Rahm decl.). The class definition in this action by

4  independent contractors defines the classes as persons that entered into an

5  independent contractor operating agreement and who were classified as an

6  independent contractor (Plaintiffs' complaint in this action at ¶ 43). Likewise, this

7  action does not include any factual allegations that Plaintiffs and the class

8  members were not paid "separate hourly compensation for non-driving tasks."

9       In the cause of action for failure to reimburse business expenses in the

10  Employee Action, Plaintiffs allege that they were not reimbursed for "cell phone

11  costs and charges, and other costs and expenses." (Employee Complaint, Ex. A to

12  Rahm decl.). However, in this action, the cause of action for failure to fully

13  compensate for business expenses alleges that Plaintiffs and members of the

14  classes have been required to personally incur expenses for "all costs and

15  expenses of owning and/or leasing, repairing, maintaining and fueling the trucks

16  and vehicles they drove in the discharge of their employment duties, all without

17  reimbursement from the Defendants." (Plaintiffs' complaint in this action at ¶

18  115).

19       The substantive allegations upon which the Employee Action is based are

20  substantially different from the allegations in this case, irrespective of the

21  preliminary issue of misclassification that also exists in this action. Here, there is

22  "no logical basis" for using a settlement demand in the Employee Action as a

23  basis for an amount in controversy calculation in this action which alleges

24  misclassification and which is based upon substantively different factual

25  allegations. See, *Carag, supra*, 2014 U.S. Dist. LEXIS 74215 at *11. In *Carag,*

26  *supra*, the District Court determined "there is no logical basis for using the

27  number of overtime hours *paid* by Defendants to calculate the amount of *unpaid*

28  overtime in controversy here." Id. Likewise, here there is no logical basis for

9

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

1  using a settlement demand in the Employee Action which is based upon different

2  factual allegations.

3      The amount in controversy calculation in paragraph 4 of Mr. Rahm's

4  declaration relies upon the number of 577 class members and suffers from the

5  same problems that are described in connection with the declaration of Kevin

6  Quast, who came up with that number.  In addition, Mr. Rahm's calculation uses

7  the number "28,850 worked weeks," which is based upon "577 drivers x 50

8  weeks,"  The selection of "50 weeks" is complete speculation and conjecture.  Mr.

9  Rahm provides no factual basis whatsoever to substantiate that these independent

10  contractors worked 50 weeks in each calendar year.  Rather, their designation by

11  Defendants as "independent contractors" by definition means that they have no set

12  work week and any of them could choose to work less than 50 weeks per calendar

13  year.

14      In paragraph 7 of his declaration, Mr. Rahm merely points out that the

15  *Carson* court "never ruled on this argument" referring to one of the primary

16  rationales provided by the parties in their preliminary approval motion pending

17  before the *Carson* court as a reason to justify the very modest settlement in that

18  action.  However, Mr. Rahm's explanation that the argument had never been ruled

19  on does not in any way undermine whether this court should consider this in the

20  motion to remand.  For example, if the class period in this action was contended to

21  be six months rather than a period of years, certainly that would be relevant for

22  this court to consider in evaluating whether Defendants had satisfied their burden

23  of proof to establish the amount in controversy.  That is the case, even if the

24  length of the statute of limitations was subject to dispute and had not yet been

25  ruled upon.  The parties in the *Carson* action have presented a motion for

26  preliminary approval to the Tulare Superior Court and a basis for requesting that

27  approval is that only mileage driven in California is recoverable.  However, in the

28  amount in controversy by Defendants in their notice of removal, Defendant have

10

made absolutely no effort to quantify the number of miles driven in California as opposed to outside of California.  This renders Defendants' calculation of the amount in controversy "speculative" and based on "self-serving assumptions about key unknown variables."  *Carag, supra*, 2014 U.S. Dist. LEXIS 74215 at *9-10, citing *Garibay*, 539 F. App'x at 764.

## IV.   CONCLUSION

Based on the foregoing and Plaintiffs' motion to remand, this action should be remanded to State Court.

DATED:  June 9, 2014

TRUSH LAW OFFICE, APC
PERONA, LANGER, BECK, SERBIN,
MENDOZA & HARRISON, APC


By:    _____
James M. Trush, Esq.
Brennan S. Kahn, Esq.
Attorney for Plaintiffs, PATRICK
LaCROSS; ROBERT LIRA and
MATTHEW LOFTON, on behalf of
themselves and all others similarly situated

Plaintiffs' Reply To Knight's Opposition To Plaintiffs' Motion To Remand

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 695 Town Center Drive, Suite 700, Costa Mesa, California. On June 9, 2014, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED:    PLAINTIFFS' REPLY TO KNIGHT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

SERVED UPON:    **SEE ATTACHED SERVICE LIST**

☒    (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of **Trush Law Office, APC** for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is placed for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit;

☐    (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by **DDS Attorney Service** to receive documents to be delivered on the same date. A proof of service signed by the authorized courier is available upon request.

☐    (BY FEDERAL EXPRESS) I am readily familiar with the practice of **Trush Law Office, APC** for the collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery)

☐    (BY FACSIMILE) The above-referenced document was transmitted by facsimile transmission and the transmission was reported as complete and without error. Pursuant to C.R.C. 2009(I), I caused the transmitting facsimile machine to issue properly a transmission report, a copy of which is maintained at **Trush Law Office, APC**, and is available upon request.

☐    (BY ELECTRONIC MAIL) The above-referenced document was transmitted by electronic mail transmission to the electronic mail address last provided me by the person(s) shown on the accompanying Service List, and I hereby attest that no information was received by sender indicating that the electronic mail transmission was undeliverable.

☒    (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the above is true and correct and that I took said action(s) at the direction of a licensed attorney authorized to practice before the Federal Courts.

Executed on June 9, 2014, at Costa Mesa, California.

*Julie Kennedy*

JULIE KENNEDY

Proof of Service, Pg. 1

SERVICE LIST
LaCross v. Knight Transportation - IC
USDC/Central/Case No. EDCV18-00771 JGB (JCx)

Richard H. Rahm, Esq.                                    **Attorneys for Defendant**: KNIGHT
Littler Mendelson, P.C.                                  TRANSPORTATION, INC.
650 California Street, 20th Floor
San Francisco, CA  94108-2693
rrahm@littler.com
T: 415-433-1940
F: 415-399-8490

James E. Hart, Esq./Thomas J. Whiteside, Esq.
Littler Mendelson, P.C.
2050 Main Street, Suite 900
Irvine, CA  92614
jhart@littler.com
twhiteside@littler.com
T: 949-705-3000
F: 949-724-1201

Carly Nese, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
cnese@littler.com
T: 310-553-0308
F: 310-553-5583

Todd H. Harrison, Esq. – SBN 230542              **Associate Counsel for Plaintiffs**
Brennan S. Kahn, Esq. – SBN 259548
Perona Langer Beck Serbin Mendoza &
Harrison APC
300 E. San Antonio Drive
Long Beach, CA  90807
Telephone: (562) 426-6155
Facsimile:  (562) 490-9823
Email: toddharrison@plblaw.com

rev. 04/23/14 jk