# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-00771 JGB (JCx)** | Date | July 18, 2014 |
|---|---|---|---|
| Title | *Patrick LaCross, et al. v. Knight Transportation, Inc., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):  Attorney(s) Present for Defendant(s):

None Present                None Present

**Proceedings:**   **Order (1) GRANTING Plaintiffs' Motion to Remand (Doc. No. 13) and (2) REMANDING this action to the California Superior Court for the County of San Bernardino**

Before the Court is a Motion to Remand filed by Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton on behalf of themselves and all others similarly situated ("Plaintiffs"). ("Motion" or "Mot.," Doc. No. 13.)  The Court vacated the hearing in this matter on July 9, 2014.  (Doc. No. 26.)  After considering the papers timely filed in support of and in opposition to the motion the Court GRANTS the Motion and REMANDS this action to the California Superior Court for the County of San Bernardino.

## I.   BACKGROUND

### A.   Factual History

Plaintiffs are truck drivers or "Owner Operators" who entered into "Independent Contractor Operating Agreements" with Defendant Knight Transportation, Inc. and may have also entered into equipment lease agreements with Defendant Knight Truck and Trailer Sales, LLC (collectively, "Knight").  (Declaration of Carly Nese in Support of Removal, Exh. 1 ("Complaint" or "Compl.," Doc. No. 1-3) ¶¶ 5, 8, 10, 12, 31.)  In this action, Plaintiffs allege that, inter alia, Knight has misclassified the class members as independent contractors when in fact, they are employees.

The Complaint seeks to certify three Classes:

Class 1:  All persons that entered into an Independent Contractor Operating Agreement and Tractor Lease Agreement with Defendants and worked as a California-based Owner Operator and was classified as an independent contractor, during the relevant time period ("Class 1"); and
Class 2:  All persons that worked for Defendants pursuant to the terms of an independent contractor agreement as a California-based Owner Operator and was classified as an independent contractor, during the relevant time period ("Class 2"); and
Class 3:  All persons that worked for Defendants as a California-based Owner Operator and was classified as an independent contractor, during the relevant time period ("Class 3").

**B.     Procedural History**

Plaintiffs filed their class action complaint in the California Superior Court for the County of San Bernardino on March 8, 2014.  On April 18, 2014, Knight removed the action to this Court.  Plaintiffs filed the Motion to Remand on May 19, 2014.  On June 2, 2014, Knight filed an Opposition.  ("Opp'n," Doc. No. 17.)  Plaintiffs replied on June 9, 2014.  ("Reply," Doc. No. 24.)

## II.  LEGAL STANDARD[1]

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), vests federal district courts with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  Under CAFA, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction."  Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

"A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."  Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013).  The preponderance of the evidence standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds[, in the CAFA context, five million dollars]."  Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996).  A defendant can satisfy this burden by submitting evidence outside the complaint, including affidavits or declarations, of expected damages.  See Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010) (holding that declaration established amount in controversy for removal jurisdiction).

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

The removal statutes are construed restrictively, however, and the district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941); 28 U.S.C. § 1447(c). There is a "strong presumption" against removal jurisdiction, Gaus v. Miles. Inc., 980 F.2d 564, 566 (9th Cir. 1992), and doubts as to removability are resolved in favor of remanding the case to state court. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003); see also Washington v. Chimei Innolux Corp., 659 F.3d 842, 847 (9th Cir. 2011) ("[T]he general principles of removal jurisdiction apply in CAFA cases[.]").

## III. DISCUSSION

Plaintiffs' sole argument supporting remand is that Knight did not meet its burden to show that Plaintiffs' potential damages are greater than $5 million, and therefore it has not met its burden to show that this Court has jurisdiction under CAFA. When assessing if CAFA's amount-in-controversy requirement is met,

> The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

Abrego Abrego, 443 F.3d at 690 (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)). Here, the Complaint does not state the amount in controversy; the removing party need only prove by a preponderance of the evidence that the amount-in-controversy requirement has been met. Abrego Abrego, 443 F.3d at 683. "Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy" has been met. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)

In the Notice of Removal, Knight argued that removal was appropriate to this court because all of the elements of CAFA were satisfied, including the $5 million amount-in-controversy requirement. In the Motion, Plaintiffs take issue with the assumptions made in Knight's calculation of amount-in-controversy.

### A.    Knight's Amount-in-Controversy Calculation

In the Notice of Removal, Knight focused its calculation of damages solely on Plaintiffs' claim that it violated California Labor Code section 2802(a) by requiring members of the class to pay costs related to the ownership and operation of their trucks.[2] (Not. of Removal at 7-9.)

---

[2] California Labor Code section 2802(a) provides, in relevant part:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even

(continued . . . )

Accordingly, the Court will only consider arguments made by Knight that CAFA's amount-in-controversy requirement is met under Plaintiffs' section 2802(a) claim.  See Maximo v. Aspen Contracting California LLC, No. 13-0677, 2013 WL 4536820, at *5 (C.D. Cal. Aug. 26, 2013) (remanding where, although plaintiffs had pled nine claims for violations of the California Labor Code, the only evidence defendant proffered in support of its argument that CAFA's amount-in-controversy requirement with respect to one of those claims).

   To calculate Plaintiffs' possible recovery under this theory, Knight estimated the total weekly lease-related costs of owning the truck leased by Knight to Plaintiffs, which include the cost of the lease itself, physical damage insurance, occupational accident insurance, and non-hauling insurance, and averaged those costs between the three named Plaintiffs.[3]  (Not. of Removal at 8.)  Knight then took that average ($450/week), and multiplied that by 52 weeks to get a yearly average cost of $23,400 per class member.  (Id.)  Next, Knight multiplied that yearly average cost across all class members, which it estimated at 557 individuals.[4]  (Id.)  Multiplying those figures together ($23,400/year * 557 class members), Knight arrived at an estimate of $13,033,800 in damages for equipment-related damages.  (Id.)

   Under their independent contracting scheme with Knight, Plaintiffs were also required to pay for fuel and were provided by Knight with a fuel card that allowed them to purchase fuel at a discount.  (Opp'n at 3.)  Knight also contends that fuel costs would be recoverable as improperly imposed on the Plaintiffs as well.  As with the equipment costs, Knight averaged the fuel costs between the three named Plaintiffs.[5]  (Not. of Removal at 8.)  Knight then took that average and multiplied it by 50 weeks -- assuming two weeks of vacation -- across 557 class members, yielding $31,693,300.  (Id.)  Thus, taking the equipment charges and the fuel charges together for the putative class, Knight estimates Plaintiffs' damages as to the alleged violations of California Labor Code section 2802(a) to be $44,727,100.  (Id. at 9.)  Moreover, assuming attorney's fees and costs of 20%, Knight estimates that Class Counsel's attorney's fees to be $8,945,420.  (Id.)  As the sum of the damages and attorney's fees exceeded $5,000,000, Knight asserted in the Notice of Removal that all jurisdictional requirements of CAFA had been met.  (Id.)

---

( . . . continued)
   though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802(a).

[3] Those costs were $473 per week for LaCross, $410 per week for Lira, and $466 per week for Lofton.  (Declaration of Kevin Quast in Support of the Notice of Removal (Doc. 1-1) ("Quast Decl.")) ¶ 4.)

[4] Knight estimated that there were "116 California-based contractor drivers in 2010, 135 California-based contractor drivers in 2011, 118 California-based contractor drivers in 2012, and 188 California-based contractor drivers in 2013, which amounts to 557 California-based contractor drivers over the last four years."  (Quast Decl. ¶ 4.)

[5] Those costs were estimated as $1,310 per week over 18 weeks for LaCross, $704 per week over 58 weeks for Lira, and $1,138 per week over 76 weeks for Lofton.  (Quast Decl. ¶ 6.)

### B.    Plaintiffs' Motion to Remand

There is an existing tension in the case law concerning the specificity required of Defendants in alleging that CAFA's amount-in-controversy requirement is met. While, "a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages,'" (see Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) aff'd sub nom. Coleman v. Estes Exp. Lines, Inc., 631 F.3d 1010 (9th Cir. 2011) (citation omitted)) the defendant may not engage in "speculation and conjecture." Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007) overruled on other grounds in Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345 (2013). Defendants must meet the preponderance of the evidence standard of proving CAFA's amount-in-controversy requirement by "set[ing] forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum." Coleman, 730 F. Supp. 2d at 1148 (C.D. Cal. 2010) (citing Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)). Thus, defendant meets its burden by marshaling facts short of proving plaintiff's case, but using more than mere speculation.

#### 1.    Knight's Estimate of Potential Class Members

Plaintiffs contend that Knight has engaged in precisely the kind of speculation unpermitted by Lowdermilk in its calculation of the potential damages of the class. Though Plaintiffs allege there are several deficiencies in Knight's estimations and calculations, the Court need only examine one of these to resolve the Motion. Plaintiffs argue that Knight's estimate of the number of potential class members is not supported by the evidence. (Mot. at 7.) That estimate was based on the Declaration of Kevin Quast, Knight's Chief Operating Officer. In Quast's Declaration, he states that "Knight Transportation had Independent Contractor Operating Agreements with 116 California-based contractor drivers in 2010, 135 California-based contractor drivers in 2011, 118 California-based contractor drivers in 2012, and 188 California-based contractor drivers in 2013, which 14 amounts to 557 California-based contractor drivers over the last four years." (Quast Decl. ¶ 4.)

Plaintiffs argue these class-member estimates are undermined by other evidence submitted by Knight. As pointed out by Plaintiffs, Knight's 557 class member estimate assumes that that all 116 California-based drivers in 2010 worked for the entirety of that year, and so on for the next three years. (Mot. at 8.) The figures estimating each putative class member's damages for the cost of fuel, however, is inconsistent with the assumption that each class member was employed for the entirety of the year. Knight stated that LaCross paid for fuel over a period of 18 weeks, Lira paid for fuel over 58 weeks, and Lofton paid for fuel over 76 weeks. Plaintiffs thus argue that it is improper to credit each of the 557 class members with lease-related costs and fuel costs for an entire year when evidence exists undermining that conclusion, for example, LaCross being counted as a member of the class for one year while only paying for fuel over 18 weeks. Moreover, Quast's declaration does not state which year these fuel costs accrued.

In its Opposition, Knight has provided revised figures estimating the total number of class members to be 700, not 557.[6]  Using an opposition to a motion to remand to update evidence relied upon in a notice of removal is appropriate at this stage of the litigation and the Court has considered these revised figures.  See Tripp v. Crossmark, Inc., No. 13-03480, 2013 WL 5496550, at *2 (N.D. Cal. Oct. 3, 2013) (stating that allowing defendants to expand their analysis as to why the amount-in-controversy has been met in an opposition is analogous to cases permitting defendants to correct factual inaccuracies in an opposition to a motion to remand).  Even accepting these revised figures as true, however, this revised figure was still calculated using the same methodology that Plaintiffs object to, namely, that it is inaccurate to assume that every putative class member worked the entire year.  As stated by Plaintiffs in the Reply,

> Whether [Quast] came up with 700 or 557 class members, still there is no substantive evidence to establish whether any of those class members worked one day a week, five days a week, seven days a week, only one week out of the month, or any subset of an innumerable list of variations.

(Reply at 5.)  Put another way, all of Knight's damages calculations are predicated upon the assumption all class members working fifty or fifty-two weeks, even though there is no evidence regarding how long each class member worked in a given year.

The Court agrees that the evidence proffered by Knight is insufficient to meet the required standard that it prove its calculations of the amount-in-controversy by a preponderance of the evidence.  Quast's original declaration states that the information relied upon in coming to the conclusion that the class numbers 557 members – as well as every other conclusion concerning damages – was "[b]ased on [his] review of records that have been maintained in the ordinary course of business . . . ."  (Quast Decl. ¶ 4.)  Quast's supplemental declaration, however, does not resolve the apparent discrepancy in the yearly class member calculation with the other extant fuel records.

As all of Knight's calculations rely on the assumption that there are 557 members of the class that worked for the entirety of the year, all of Knight's other calculations concerning damages are flawed.  See Woods v. CVS Pharmacy, Inc., No. 14-0259, 2014 WL 360185, at *3 (C.D. Cal. Jan. 30, 2014) ("Since [the damages calculation] is partially based on Defendants' speculative estimate of 1,087 putative class members, the Court finds that Defendants failed to prove this amount by a preponderance of evidence.").[7]  As such, Knight's calculations amount to

---

[6] The new figures estimate that "the actual average number of contractors for each year was 155 (not 116) throughout 2010, 184 (not 135) throughout 2011, and 173 (not 118) throughout 2012; and 188 (no change- it was correctly calculated) throughout 2013."  (See Supplemental Declaration of Kevin Quast in Support of Knight's Opposition to the Motion to Remand (Doc. No. 19), ¶ 5.)

[7] The Court also notes that, even assuming that 557 was a fair estimate of the size of the class, Knight's use of the average lease costs and fuel costs between the three named plaintiffs as a fair estimation for damages sustained by the class may also be inappropriate.  See Bryant v. Serv. Corp. Int'l, No. 08-01190, 2008 WL 2002515, at *4 n.3 (N.D. Cal. May 7, 2008) (noting that (continued . . . )

"speculation and conjecture" that CAFA's amount-in-controversy requirement is met, and thus the Court lacks jurisdiction over this action. Accordingly, the Court GRANTS the Motion and REMANDS this action to the California Superior Court for the County of San Bernardino.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion and REMANDS this action to the California Superior Court for the County of San Bernardino.

**IT IS SO ORDERED.**

---

( . . . continued)
calculating damages in a wage-and-hour action using the average hourly wage of the named plaintiffs would "not necessarily be an appropriate substitute" for the average wage of all class members if the average were based on a small number of named plaintiffs).